James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

Joseph H. Meltzer
Peter A. Muhic
Melissa L. Troutner
**KESSLER TOPAZ**
**MELTZER & CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiff and the proposed Classes*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVE KEARNEY, on behalf of himself and all others similarly situated, | Civil Action No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, and BMW of NORTH AMERICA, LLC, | |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     JURISDICTION AND VENUE ......................................................................... 8

III.    PARTIES ............................................................................................................ 9

IV.     FACTUAL ALLEGATIONS ........................................................................... 12

        A.      The Defective Sunroofs ....................................................................... 12

        B.      Defendants' Knowledge of the Defect in the Defective Sunroofs and Associated
                Safety Risk ........................................................................................... 18

                NHTSA Complaints .............................................................................. 19

V.      FURTHER ALLEGATIONS ............................................................................ 25

VI.     TOLLING OF THE STATUTE OF LIMITATIONS ....................................... 27

VII.    CLASS ACTION ALLEGATIONS ................................................................. 28

VIII.   CLAIMS FOR RELIEF ................................................................................... 33

IX.     PRAYER FOR RELIEF ................................................................................... 62

X.      DEMAND FOR JURY TRIAL ........................................................................ 63

The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.      INTRODUCTION

1.      Plaintiff Dave Kearney ("Plaintiff") brings this class action against Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") and BMW of North America, LLC ("BMW NA"), (collectively, "BMW" or "Defendants"), individually and on behalf of all persons in the United States who purchased, own, owned, lease or leased a Class Vehicle (defined below) for Defendants' violations of common and statutory law and concealment of a known defect in the Class Vehicles.

2.      Defendants wrongfully and intentionally concealed a defect in the sunroofs and/or moonroofs (the "Defective Sunroofs") of the Class Vehicles, which can explode or shatter unexpectedly, exposing Plaintiff and members of the Classes (defined below) to a shower of glass from the exploding Defective Sunroofs and forcing them to incur out of pocket costs to repair or replace the Defective Sunroofs and/or repair or replace other vehicle parts damaged by the explosion.

3.      The Defective Sunroofs present a significant safety risk for Plaintiff and members of the Classes because when the Defective Sunroofs suddenly and unexpectedly explode, shattered glass can be showered over the driver and passengers of the Class Vehicles.  In addition, drivers and occupants of the Class Vehicles are at risk for collisions as a result of driver distraction caused by the exploding Defective Sunroofs.  Drivers have compared the explosion of

---

[1]      Counsel's investigation includes an analysis of publicly available information, including investigative reports, consumer complaints to the National Highway Traffic Safety Administration and other sites, and additional analysis.  Plaintiff believes that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

the Defective Sunroofs to the sound of a gunshot and have expressed shock and confusion upon hearing the sound when driving.

4.     In October 2017, *Consumer Reports* published an investigation detailing hundreds of complaints of exploding sunroofs across numerous brands, including BMW.[2]  According to the Report, exploding sunroofs are an underreported problem and the consumer complaints in the National Highway Traffic Safety Administration's ("NHTSA") database "are only a fraction of the actual sunroof explosions occurring in the U.S."[3]  *Consumer Reports* determined that exploding sunroofs "have happened in every month of the year in every part of the country, in vehicles from all over the world; they have occurred on interstates, on country roads, and even while parked in driveways."[4]

5.     Many of the complaints relate to panoramic sunroofs/moonroofs which have risen in popularity over at least the past decade.  Vehicle manufacturers have added panoramic sunroofs/moonroofs—large or multi-panel sunroofs that provide light to the front and rear passengers of a vehicle—as a design feature for which they often charge premium prices.

6.     BMW began installing panoramic sunroofs/moonroofs in certain of the Class Vehicles in or around 2004, generally marketing the panoramic sunroofs/moonroofs as a luxury upgrade.  For example, the BMW X5 xDrive 35i advertises the "[p]anoramic moonroof with fully automatic, 2-piece glass panel, power slide and lift control, wind deflector and power

---

[2]     *See* Jeff Plungis and Thomas Germain, *Exploding Sunroofs: Danger Overhead*, CONSUMER REPORTS, Oct. 12, 2017 (the "Report").

[3]     *Id.*

[4]     *See id.*

interior sunshade" as a feature adding to the vehicle's "Comfort and convenience[.]"[5]  Similarly, the Mini Clubman touts its dual-pane panoramic sunroof with "[a]lmost 11 square feet of glass [that] enhance[s] the view for both front and rear passengers."[6]  According to the Report, experts agree that "[t]he bigger the expanse of glass, the harder to ensure it won't shatter."[7]

7.    In November 2017, United States Senators Richard Blumenthal and Edward Markey sent letters to numerous car manufacturers, including BMW, asking the manufacturers to answer detailed questions regarding sunroof materials, design and defects.   The senators demanded information concerning manufacturers' glass suppliers and whether BMW, among others, is tracking incidents of exploding sunroofs, by December 4, 2017. The senators stated: "It is vital that [BMW and others] take steps to assure consumers of the structural integrity of their sunroofs."[8]

8.    Industry experts have also expressed concerns over the safety of panoramic sunroofs.  According to Jason Levine, executive director at the Center for Auto Safety, stated: "The fact that the roof is half glass instead of a quarter glass or no glass doesn't change the responsibility of the industry and the individual automaker to make sure the compartment is as safe as possible. . . . The concern has to be for safety first, and then the aesthetics."[9]

---

[5]    *See    The    X5    xDrive35i,    Features    &    Specs*, http://www.bmwusa.com/Standard/Content/Vehicles/2018/X5/xDrive35i/Features_and_Specs/D efault.aspx (last visited Dec. 4, 2015).

[6]    *See    The    Mini    Clubman,    Motoring    Features*, http://www.miniusa.com/content/miniusa/en/why-mini/programs-and-events/clubman-retail.html (last visited Dec. 4, 2017).

[7]    Report at 2.

[8]    *See* Jeff Plungis, *Senators Press Auto Industry on Exploding Sunroofs*, CONSUMER REPORTS, Nov. 15, 2017.

[9]    Report at 7.

9.      In addition to complaints regarding panoramic sunroofs/moonroofs in the Class Vehicles, numerous complaints have been made to NHTSA and other online forums relating to non-panoramic sunroofs/moonroofs in the Class Vehicles.[10]

10.     The affected vehicles include the following vehicles containing a sunroof or moonroof: MY 2005-2013 BMW 3 series; MY 2004-2018 BMW X5s; MY 2005-2018 X3s; MY 2009-2018 BMW X1s; MY 2008-2018 MINI Clubmans, MY 2006-2008 MINI Coopers, MY 2011-2018 MINI Countrymans, MY 2009-2018 MINI Hardtops and MY 2013-2016 MINI Pacemans (the "Class Vehicles").

11.     The Defective Sunroofs are defective in design, manufacturing, materials and/or workmanship.   Despite Defendants' knowledge of the defect in the Defective Sunroofs, Defendants never disclosed to Plaintiff and members of the Classes that the defect exists or that drivers and occupants of the Class Vehicles are at risk.

12.     Replacement of the Defective Sunroofs typically costs thousands of dollars.  On information and belief, Defendants have wrongfully refused to cover replacement of the Defective Sunroofs under the Class Vehicles' applicable warranties.  Thus, Defendants have wrongfully and intentionally transferred the cost of repair or replacement of the Defective Sunroofs to Plaintiff and members of the Classes by fraudulently concealing the existence of the defect.

13.     In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.   For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail

---

[10]      *See, e.g.,*      56-60; *see also* www.safercar.gov.

purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.[11]
Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles. However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and have refused to provide warranty coverage.

14.    These warranties were provided in Class Vehicle window labels, owner's manuals and brochures, and advertised on Defendants' websites. As described on MINI's website: "At MINI, our commitment to quality, durability and customer satisfaction is clearly demonstrated by the 4-year/50,000-mile MINI New Passenger Car Limited Warranty and a 12-year/unlimited-mileage warranty against rust perforation. And we're not just talking about a couple key parts of your MINI. Our warranty covers everything, bumper to bumper and everything in between, except the tires."[12] As described by BMW on its website, "When you own The Ultimate Driving Machine, you should get the service to match," touting that the New Vehicle Warranty provides "[p]rotection for the first four years or 50,000 miles. Clearly, we stand behind our engineering."[13]

---

[11]    *See BMW Service and Warranty Books*, available at http://www.bmwusa.com/Standard/Content/Explore/BMWValue/BMWUltimateService/ServiceandWarrantyBooks.aspx (last visited Dec. 6, 2017); *MINI, 4-Year/50,000-Mile Limited Warranty* ("MINI Warranty"), available at http://www.miniusa.com/content/miniusa/en/why-mini/why-mini/covered-maintenance.html (last visited Dec. 6, 2017).

[12]    *See* MINI Warranty.

[13]    *See BMW Maintenance Program 4 Yrs or 50K Miles*, available at http://www.bmwusa.com/Standard/Content/Explore/BMWValue/BMWMaintenance/ultimateservice.aspx (last visited Dec. 15, 2017).

15.     Defendants breached their express and implied warranties through which they promised to, *inter alia*, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Defective Sunroofs.  Because the defect in the Defective Sunroofs was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the Defective Sunroofs under the terms of the warranties.  Further, Defendants have wrongfully transferred the costs of repair or replacement of the Defective Sunroofs to Plaintiff and members of the Classes through fraudulent concealment of the defect and by blaming rocks or other foreign matter for the explosions of the Defective Sunroofs.  These costs are significant and range in the thousands of dollars, and no reasonable consumer expects to incur such costs when purchasing or leasing the Class Vehicles.

16.     Defendants benefited from increased profit margins by upselling Class Vehicles with the Defective Sunroofs to Plaintiff and members of the Classes, as the panoramic sunroofs or moonroofs are often not a standard feature in the base models, but rather require an upgrade by consumers, oftentimes costing consumers thousands of dollars more than the purchase price of the vehicles to contain such a feature.[14]  Defendants continue to profit from the lease and sale of Class Vehicles to unsuspecting consumers.

17.     Knowledge and information regarding the defect in the Defective Sunroofs was in the exclusive and superior possession of Defendants and their dealers, and was not provided to Plaintiff and members of the Classes, who could not reasonably discover the defect through due diligence.  Based on pre-production testing, design failure mode analysis, and consumer complaints to dealers and NHTSA, *inter alia*, Defendants were aware of the exploding or

---

[14]     *See* Report at 9.

shattering of the Defective Sunroofs in the Class Vehicles and fraudulently concealed the defect from Plaintiff and members of the Classes.

18.    Defendants misrepresented the standard, quality or grade of the Class Vehicles and knowingly, actively, and affirmatively concealed the existence of the defect in the Defective Sunroofs to increase profits and decrease costs by selling additional Class Vehicles and transferring the costs of repair or replacement of the Defective Sunroofs to owners and lessees of the Class Vehicles, including Plaintiff and members of the Classes.

19.    Plaintiff and members of the Classes assert claims against Defendants for fraud, negligent misrepresentation, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*., violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq*., unjust enrichment, and violations of consumer fraud and unfair and deceptive trade practices statutes under the laws of New Jersey and California.

20.    Defendants knowingly omitted, concealed and suppressed material facts regarding the defect in the Defective Sunroofs and its corresponding safety risk, and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the Classes. As alleged herein, Defendants' wrongful conduct has harmed owners and lessees of the Class Vehicles, and Plaintiff and members of the Classes are entitled to damages and injunctive and declaratory relief.

21.    As a direct result of Defendants' wrongful conduct, Plaintiff and members of the Classes have suffered damages, including, *inter alia*: (1) out-of-pocket expenses for repair or replacement of the Defective Sunroofs and/or other vehicle parts damaged by the exploding

sunroofs; (2) costs for future repairs or replacements of the Defective Sunroofs; (3) sale of their vehicles at a loss; and/or (4) diminished value of their vehicles.

## II.    JURISDICTION AND VENUE

22.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendants are citizens.  This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

23.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because BMW NA maintains its principal place of business in New Jersey, because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, and because Defendants conduct a substantial amount of business in this District. Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous dealers doing business in the District, and made decisions related to advertisement, marketing, sales, warranties, and recalls of vehicles under the BMW and MINI brand names from their Woodcliff Lake, New Jersey headquarters, which is located within this District. BMW NA and MINI maintain at least the following offices and/or facilities in New Jersey: (1) BMW NA headquarters in Woodcliff Lake, New Jersey; (2) MINI headquarters in Woodcliff Lake, New Jersey; (3) BMW NA's Eastern Regional Headquarters and Technical Training Center in Woodcliff Lake, New Jersey; and (4) BMW NA's Vehicle Preparation Center in Port

Jersey, New Jersey. Accordingly, Defendants have sufficient contacts with this District to subject Defendants to personal jurisdiction in the District and venue is proper.

### III.    PARTIES

#### Plaintiff

24.    Plaintiff Dave Kearney is a citizen of the State of California and resides in Sacramento, California. On or around July 21, 2015, Plaintiff purchased a 2012 BMW X5 with a panoramic sunroof in Sonoma County, California for personal or household use. Plaintiff continues to own the 2012 BMW X5.

25.    On information and belief, the price Plaintiff paid for his Class Vehicle was higher than it would have been had his vehicle not contained a panoramic sunroof. Unbeknownst to Plaintiff at the time of purchase of his Class Vehicle in 2015, Plaintiff's vehicle contained the Defective Sunroof, which exposes Plaintiff and his passengers to the risk of sudden explosion or shattering of the sunroof. Defendants never warned Plaintiff of the Defective Sunroof and corresponding safety risk associated with his Class Vehicle. To date, Defendants have not provided Plaintiff with a remedy for the defect.

26.    None of the advertisements reviewed or representations received by Plaintiff and members of the Classes contained any disclosure relating to the Defective Sunroofs and associated safety risk. Had Defendants disclosed that the Class Vehicles contained a Defective Sunroof and corresponding safety risk, Plaintiff and members of the Classes would have not purchased or leased their vehicles, or would have paid less for their vehicles, or would not have purchased the upgrades that include the Defective Sunroof as an added feature.

27.    When Plaintiff and members of the Classes purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be equipped with a sunroof/moonroof that was free from defects and safe to operate. In fact,

Defendants have always emphasized the quality and reliability of the Class Vehicles and know that consumers, including Plaintiff and the members of the Classes, rely upon such factors when purchasing or leasing Class Vehicles. Had Defendants disclosed that the Defective Sunroofs in the Class Vehicles could suddenly explode or shatter, Plaintiff and members of the Classes would have not purchased or leased their vehicles, or would have paid less for their vehicles.

28.    The Class Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used. Plaintiff and members of the Classes have suffered an ascertainable loss as a result of Defendants' unfair and deceptive conduct, breach of common law and statutory duties, and omissions and/or misrepresentations associated with the Defective Sunroofs and associated safety risk, including but not limited to, out-of-pocket losses and diminished value of their respective vehicles.

29.    Neither Defendants nor any of their agents, dealers or other representatives informed Plaintiff and members of the Classes of the Defective Sunroofs and associated safety risk prior to the purchase or lease of the Class Vehicles.

**Defendants**

30.    Defendant BMW AG is a German business entity with its principal place of business in Munich, Germany.  BMW AG designs, develops, manufactures, and/or sells luxury automobiles under the BMW and MINI brand names.  BMW AG is the parent corporation of BMW NA.

31.    Defendant BMW NA is a Delaware corporation with its corporate headquarters located in Woodcliff Lake, New Jersey.  BMW NA's Eastern Regional Headquarters and Technical Training Center are also located in Woodcliff Lake, New Jersey and its Vehicle Preparation Center is located in Port Jersey, New Jersey.  BMW NA advertises, markets and sells luxury automobiles under the BMW brand name throughout the United States.  According to

BMW NA,[15] MINI USA is an unincorporated division of BMW NA, and it advertises, markets and sells luxury automobiles under the MINI brand name throughout the United States.

32.    At all relevant times, BMW NA and MINI acted as authorized agents, representatives, servants, employees and/or alter egos of BMW AG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of BMW and MINI vehicles in the United States, including substantial activities that occurred within this jurisdiction.

33.    At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the BMW and MINI brand names throughout the United States.  Defendants and/or their agents designed, manufactured, and/or installed the Defective Sunroofs in the Class Vehicles.  Defendants and/or their agents also developed and disseminated the owner's manuals, warranty booklets, maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

34.    On information and belief, at all times relevant to this action, BMW NA and MINI made decisions related to advertisement, marketing, sales, warranties, and recalls of vehicles under the BMW and MINI brand names from their Woodcliff Lake, New Jersey headquarters, which is located within this District.

---

[15] *See Oscar v. MINI USA, BMW of N. Am., LLC and Goodyear Tire & Rubber Co., Inc.*, No. 09-00011 (S.D.N.Y.), ECF No. 43, Defendant BMW of North America, LLCs Rule 7.1 Disclosure Statement.

IV.     **FACTUAL ALLEGATIONS**

A.     **The Defective Sunroofs**

35.     The Class Vehicles are equipped with the Defective Sunroofs, which exposes Class members and their passengers to the risk of sudden explosion or shattering of the Defective Sunroofs.

36.     According to *Consumer Reports*, the occurrence of an exploding sunroof has recently become all too common.  Incidents involving exploding sunroofs have occurred in every month of the year in every part of the country, and the number of exploding sunroof complaints has steadily increased from 1995 through present.[16]

37.     The *Consumer Reports* investigation revealed that while the issue of exploding sunroofs is well-known to the auto industry, drivers generally assume their sunroofs are safe. Even though they are aware of the defect, with a few exceptions, automakers, such as Defendants, are not acknowledging or resolving the issue; rather they regularly upsell the Defective Sunroofs as a premium feature in the Class Vehicles.[17]

38.     Features like panoramic sunroofs are often designed into luxury vehicles, such as those manufactured by Defendants.[18]  Automakers have learned that consumers will frequently spend thousands of dollars for luxury packages, including those that contain the Defective Sunroofs.[19]  As such, manufacturers, such as Defendants, are incentivized to sell vehicles containing the Defective Sunroofs as a way to increase margins, as the sunroofs or panoramic

---

[16]     Report at 1, 7.

[17]     Report at 2.

[18]     *See* Report at 8.

[19]     *Id.* at 9.

moonroofs are typically considered an "upgrade." For example, when designing a vehicle on BMW's website, in many models that BMW advertises, consumers do not have the option of a panoramic moonroof with a standard package, but rather must upgrade to the "Convenient Tier" to add a panoramic moonroof as an additional feature, increasing the purchase price by thousands of dollars.[20] Similarly, when designing a new MINI, the Dual-Pane Panoramic Sunroof often only becomes available to consumers with the upgraded "Premium Package," adding $1,800 to the purchase price.[21] Defendants profit significantly from upselling these products to unsuspecting members of the Classes.

39. BMW began installing panoramic sunroofs/moonroofs in certain of the Class Vehicles in or around 2004, generally marketing the panoramic sunroofs/moonroofs as a luxury upgrade. For example, the BMW X5 xDrive 35i advertises the "[p]anoramic moonroof with fully automatic, 2-piece glass panel, power slide and lift control, wind deflector and power interior sunshade" as a feature adding to the vehicle's "Comfort and convenience[.]"[22] Similarly, the Mini Clubman touts its dual-pane panoramic sunroof with "[a]lmost 11 square feet of glass

---

[20]    *See, e.g., Choose your Features Tier, X1 sDrive28i,* available at https://www.bmwusa.com/byo.html#!/build/feature/dijuq55z (last visited Dec. 15, 2017) (adding $2,500 to the X1 sDrive28i's purchase price of $33,900 for the "Convenience Tier" which includes the panoramic moonroof as an added feature).

[21]    *See, e.g., Cooper S Hardtop 2 Door, Packages,* available at http://www.miniusa.com/content/miniusa/en/tools/learning/build/build.html#/config/coopers/build/1/?year=2018 (last visited Dec. 15, 2017) (demonstrating that the Dual-Pane Panoramic Sunroof is only available in the upgraded "Premium" or "Fully Loaded" Packages, adding $1,800 or $4,750, respectively, to the Cooper S Hardtop 2 Door's purchase price of $26,550).

[22]    *See The X5 xDrive35i, Features & Specs,* http://www.bmwusa.com/Standard/Content/Vehicles/2018/X5/xDrive35i/Features_and_Specs/Default.aspx (last visited Dec. 4, 2015).

[that] enhance[s] the view for both front and rear passengers."[23]    According to the Report, experts agree that "[t]he bigger the expanse of glass, the harder to ensure it won't shatter."[24]

40.    To date, American consumers, including members of the Classes, have lodged at least 859 complaints with the federal government about exploding sunroofs in their vehicles.[25] Almost all of the exploding sunroof incidents occur with no warning.[26]

41.    Automakers, such as Defendants, have tried to explain away and conceal the defect, by informing consumers that the exploding sunroofs are caused by a rock or some other foreign object.[27]    But, Tarek Zohdi, a professor of mechanical engineering at University of California, Berkeley, rejects this explanation.[28]    According to Mr. Zohdi, a rock lofted into the air by a vehicle tire would reach a height of 10-15 feet and would have to come down at 70-80 miles an hour to break the sunroof.[29]    "There is not a chance in the world that an unintentional rock that is lofted by a vehicle would ever break a sunroof panel," Mr. Zodhi opined.    He further stated that the maximum velocity of a rock coming down would be 25 miles an hour, falling far

---

[23]    *See        The        Mini        Clubman,        Motoring        Features*, http://www.miniusa.com/content/miniusa/en/why-mini/programs-and-events/clubman-retail.html (last visited Dec. 4, 2017).

[24]    Report at 2.

[25]    *Id.*

[26]    *See* Jennifer Geiger, *Consumer Reports Investigates Exploding Sunroofs* (October 12, 2017), available at https://www.cars.com/articles/consumer-reports-investigates-exploding-sunroofs-1420697540165/ (last visited Dec. 8, 2017).

[27]    *See* Jeff Plungis, *Senators Press Auto Industry on Exploding Sunroofs*, CONSUMER REPORTS, Nov. 15, 2017.

[28]    *See* Michael Finney, *UC professor solves shattered sunroof problem*, (Mar. 21, 2011), available at: http://abc7news.com/archive/8026317/ (last visited Dec. 7, 2017).

[29]    *See id.*

short of the 70 miles an hour he calculated would be necessary to cause breakage.[30]  It is more likely, according to Mr. Zodhi, that sunroofs are shattering due to the stress caused by changes in temperatures or from fatigue.[31]  In Mr. Zodhi's opinion, "the car manufacturer has the problem; basically it's a manufacturers defect."[32]

42.    Based on the increasing number of complaints related to panoramic sunroofs, executive director at the Center for Auto Safety, Jason Levine, says, "Something is going on. Calling it an act of God feels like an old industry playbook for a new car feature.  The fact the roof is half glass instead of a quarter glass or no glass doesn't change the responsibility of the industry and the individual automaker to make sure the compartment is as safe as possible."  Mr. Levine added that "[t]he concern has to be for safety first, and then the aesthetics."[33]

43.    Research has shown that when a vehicle's sunroof does shatter, vehicle owners typically bear the cost of repair or replacement as automakers often refuse to cover repair or replacement of sunroofs under the applicable warranties.[34]  As described in the NHTSA complaints herein, Defendants similarly have refused to repair or replace the Defective Sunroofs free of charge for members of the Classes.  Moreover, Defendants have not recalled the Class Vehicles to replace the Defective Sunroofs.

44.    David Friedman, former acting administrator of NHTSA in 2014, and current director of cars and product policy and analysis at Consumers Union, the policy and mobilization

---

[30]    *See id.*

[31]    *See id.*

[32]    *See id.*

[33]    Report at 7.

[34]    Report at 3.

division of Consumer Reports, states: "[w]hen you have evidence of a problem like this, regardless of what the standards say, automakers should develop a better approach. . . . They don't need to wait for NHTSA to prod them."[35]

45.    In April 2016, NHTSA investigated Defendants, and twelve other motor vehicle manufacturers.[36]    The Secretary of Transportation issued a General Order to the vehicle manufacturers as part of NHTSA Investigation No. EA14-002, an investigation into allegations of optional sunroofs shattering unexpectedly.[37]    As a part of the NHTSA General Order, NHTSA demanded the Defendants, and other vehicle manufacturers, file certain reports concerning unexpected sunroof shatter incidents by May 16, 2016.[38]    Such reports were required to, *inter alia*, describe the history of panoramic sunroofs in the vehicles Defendants manufactured, identify and enumerate the total population of vehicles manufactured with a panoramic sunroof as original equipment, provide information regarding the sunroof manufacturer and the standard to which the sunroof was manufactured, and identify the number of incidents involving an allegation that a panoramic sunroof has spontaneously shattered in a vehicle manufactured by Defendants.[39]

---

[35]    Report at 4.

[36]    *See In re: Kia Sorento Sunroofs*, EA14-002, "General Order Directed to Motor Vehicle Manufacturers," (U.S. Dept. of Trans. Nat'l Highway Traffic Safety Admin. Apr. 14, 2016). ("NHTSA General Order").

[37]    *See id.*

[38]    *See id.*

[39]    *See id.*

46.     In addition to complaints regarding panoramic sunroofs/moonroofs in the Class Vehicles, numerous complaints have been made to NHTSA and other online forums relating to non-panoramic sunroofs/moonroofs in the Class Vehicles.

47.     In November 2017, Senators Blumenthal and Markey sent letters to the automakers, including BMW, asking for answers regarding sunroof materials, design and defects.  The senators gave BMW a December 4, 2017 deadline to provide information on glass suppliers and whether BMW is tracking incidents of exploding sunroofs.  The senators informed BMW: "It is vital that you take steps to assure consumers of the structural integrity of their sunroofs."

48.     No reasonable consumer expects to purchase a vehicle with a Defective Sunroof upgrade that exposes them and their passengers to an exploding or shattering sunroof. Further, Plaintiff and members of the Classes do not reasonably expect Defendants to omit or conceal a defect in the Class Vehicles or omit or conceal a known safety risk. Plaintiffs and members of the Classes had no reasonable way to know that Class Vehicles contained Defective Sunroofs which were defective in materials, workmanship, design and/or manufacture and posed a safety risk.

49.     As alleged herein, Plaintiff and members of the Classes unknowingly purchased or leased vehicles that contain the Defective Sunroofs and suffered diminished market value and other damages related to their purchase or lease of the Class Vehicles as a direct result of Defendants' material misrepresentations and omissions regarding the standard, quality or grade of the Class Vehicles and/or the existence of the Defective Sunroofs and safety risk. The fact that the Class Vehicles contain the Defective Sunroofs is material to Plaintiff and members of the

Classes because it diminishes the value of the Class Vehicles and exposes Plaintiff and Class members (and their passengers) to exploding or shattering sunroofs and an associated safety risk.

50.     As a result of Defendants' material misrepresentations and omissions, including their failure to disclose that the Class Vehicles incorporate the Defective Sunroofs, Defendants have caused Plaintiff and members of the Classes to suffer actual damages, including but not limited to out-of-pocket expenses and the diminished value of their vehicles.

**B.     Defendants' Knowledge of the Defect in the Defective Sunroofs and Associated Safety Risk**

51.     Defendants fraudulently, intentionally, negligently and/or recklessly concealed from Plaintiff and members of the Classes the defect in the Class Vehicles even though Defendants knew or should have known that defects in design, manufacturing, materials and/or workmanship were causing defects in Class Vehicles if Defendants had adequately tested the Defective Sunroofs in the Class vehicles.

52.     Knowledge and information regarding the defect in the Defective Sunroofs were in the exclusive and superior possession of Defendants and their dealers, and that information was not provided to Plaintiff and members of the Classes.  Based on pre-production testing, pre-production design or failure mode analysis, production design or failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and NHTSA, and testing performed in response to consumer complaints, *inter alia*, Defendants were aware (or should have been aware) of the exploding or shattering of the Defective Sunroofs in the Class Vehicles and fraudulently concealed the defect and safety risk from Plaintiff and members of the Classes.

53.    Defendants knew, or should have known, that the defect in the Defective Sunroofs was material to owners and lessees of the Class Vehicles and was not known or reasonably discoverable by Plaintiff and members of the Classes before they purchased or leased Class Vehicles, or before the warranties on their Class Vehicles expired.

54.    Defendants had actual knowledge that defects in design, manufacturing, materials and/or workmanship were causing a defect in the Defective Sunroofs shortly after production of the Class Vehicles commenced. Further, Defendants gained their knowledge of the defect through sources not available to Plaintiff and members of the Classes.

55.    Notwithstanding Defendants' exclusive and superior knowledge of the defect in the Defective Sunroofs, Defendants failed to disclose the defect to consumers at the time of purchase or lease of the Class Vehicles (or any time thereafter) and continued to sell Class Vehicles containing the defect through and including the 2018 model year.  Defendants have intentionally concealed that the Defective Sunroofs are defective, prone to exploding or shattering, and present a safety risk rather than disclosing this risk to consumers, including Plaintiff and members of the Classes, and failed to recall the Class Vehicles to remedy the defect.

**NHTSA Complaints**

56.    Consumers who purchased or leased Class Vehicles have filed numerous complaints with NHTSA, beginning in at least 2002, reporting and detailing the defect in the Defective Sunroofs.

57.    Federal law requires Defendants to monitor defects that can cause a safety issue and report them within five (5) days of learning of them.  Defendants therefore regularly monitor the NHTSA website and the complaints filed therein in order to comply with their reporting

obligations under federal law and were provided knowledge of the defect through these complaints, *inter alia*. [40]

58.     Despite these complaints, Defendants have yet to issue a recall or even inform owners and lessees of the defect in the Defective Sunroofs and the associated safety risk. Defendants' deceptive acts, misrepresentations and/or omissions regarding the defect in the Defective Sunroofs create a safety risk for drivers and occupants of the Class Vehicles who may be showered with broken glass from an exploding Defective Sunroof and members of the public who may be involved in accidents with Class Vehicles that experience an exploding or shattering sunroof.  The reasonable expectation that the Class Vehicles are safe and reliable to drive (and ride in) is and was material to Plaintiff and members of the Classes when they purchased or leased their Class Vehicles and at all relevant times.

59.     Below is a sample of consumer complaints made to NHTSA regarding exploding or shattering of Defective Sunroofs:

- **February 12, 2002- 2002 BMW 325i**
  NHTSA ID Number: 758131
  Incident Date February 9, 2002
  Consumer Location BREWSTER, NY
  Vehicle Identification Number WBAEV33432K
  **Summary of Complaint:**
  URGENT - MY 2002 325I'S FIRST SUNROOF GLASS EXPLODED ON ME ON 1/25/02. THE REPLACEMENT GLASS HAS TWO SURFACE HAIRLINE CRACKS AND TWO HAIRLINE CRACKS BENEATH THE SURFACE OF THE GLASS. THIS CANNOT BE AN ISOLATED INCIDENT. PLEASE EXAMINE YOUR SUNROOF CAREFULLY FOR DEFECTS. NO ONE AT BMW IS TAKING THIS SERIOUSLY ENOUGH.*AK

---

[40]     Complainants must identify themselves and enter detailed contact and vehicle information, which is reviewed and analyzed by NHTSA.  NHTSA does not share complainants' personal information with the general public and adds complaints to the public NHTSA database only after removing all personally identifying information.

- **March 23, 2006- 2005 BMW X5**
  NHTSA ID Number: 10153549
  Incident Date March 2, 2006
  Consumer Location ERIE, CO
  Vehicle Identification Number 5UXFA93545L
  **Summary of Complaint:**
  I WAS DRIVING DOWN I-25 IN MARCH OF 2006, WHEN THE PANORAMIC
  SUNROOF OF MY 2005 BMW X5 4.8IS (PURCHASED NEW ON DECEMBER 2,
  2005, WHICH ONLY HAVE 5000 MILES ON IT) EXPLODED SUDDENLY AND
  UNEXPECTEDLY FOR NO REASON WHAT SO EVER. I AM VERY GLAD THAT I
  DIDN'T HAVE THE SUN SHADE OPEN OR ELSE I WOULD'VE HAD GLASS ALL
  OVER ME!!!!*JB

- **August 3, 2009- 2008 BMW 3 Series**
  NHTSA ID Number: 10279116
  Incident Date August 2, 2009
  Consumer Location Unknown
  Vehicle Identification Number WBAWB73588P
  **Summary of Complaint:**
  CATASTROPHIC FAILURE OF THE SUNROOF ON MY 3.35I BMW COUPE 2008
  MODEL. NO KNOWN CAUSE. IT JUST EXPLODED AND SHOWERED THE
  PASSENGER COMPARTMENT WITH GLASS SHARDS. *TR

- **March 27, 2013- 2011 BMW 328i**
  NHTSA ID Number: 10504739
  Incident Date March 27, 2013
  Consumer Location CLEARWATER, FL
  Vehicle Identification Number N/A
  **Summary of Complaint:**
  WHILE APPROACHING THE INTERSTATE AND INCREASING IN SPEED,
  DRIVER HEARD LOUD EXPLOSION (LIKE A GUN) COMING FROM ABOVE
  AND STARTED TO FEEL GLASS DEBRIS COMING FALL FROM CRACK. THE
  OUTSIDE TEMPERATURE WAS AROUND 40 DEGREES FAHRENHEIT AND
  THERE WERE NO OVERPASSES NEARBY WHERE DEBRIS COULD HAVE
  FALLEN AND NO DEBRIS COMING FROM OTHER CARS. WHEN PULLED
  OVER, THE SUNROOF HAD COMPLETELY SHATTERED. *TR

- **June 18, 2013-2012 BMW X5**
  NHTSA ID Number: 10520566
  Incident Date June 12, 2013
  Consumer Location BLAINE, WA
  Vehicle Identification Number: 5UXZW0C58CL
  **Summary of Complaint:**
  WHILE DRIVING AT 70 MPH ON THE FREEWAY, MY SUNROOF
  SPONTANEOUSLY SHATTERED INTO A MILLION PIECES. NO OTHER
  VEHICLES WERE AROUND AND NO FALLING DEBRIS WAS NEARBY. THE

SUNROOF EXPLODED OUTWARD WITH A LOUD BANG, LIKE A GUNSHOT. GLASS RAINED DOWN INSIDE THE CAR AND MY PASSENGER AND I WERE CUT WHILE TRYING TO REMOVE PIECES OF GLASS FROM THE INTERIOR. *TR

- **August 23, 2013- 2009 BMW 3 Series**
  NHTSA ID Number: 10536990
  Incident Date August 23, 2013
  Consumer Location OTTAWA LAKE, MI
  Vehicle Identification Number: WBAPH77589N
  **Summary of Complaint:**
  SUNROOF EXPLODED UPWARD MAKING A "GUN SHOT" TYPE SOUND LEAVING A BASKETBALL SIZED HOLE IN THE ROOF. *TR

- **July 30, 2014- 2010 BMW X5**
  NHTSA ID Number: 10617626
  Incident Date July 9, 2014
  Consumer Location SAN CLEMENTE, CA
  Vehicle Identification Number WBANU5C59AC
  **Summary of Complaint:**
  I WAS TRAVELING ON FREEWAY TO THE AIRPORT WHEN MY WIFE AND I HEARD A LOUD BOOM AND SUDDENLY HEARD LOUD AIRFLOW. I PULLED OFF TO SIDE OF ROAD AND INSPECTED CAR. THE SUNROOF HAD EXPLODED AND SHATTERED. THE CAR TRAVELING BEHIND ME ALSO STOPPED TO INSPECT HIS VEHICLE BECAUSE OF FLYING GLASS. THE CABIN DOOR TO THE SUNROOF HAD LUCKILY HAD BEEN CLOSED SO AS MY WIFE AND I AVOIDED THE FLYING GLASS. WHEN WE RETURNED FROM OUR TRIP I TOOK VEHICLE TO DEALER, THE VEHICLE WAS UNDER WARRANTY. THE DEALER SAID THIS PART WAS NOT COVERED AND WOULD COST $3600 TO REPAIR. WE GOGGLED BMW5 SERIES EXPLODING SUNROOFS AND DISCOVERED WE WERE NOT THE ONLY ONES TO EXPERIENCE EXPLODING SUNROOFS. SURELY BMW KNOWS ABOUT THIS POTENTIALLY GRIEVOUS PROBLEM. WE CALLED BMW NORTH AMERICA AND FILED A COMPLAINT WITH THE RESOLUTION DEPARTMENT. THE NEXT DAY BMW TO MY CHAGRIN WAS WILLING TO PAY 50 PERCENT OF THE REPAIR COST. I EXPECTED FULL COVERAGE. I NEEDED THE CAR BACK AND EXCEPTED OFFER VOWING NEVER TO BUY A BMW AGAIN. I EXPECTED TO BECOME WHOLE AND NOT EXPECTING BMW IGNORING THE PROBLEM THUS ENDANGERING THEIR DRIVERS FOR ECONOMIC REASONS. ONCE AGAIN GOGGLE BMW 5 SERIES EXPLODING SUNROOFS. I TOOK VEHICLE TO LEXUS DEALER AND TRADED IT. I WANTED NOTHING TO DO WITH THAT CAR. UNFORTUNATELY I OWN ANOTHER BMW5. WHAT I WANT FROM NHTSA IS TO INSPECT THE PROBLEM AND I STILL WANT TO BE COMPENSATED FOR THE ENTIRE COST OF THE PROBLEM NOT JUST 50 PERCENT. *TR

- **May 5, 2015- 2007 BMW 3 Series**
  NHTSA ID Number: 10714764
  Incident Date May 5, 2015
  Consumer Location DUNWOODY, GA
  Vehicle Identification Number WBAWB73597P
  **Summary of Complaint:**
  SUNROOF EXPLODED FOR NO APPARENT REASON. WAS MERGING ONTO A
  HIGHWAY IN THE ONRAMP AT ABOUT 45MPH, VERY BRIGHT AND SUNNY
  (BUT NOT HOT, MAYBE 75F) DAY. DRIVER SIDE WINDOW WAS OPEN, A/C
  OFF, SUNROOF WAS CLOSED, SUNSHADE WAS ALSO CLOSED. SUDDENLY I
  HEAR WHAT BASICALLY SOUNDS LIKE A GUNSHOT RIGHT ABOVE MY
  HEAD, AND SINCE HAVING ALREADY HEARD ABOUT THIS PHENOMENON
  HAPPENING ON A CAR FORUM (E90POST.COM) I REGULARLY VISIT, I
  INSTANTLY GUESSED WHAT HAD HAPPENED. I LOOK IN MY REARVIEW
  MIRROR AND SEE LARGE PIECES OF MY SUNROOF BOUNCING ALONG ON
  THE ROAD BEHIND ME. ONCE I ARRIVED AT MY DESTINATION AND GOT
  OUT OF THE CAR, I SAW THE SUNROOF HAD EXPLODED OUTWARDS. THE
  BROKEN GLASS WAS CURVED UP AROUND THE HOLE. FROM THAT SAME
  FORUM THERE ARE SEVERAL THEORIES FLOATING AROUND, THE ONE
  MOST PEOPLE SEEM TO AGREE ON AS BEING MOST PLAUSIBLE IS THERE'S
  A HEAT/PRESSURE DIFFERENCE BETWEEN THE SUNSHADE/SUNROOF AND
  THE OUTSIDE OF THE CAR. THE NEGATIVE PRESSURE ON THE OUTSIDE +
  THE INCREASE OF HEAT UNDER THE GLASS IS ENOUGH TO STRESS
  WHATEVER IMPERFECTION MIGHT HAVE ALREADY BEEN IN THE GLASS
  AND LITERALLY SUCK IT OUT. *TR

- **October 26, 2016- 2009 BMW 3 Series**
  NHTSA ID Number: 10919184
  Incident Date October 26, 2016
  Consumer Location Unknown
  Vehicle Identification Number WBAWB73529P
  **Summary of Complaint:**
  I WAS DRIVING ON THE HIGHWAY WHEN ALL OF THE SUDDEN I HEARD
  AND EXPLOSION. ACTUALLY MY SUNROOF BURST IN TO PIECES WITHOUT
  ANY REASON. *TR

- **December 8, 2016- 2008 BMW 3 Series**
  NHTSA ID Number: 10933957
  Incident Date November 18, 2016
  Consumer Location ANCHORAGE, AK
  Vehicle Identification Number: WBAWC73528E
  **Summary of Complaint:**
  NOVEMBER 18, 2016, AT APPROXIMATELY 7:45 AM, I WAS DRIVING ON
  SEWARD HIGHWAY TOWARDS WEST INTERNATIONAL AIRPORT ROAD IN
  ANCHORAGE, ALASKA AND ALL OF A SUDDEN MY SUNROOF EXPLODED
  AND GLASS SHARDS FELL ABOVE MY HEAD AND ALL OVER THE INTERIOR

OF MY CAR. I CALLED BMW CORPORATE FOR A RESOLUTION BUT THEY INITIALLY DENIED MY CLAIM SAYING IT MUST HAVE BEEN HIT WITH A ROCK AND I SHOULD BE CALLING MY CAR INSURANCE INSTEAD. I CONTACTED BMW CORPORATE FOR THE SECOND TIME. THEY WERE ABLE TO ESCALATE MY ISSUE AND OFFERED ME A "GOODWILL" OFFER TO REPLACE ALL PARTS INVOLVED FREE OF CHARGE ON MY ISSUE, BUT NOT LABOR. LABOR CHARGE IS APPROXIMATELY $900 AND THEY REQUIRE IT TO BE DONE AT THE DEALERSHIP. IT IS ABSURD! I'M NOT PAYING FOR A DAMAGE WHICH I'M NOT RESPONSIBLE. IT SEEMS LIKE THEY ARE NOT CONSIDERING THIS AS A BIG PROBLEM AND RATHER DENYING DEFECTS ON THEIR SUNROOFS. I WAS FURIOUS AND EXCLAIMED THAT IT IS A SAFETY ISSUE AND I COULD HAVE BEEN INJURED, COULD HAVE BEEN KILLED, OR WORSE, COULD HAVE KILLED SOMEONE ELSE. WITH THEIR "GOODWILL" OFFER AND THE ABSURD LABOR CHARGE, I DON'T THINK I COULD GET THIS ISSUE RESOLVED WITHOUT THE HELP OF NHTSA TO PRESS BMW TO DO FURTHER INVESTIGATION. THIS ISSUE HAS TO BE FIXED ASAP BEFORE SOMEONE GETS KILLED. *TR

- **February 7, 2017- 2014 BMW X5**
  NHTSA ID Number: 10950065
  Incident Date January 14, 2017
  Consumer Location LAKE OSWEGO, OR
  Vehicle Identification Number N/A
  **Summary of Complaint:**
  TL* THE CONTACT OWNS A 2014 BMW X5. WHILE DRIVING AT AN UNKNOWN SPEED, AN ABNORMAL BANG SOUND EMITTED FROM THE VEHICLE. THE CONTACT PULLED OVER AND DISCOVERED THAT THE SUN ROOF EXPLODED FROM WITHIN THE VEHICLE. THE CONTACT AND THE DRIVER SUSTAINED HEARING LOSS THAT REQUIRED MEDICAL ATTENTION. THE VEHICLE WAS TAKEN TO THE DEALER AND THE SUN ROOF WAS REPLACED; HOWEVER, THE CAUSE OF THE FAILURE WAS NOT DETERMINED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE FAILURE MILEAGE AND VIN WERE UNKNOWN.

- **April 18, 2017- 2016 BMW X5**
  NHTSA ID Number: 10979007
  Incident Date April 13, 2017
  Consumer Location Unknown
  Vehicle Identification Number N/A
  **Summary of Complaint:**
  WHILE DRIVING DOWN THE HIGHWAY, WITHOUT OVERPASSES OR CLIFFS NEAR, THE SUNROOF EXPLODED OUTWARD, AND RAINING GLASS DOWN ON TO THE PASSENGERS. THE TEMPERATURE WAS MODERATE. VEHICLE HAS APPROX 6000 MILES.

60.     In addition to NHTSA complaints, there are multiple blogs and websites where consumers have complained about experiencing an exploding or shattering Defective Sunroof in one of the Class Vehicles.

## V.     FURTHER ALLEGATIONS

61.     Defendants failed to inform Class Vehicle owners and lessees prior to purchase or lease of the Class Vehicles or during the express warranty period that the Defective Sunroofs were defective and may explode or shatter.  Defendants misrepresented by affirmative conduct and/or by omission and/or by fraudulent concealment the existence of the defect in the Defective Sunroofs in the Class Vehicles.

62.     Defendants also failed to inform Class Vehicle owners and lessees at the time of purchase or lease that the Defective Sunroofs in their Class Vehicles had been inadequately tested prior to the sale or lease of the Class Vehicles.

63.     By as early as 2002, Defendants knew that the Class Vehicles contained Defective Sunroofs that could explode or shatter.  Despite this knowledge, Defendants continued to sell Class Vehicles with Defective Sunroofs.

64.     On information and belief, certain Class members were informed by Defendants that they would not repair or replace the Defective Sunroofs free of charge as promised in the applicable warranties.

65.     Defendants refused to fully reimburse or compensate certain Class members for vehicle repair expenses or provide a suitable substitute or replacement vehicles.

66.     Despite actual and constructive knowledge of defects in the Defective Sunroofs, Defendants breached the applicable express warranties by failing to cure Class Vehicle defects within the express warranty period.

67.     Through no fault of their own, Plaintiff and members of the Classes had no knowledge of the defect in the Defective Sunroofs prior to purchasing or leasing the Class Vehicles or during the applicable express warranty periods.

68.     Defendants' misrepresentations and fraudulent statements were received by Plaintiff and members of the Classes prior to and at the point of their Class Vehicle purchase or lease, including misrepresentations and omissions in advertising, the owner's manual and the New Vehicle Limited Warranty pamphlet.    These representations and omissions created a reasonable belief that the Class Vehicles did not contain a defect in the Defective Sunroofs, and that Defendants would repair or replace any defect in Class Vehicles under the applicable warranties.

69.     Defendants fraudulently omitted material facts concerning Class Vehicles, including that the defect existed in the Defective Sunroofs, in order to deceive Plaintiff and members of the Classes and sell or lease additional Class Vehicles.    Defendants knew or should have known that the defect was material to Plaintiff and Class members.

70.     Had Defendants informed Plaintiff and members of the Classes of the defect in the Defective Sunroofs prior to sale or lease of the Class Vehicles, Plaintiff and members of the Classes would not have purchased or leased their respective Class Vehicles or would have paid substantially less.    Had Defendants informed Plaintiff and members of the Classes of the defect in the Defective Sunroofs during the warranty period, Plaintiff and members of the Classes would have had the Defective Sunroofs replaced free of charge under their applicable warranties.

71.     As a proximate and direct result of Defendants' unfair and deceptive acts and practices, Plaintiff and members of the Classes purchased or leased Class Vehicles and have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for

diagnosis, repair and/or replacement of the Defective Sunroofs; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective Sunroofs; and/or (3) the diminished resale value of the Class Vehicles containing the Defective Sunroofs.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

72.    Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the defect in the Defective Sunroofs and the misrepresentations and omissions alleged herein.  Through no fault or lack of diligence, Plaintiff and members of the Classes were deceived regarding the defect in the Defective Sunroofs and could not reasonably discover the latent nature of the defect.

73.    Plaintiff and members of the Classes could not reasonably discover Defendants' deception with respect to the defect in the Defective Sunroofs in the Class Vehicles prior to experiencing an exploding or shattering Defective Sunroof.  As alleged herein, the existence of the Defective Sunroofs and corresponding safety risk were material to Plaintiffs and members of the Classes at all relevant times.  Within the time period of any applicable statutes of limitations, Plaintiff and members of the Classes could not have discovered through the exercise of reasonable diligence that Defendants were concealing the defect in the Defective Sunroofs.

74.    Plaintiff and members of the Classes did not discover and did not know of any facts that would have caused a reasonable person to suspect that Defendants were concealing a latent defect and/or that the Class Vehicles contained Defective Sunroofs prone to exploding or shattering and an associated safety risk.

75.    At all times, Defendants are and were under a continuous duty to disclose to Plaintiff and members of the Classes the true standard, quality and grade of the Class Vehicles

and to disclose the defect in the Defective Sunroofs and potential safety risk associated with the exploding or shattering of the Defective Sunroofs.

76.    Defendants knowingly, actively and affirmatively concealed the facts alleged herein including the defect in the Defective Sunroofs.  Plaintiff and members of the Classes reasonably relied on Defendants' knowing, active and affirmative concealment.

77.    Defendants fraudulently attributed the exploding or shattering Defective Sunroofs to other factors and/or exculpating conditions for which Defendants had no responsibility when, in reality, the Defective Sunroofs were exploding or shattering due to defects in design, manufacture, materials and/or workmanship.

78.    For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' fraudulent concealment and Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VII.    CLASS ACTION ALLEGATIONS

79.    Plaintiff brings this proposed action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), (b)(2) and/or (b)(3) on behalf of himself and all members of the proposed Class and Sub-Classes defined as follows:

> **Nationwide Class**: All persons or entities in the United States that purchased, leased or own a Class Vehicle (the "Nationwide Class" or "Class");
>
> **California Sub-Class:** All persons or entities who purchased or leased a Class Vehicle in the State of California and all persons or entities in the State of California who purchased, leased or own a Class Vehicle (the "California Sub-Class"); and
>
> **Song-Beverly Sub-Class:** All persons or entities who purchased or leased a Class Vehicle in the State of California (the "Song-Beverly Sub-Class") (together with the California Sub-Class, the "Sub-Classes").

80.    Excluded from the Class and Sub-Classes are Defendants and their parents, subsidiaries and corporate affiliates, officers, directors, employees, assigns, and successors, the

court, court staff, Defendants' counsel and all respective immediate family members of the excluded entities described above. Also excluded from the Class and Sub-Classes are any and all claims involving personal injury. Plaintiff reserves the right to revise the definition of the Class and Sub-Classes based upon subsequently discovered information and reserves the right to establish additional Sub-Classes where appropriate. The Class and Sub-Classes are collectively referred to herein as the "Classes."

81.    The Classes are so numerous that individual joinder of all potential members is impracticable. Plaintiff believes that there are at least thousands of proposed members of the Classes throughout the United States.

82.    Common questions of law and fact exist as to all members of the Classes and predominate over any issues solely affecting individual members of the Classes. The common and predominating questions of law and fact include, but are not limited to:

(a) Whether the Defective Sunroofs installed in the Class Vehicles are prone to exploding or shattering;

(b) Whether the Defective Sunroofs installed in the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

(c) Whether the Defective Sunroofs installed in the Class Vehicles present a safety risk;

(d) Whether Defendants knew or should have known that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(e) Whether Defendants had a duty to disclose that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(f) Whether Defendants breached their duty to disclose that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(g) Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(h) Whether Defendants negligently or falsely misrepresented or omitted material facts including the fact that the Defective Sunroofs installed in the Class Vehicles are defective and/or prone to exploding or shattering and/or present a safety risk;

(i) Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality or grade of the Class Vehicles and the defect in the Defective Sunroofs;

(j) Whether Defendants breached their express warranties in that Class Vehicles were defective with respect to manufacture, workmanship and/or materials;

(k) Whether Defendants breached their implied warranties in that Class Vehicles were defective with respect to design, manufacture, workmanship and/or materials;

(l) Whether Defendants violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*;

(m) Whether Defendants were unjustly enriched by the conduct alleged herein;

(n) Whether members of the Classes would have had the Defective Sunroofs repaired or replaced if Defendants had disclosed, prior to the expiration of the warranty periods, that the Defective Sunroofs were defective and/or prone to premature exploding or shattering;

(o) Whether Defendants actively concealed or omitted material facts from Plaintiff and members of the Classes in order to, *inter alia,* sell more Class Vehicles and/or transfer the costs associated with repair or replacement of the Defective Sunroofs to Plaintiff and the Classes;

(p) Whether Defendants committed unfair and deceptive business act practices by failing to inform owners and lessees of Class Vehicles prior to purchase and/or lease and/or during the express warranty period that the Defective Sunroofs were defective and prone to exploding or shattering, and/or that this defect posed a significant safety risk;

(q) Whether damages, restitution, equitable, injunctive, compulsory, or other relief is warranted; and

(r) Whether the court should establish a constructive trust funded by the benefits conferred upon the Defendants by their wrongful and unlawful conduct.

83.    Plaintiff's claims are typical of the claims of the Classes Plaintiff seeks to represent. As alleged herein, Plaintiffs and the Classes sustained damages arising out of the same illegal actions and conduct by Defendants.

84.    Plaintiff is willing and prepared to serve the Class and Sub-Classes in a representative capacity with all of the obligations and duties material thereto. Plaintiff will fairly and adequately protect the interests of the Class and Sub-Classes and has no interests adverse to or in conflict with the interests of the other members of the Classes.

85.    Plaintiff's interests are co-extensive with and are not antagonistic to those of absent members within the Classes.  Plaintiff will undertake to represent and protect the interests of absent members within the Classes and will vigorously prosecute this action.

86.    Plaintiff has engaged the services of the undersigned counsel. Counsel is experienced in complex litigation, will adequately prosecute this action, and will assert and protect the rights of, and otherwise represent, Plaintiff and absent members of the Classes.

87.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this litigation that would preclude its maintenance as a class action.

88.    Class action status is warranted under Rule 23(b)(3) because questions of law or fact common to the members of the Classes predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

89.    The Classes may also be certified under Rule 23(b)(1)(A) and (B) because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members of the Classes, which would establish incompatible standards of conduct for Defendants, would be dispositive of the interests of nonparties to the individual adjudications, and would substantially impair the ability of such nonparties to protect their interests.

90.    The Classes may also be certified under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to the Classes, thereby making it appropriate to award final injunctive relief or corresponding declaratory relief with respect to the Classes.

91.    The interest of members within the Classes in individually controlling the prosecution of separate actions is theoretical and not practical. The Classes have a high degree of similarity and are cohesive, and Plaintiff anticipates no difficulty in the management of this matter as a class action.

## VIII.   CLAIMS FOR RELIEF

**COUNT I**

**FRAUD**
**(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

92.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

93.    Plaintiff brings this count on behalf of himself and the members of the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

94.    Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, exposing drivers, occupants and members of the public to a safety risk.  Defendants intended that Plaintiff and members of the Classes rely on Defendants' misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct, members of the Classes have suffered actual damages.

95.    Defendants owed a duty to disclose the Defective Sunroofs and their corresponding safety risk to Plaintiff and members of the Classes because Defendant possessed superior and exclusive knowledge regarding the defect and the risk associated with the Defective Sunroofs. Rather than disclose the defect, Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in the Class Vehicles are defective and expose drivers and occupants to exploding or shattering

33

Defective Sunroofs in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective Sunroofs.

96.     As a result of Defendants' failure to disclose to members of the Classes the material fact that the Defective Sunroofs installed in Class Vehicles are defective and prone to exploding or shattering, owners and lessees of Class Vehicles are required to spend thousands of dollars to repair or replace the Defective Sunroofs and/or other vehicle parts damaged during the exploding or shattering of the Defective Sunroofs, or sell their vehicles at a substantial loss.  The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement the Defective Sunroofs and because Plaintiff and members of the Classes had a reasonable expectation that the Class Vehicles would not suffer from exploding or shattering Defective Sunroofs that would present a safety risk.

97.     The fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the Defective Sunroofs explode or shatter, drivers and occupants may be sprayed with glass and injured.  Drivers and occupants of the Class Vehicles are also at risk for collisions caused by driver distraction as a result of an exploding or shattering Defective Sunroof, and the general public is also at risk for being involved in an accident with a Class Vehicle.  Plaintiff and members of the Classes would not have purchased the Class Vehicles but for Defendants' omissions and concealment of material facts regarding the nature and quality of the Class Vehicles and existence of the defect in the Defective Sunroofs, or would have paid less for the Class Vehicles.

98.     Defendants knew their false misrepresentation, concealment and suppression of material facts was false and misleading and knew the effect of concealing those material facts. Defendants knew their concealment and suppression of the defect in the Defective Sunroofs would sell more Class Vehicles and would discourage Plaintiff and members of the Classes from seeking replacement or repair of the Defective Sunroofs within the warranty periods. Further, Defendants intended to induce Plaintiff and members of the Classes into purchasing or leasing the Class Vehicles and discourage them from seeking replacement or repair of the Defective Sunroofs within the warranty periods, thereby unlawfully transferring the cost of repair or replacement from Defendants to Plaintiff and members of the Classes, in order to decrease costs and increase profits.

99.     In connection with the purchase or lease of each of the Class Vehicles, Defendants provided warranty coverage for the Class Vehicles under one or more manufacturer's warranties. For example, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first. Under the warranties provided to Plaintiff and members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.

100.     Although Defendants informed Plaintiff and members of the Classes that they would stand behind the quality and reliability of the Class Vehicles and repair or remedy any issues that arose during the warranty periods, Defendants knew (at the time of sale or lease and thereafter) that the Class Vehicles contained a defect in the Defective Sunroofs, concealed the defect, and never intended to repair or replace the Defective Sunroofs during the warranty

periods. To date, Defendants have not provided Plaintiff or members of the Classes with a repair or remedy for the Defective Sunroofs, and have not offered to replace the Defective Sunroofs in Class Vehicles.

101.    Defendants acted with malice, oppression and fraud.

102.    Plaintiff and members of the Classes reasonably relied upon Defendants' knowing, affirmative and active false representations, concealment and omissions. As a direct and proximate result of Defendants' false representations, omissions and active concealment of material facts regarding the defect in the Defective Sunroofs, Plaintiff and members of the Classes have suffered actual damages in an amount to be determined at trial.

## COUNT II

### NEGLIGENT MISREPRESENTATION
### (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE CALIFORNIA SUB-CLASS)

103.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

104.    Plaintiff brings this count on behalf of himself and the members of the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

105.    Defendants owed a duty to disclose the defect in the Defective Sunroofs and its corresponding safety risk to Plaintiff and members of the Classes because Defendants possessed superior and exclusive knowledge regarding the defect and the risks associated with the Defective Sunroofs exploding or shattering.

106.    Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering, exposing drivers,

occupants and members of the public to safety risks. As a direct result of Defendants' negligent conduct, Plaintiff and members of the Classes have suffered actual damages.

107.    As a result of Defendants' failure to disclose, in advertising, owners' manuals, maintenance schedules or elsewhere, to Plaintiff and members of the Classes the material fact that the Defective Sunroofs installed in the Class Vehicles are defective and prone to exploding or shattering, owners and lessees of the Class Vehicles are required to spend thousands of dollars to repair or replace the Defective Sunroofs and/or other vehicle parts damaged by the explosion, or sell their vehicles at a substantial loss. The fact that the Defective Sunroofs installed in the Class Vehicles are prone to exploding or shattering is material because no reasonable consumer expects that he or she will have to spend thousands of dollars for diagnosis, repair or replacement of the Defective Sunroofs, and because Plaintiff and members of the Classes had a reasonable expectation that the vehicles would not suffer from an exploding or shattering Defective Sunroof that would present a safety risk.

108.    The fact that the Defective Sunroofs installed in the Class Vehicles are prone to exploding or shattering is also material because it presents a safety risk and places the driver and occupants at risk of serious injury or death when they are showered with glass from an exploding Defective Sunroof, and when the driver of a Class Vehicle is distracted by such an explosion. Plaintiff and members of the Classes would not have purchased the Class Vehicles but for Defendants' negligent false representations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the defect in the Defective Sunroofs, or would have paid less for the Class Vehicles.

109.    Plaintiff and members of the Classes justifiably relied upon Defendants' negligent false representations and omissions of material facts. As a direct and proximate result of

Defendants' negligent false representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the defect in the Defective Sunroofs, Plaintiff and members of the Classes have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

110.     As a direct and proximate result of Defendants' negligent misrepresentations and/or omissions, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial, including, but not limited to, compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III

### BREACH OF EXPRESS WARRANTY
### (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE CALIFORNIA SUB-CLASS)

111.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

112.     Plaintiff brings this count on behalf of himself and the members of the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

113.     Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles.  Such representations formed the basis of the bargain in Plaintiff's and members of the Classes' decisions to purchase or lease the Class Vehicles.

114.     Defendants are and were at all relevant times merchants and sellers of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

115.     With respect to leases, Defendants are and were at all relevant times lessors of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

116.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

117.    In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.   For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first. Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.   However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage.

118.    Defendants' warranties formed a basis of the bargain that was reached when Plaintiff and members of the Classes purchased or leased their Class Vehicles.

119.    The defect in the Defective Sunroofs existed in the Class Vehicles at the time of sale or lease and within the warranty periods but Plaintiff and Class members had no knowledge of the existence of the defect, which was known and concealed by Defendants.   Despite the applicable warranties, Defendants failed to inform Plaintiff and members of the Classes that the Class Vehicles contained the defect in the Defective Sunroofs during the warranty periods in order to wrongfully transfer the costs of repair or replacement of the Defective Sunroofs to Plaintiff and members of the Classes.

120.    Because of the defect in the Defective Sunroofs, Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation.

121.    Plaintiff and members of the Classes could not have reasonably discovered the defect in the Defective Sunroofs prior to the Defective Sunroofs exploding or shattering.

122.    Defendants breached the express warranty promising to repair and correct a manufacturing defect or defects in materials or workmanship of any parts they supplied.

123.    On information and belief, Defendants have not repaired or replaced the Defective Sunroofs free of charge for Plaintiff and members of the Classes despite the defect in the Defective Sunroofs in the Class Vehicles at the time of sale or lease.

124.    Defendants further breached their express warranties by selling Class Vehicles that were defective with respect to materials, workmanship, and manufacture when Defendants knew the Defective Sunroofs were defective and had an associated safety risk.

125.    Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of materials, workmanship, and manufacture defects which cause exploding or shattering Defective Sunroofs which do not perform as warranted.

126.    Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing.  Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendants have known of and concealed the Defective Sunroofs and, on information and belief, have refused to

repair or replace the Defective Sunroofs free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles.

127.    Any attempt by Defendants to disclaim or limit recovery to the terms of the express warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Classes. Among other things, Plaintiff and the members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Defective Sunroofs are prone to exploding or shattering.

128.    Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and the other members of the Classes whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

129.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties and Plaintiff and members of the Classes were induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

130.    Plaintiffs and members of the Classes have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

131.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiff and members of the Classes have been damaged in an amount to be determined at trial.

132.     Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiff and members of the Classes assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Classes of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

**COUNT IV**

**BREACH OF IMPLIED WARRANTY**
**(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

133.     Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

134.     Plaintiff brings this count on behalf of himself and the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

135.     Plaintiff and members of the Classes purchased or leased the Class Vehicles from Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.  At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

136.     Defendants are and were at all relevant times merchants and sellers of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

137. With respect to leases, Defendants are and were at all relevant times lessors of goods (i.e., Class Vehicles) as defined under the Uniform Commercial Code.

138. The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

139. Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used.

140. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect in the Defective Sunroofs (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranty of merchantability.

141. Defendants cannot disclaim their implied warranties as they knowingly sold or leased a defective product.

142. Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure their breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the defect in the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs free of charge within or outside of the warranty periods despite the defect's existence at the time of sale or lease of the Class Vehicles.

143.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and members of the Classes have been damaged in an amount to be proven at trial.

144.    Any attempt by Defendants to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Classes.  Among other things, Plaintiff and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that the Defective Sunroofs were defective and posed a safety risk.

145.    Further, as manufacturers of consumer goods, Defendants are precluded from excluding or modifying an implied warranty of merchantability or limiting consumer remedies for breach of this warranty.

146.    Plaintiff and members of the Classes have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

147.    The Class Vehicles are not safe and reliable and owners and lessees of these vehicles have lost confidence in the ability of Class Vehicles to perform the function of safe reliable transportation without the likelihood of unanticipated sudden exploding or shattering of the Defective Sunroofs.  Defendants are estopped by their conduct, as alleged herein, from

disclaiming any and all implied warranties with respect to the Defective Sunroofs in Class Vehicles.

148.    The applicable statute of limitations for the implied warranty claim has been tolled by the discovery rule, fraudulent concealment and the terms of the express warranty.

## COUNT V

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT ("MMWA"), 15 U.S.C. § 2301 *ET SEQ*. (ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE CALIFORNIA SUB-CLASS)

149.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

150.    Plaintiff brings this count on behalf of himself and the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

151.    Plaintiff satisfies the MMWA jurisdictional requirement because he alleges diversity jurisdiction under CAFA, 28 U.S.C. § 1332(d)(2).

152.    Plaintiff and members of the Classes are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

153.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

154.    The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

155.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

156.    Defendants provided Plaintiff and members of the Classes with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  In connection with the

purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under warranties provided to members of the Classes, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.  However, on information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage within or outside of the applicable warranty periods.

157.    Plaintiffs and members of the Classes experienced the defect in the Defective Sunroofs within the warranty periods but Defendants failed to inform Plaintiff and members of the Classes of the existence of the Defective Sunroofs and associated safety risk, and failed to provide a suitable repair or replacement of the Defective Sunroofs free of charge within a reasonable time.

158.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect.  The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Classes. Among other things, Plaintiff and members of the Classes did not determine these time limitations, the terms of which unreasonably favored Defendants.  A gross disparity in

bargaining power existed between Defendants and members of the Classes, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease.

159.    The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

160.    Defendants breached these warranties by misrepresenting the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the defect in the Defective Sunroofs.  Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that is prone to exploding or shattering and fails to operate as represented by Defendants.

161.    Affording Defendants a reasonable opportunity to cure their breach of warranties would be unnecessary and futile. At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the defect in the Defective Sunroofs, but failed to repair or replace the Defective Sunroofs and/or disclose the defect in the Defective Sunroofs.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

162.    Plaintiff and members of the Classes would suffer economic hardship if they returned their Class Vehicles, but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiff and members of the Classes have not re-accepted their Class Vehicles by retaining them.

163.    The amount in controversy of Plaintiff's individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

164.    Plaintiff, individually and on behalf of the Classes, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

**COUNT VI**

**UNJUST ENRICHMENT**
**(ON BEHALF OF THE NATIONWIDE CLASS OR, ALTERNATIVELY, ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

165.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

166.    Plaintiff brings this count on behalf of himself and the members of the Nationwide Class or, alternatively, on behalf of the California Sub-Class.

167.    Plaintiff and members of the Classes conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the defect in the Defective Sunroofs.

168.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the defect in the Defective Sunroofs in the Class Vehicles.

169.    As a proximate result of Defendants' false representations, omissions and concealment of the defect in the Defective Sunroofs in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiff and members of the Classes.  It would be inequitable for Defendants to

retain their ill-gotten profits without paying the value thereof to Plaintiff and members of the Classes.

170.    Plaintiff and members of the Classes are entitled to restitution of the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

171.    Plaintiff and members of the Classes seek an order requiring Defendants to disgorge their gains and profits to Plaintiff and members of the Classes, together with interest, in a manner to be determined by the Court.

**COUNT VII**

**VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT,
CAL. CIV. CODE § 1750 *ET SEQ.*
(ON BEHALF OF THE CALIFORNIA SUB-CLASS)**

172.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

173.    Plaintiff brings this count on behalf of himself and the members of the California Sub-Class.

174.    The Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA") "protect[s] consumers against unfair and deceptive business practices."  *See* Cal. Civ. Code § 1760.

175.    Plaintiff and members of the California Sub-Class are consumers within the meaning of Cal. Civ. Code § 1761(d).

176.    Plaintiff and members of the California Sub-Class purchased their Class Vehicles primarily for personal, family, or household purposes.

177.    The Class Vehicles are goods within the meaning of Cal. Civ. Code § 1761(a).

49

178.    Defendants violated and continue to violate the CLRA by engaging in unfair and deceptive trade practices, including, *inter alia*: (1) representing that Class Vehicles have characteristics which they do not; (2) representing that the Class Vehicles are of a particular standard when they are of another; and (3) advertising the Class Vehicles with the intent not to sell them as advertised.  *See* Cal. Civ. Code § 1170.

179.    Defendants further violated the CLRA by failing to disclose within the warranty period, or any time thereafter, the material fact that the Class Vehicles incorporate Defective Sunroofs that are defective and expose drivers and their passengers to the safety risk of sudden explosion and/or shattering of the sunroofs.

180.    Defendants also violated the CLRA by actively concealing the material fact that the Class Vehicles incorporate Defective Sunroofs that are defective and expose drivers and their passengers to the safety risk of sudden explosion and/or shattering of the sunroofs for the purpose of selling additional Class Vehicles and/or transferring the cost of repair or replacement of the Defective Sunroofs to Plaintiff and California Sub-Class members.

181.    The fact that the Defective Sunroofs installed in the Class Vehicles are defective and expose drivers and their passengers to the risk of sudden exploding and/or shattering of the sunroofs is material because Plaintiff and members of the California Sub-Class had a reasonable expectation that the vehicles would not suffer from Defective Sunroofs that would expose them and other vehicle occupants to the risk of sudden exploding and/or shattering of the sunroofs, and an associated safety risk.  No reasonable consumer expects a vehicle to incorporate a Defective Sunroof that exposes drivers and other occupants to the risk of sudden exploding and/or shattering of the sunroof.

182.    Defendants have knowingly and willfully engaged in the unfair and deceptive trade practices alleged herein.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety risk.

183.    Defendants' unlawful acts and practices affect the public interest, and trade and commerce in the State of California, and present a continuing safety risk to Plaintiff and members of the California Sub-Class.

184.    As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and members of the California Sub-Class have suffered actual damages and/or injury in fact, including, *inter alia*: (1) out-of-pocket monies for diagnosis, repair and/or replacement of the Defective Sunroofs; (2) the difference in value between the Class Vehicles promised and warranted, and the Class Vehicles containing the Defective Sunroofs; and/or (3) the diminished resale value of the Class Vehicles containing the Defective Sunroofs.

185.    With this filing, and on this Count, Plaintiff and members of the California Sub-Class seek an order enjoining Defendants' unfair and deceptive practices.

186.    Defendants' violations of the CLRA were willful and oppressive.

187.    Plaintiff has provided Defendants with notice of their violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to Defendants contemporaneously with the filing of this complaint.  Upon the expiration of the thirty days from the date of mailing the notice, Plaintiff and the California Sub-Class members will amend this complaint to include a request for damages under the CLRA.

## COUNT VIII

### VIOLATION OF THE UNFAIR COMPETITION LAW,
### CAL. BUS. & PROF. CODE § 17200 *ET SEQ.*
### (ON BEHALF OF THE CALIFORNIA SUB-CLASS)

188.    Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

189.    Plaintiff brings this count on behalf of himself and the members of the California Sub-Class.

190.    California Business & Professions Code § 17200 et seq. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice."

191.    As alleged herein, Defendants have violated the UCL by engaging in unlawful, unfair and fraudulent business acts or practices.

192.    In violation of the UCL, Defendants employed unfair, unlawful and deceptive acts or practices, fraud, false pretense, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale and/or lease of Class Vehicles. Defendants knowingly concealed, suppressed and/or omitted material facts regarding the Defective Sunroofs and associated safety risk and misrepresented the standard, quality or grade of the Class Vehicles, which directly caused harm to Plaintiff and members of the Classes.

193.    Defendant actively suppressed the fact that the Defective Sunroofs in Class Vehicles are defective and present a safety risk because of materials, workmanship, design and/or manufacturing defects. Further, Defendants employed unfair, unlawful and fraudulent business practices to deny repair or replacement of Defective Sunroofs and failed to repair or replace the Defective Sunroofs free of charge within a reasonable time in violation of the UCL.

194.    Defendants breached their warranties, the CLRA, the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act as alleged herein in violation of the UCL.

195.    Defendants' unfair, unlawful and fraudulent business practices were likely to deceive a reasonable consumer. Plaintiff and members of the California Sub-Class had no reasonable way to know that Class Vehicles contained Defective Sunroofs, which were defective in materials, workmanship, design and/or manufacture and posed a safety risk. Defendants possessed superior knowledge as to the quality and characteristics of the Class Vehicles, including the Defective Sunroofs and associated safety risk, and any reasonable consumer would have relied on Defendants' misrepresentations and omissions as Plaintiff and members of the California Sub-Class did.

196.    Defendants intentionally and knowingly misrepresented and omitted facts regarding the Defective Sunroofs and associated safety risk with the intent to mislead Plaintiff and members of the California Sub-Class.  Defendants knew, or should have known, that the Defective Sunroofs are defective and expose drivers and occupants of the Class Vehicles to the risk of an exploding or shattering sunroof that may shower the driver and occupants with shards of glass.

197.    Defendants owed a duty to disclose the Defective Sunroofs and corresponding safety risk to Plaintiff and members of the California Sub-Class because Defendants possessed superior and exclusive knowledge regarding the defect and the risk associated with the Defective Sunroofs. Rather than disclose the defect, Defendants engaged in unfair, unlawful and fraudulent business practices in order to sell additional Class Vehicles and avoid the cost of repair or replacement of the Defective Sunroofs.

198.    Defendants' unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective Sunroofs were intended to mislead consumers and misled Plaintiff and members of the California Sub-Class.

199.    At all relevant times, Defendants' unfair and deceptive acts or practices, affirmative misrepresentations and/or omissions regarding the Defective Sunroofs and corresponding safety risk were material to Plaintiff and members of the California Sub-Class. When Plaintiff and members of the California Sub-Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles would be free from defects and would not contain a Defective Sunroof prone to exploding or shattering. Had Defendants disclosed that the Defective Sunroofs were prone to exploding or shattering and/or pose an unavoidable safety risk, Plaintiff and members of the California Sub-Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles.

200.    Defendants had a continuous duty to Plaintiff and members of the California Sub-Class to refrain from unfair, unlawful and fraudulent practices under the UCL and to disclose the defect and associated safety risks. Defendants' unfair, unlawful and fraudulent acts or practices, affirmative misrepresentations and/or material omissions regarding the Defective Sunroofs and corresponding safety risk are substantially injurious to consumers. As a result of Defendants' knowing, intentional concealment and/or omission of the Defective Sunroofs and associated safety risk in violation of the UCL, Plaintiff and members of the California Sub-Class have suffered harm and/or continue to suffer harm by the threat of being exposed to an exploding or shattering Defective Sunroof and/or an unavoidable safety risk, and damages to be determined at trial. Owners and lessees of Class Vehicles also suffered an ascertainable loss in the form of, *inter alia*, out-of-pocket costs for diagnosis and repair or replacement of the Defective Sunroofs,

and the diminished value of their vehicles as a result of Defendants' unfair, unlawful and fraudulent acts and practices in the course of its business.

201. Defendants have knowingly and willfully engaged in the unfair, unlawful and fraudulent business practices alleged herein. Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed defect and corresponding safety risk.

202. Defendants' unfair, unlawful and fraudulent acts and practices have harmed and continue to harm Plaintiff and members of the California Sub-Class, have negatively affected the public interest, and present a continuing safety risk to Plaintiff and members of the California Sub-Class.

203. Plaintiff and members of the California Sub-Class seek an order enjoining Defendants' unfair, unlawful, and fraudulent practices and awarding costs, attorneys' fees and restitution, disgorgement of funds, and any other just and proper relief available under the UCL and California law.

## COUNT IX

**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT, CAL. CIV. CODE § 1791 *ET SEQ.* (ON BEHALF OF THE SONG-BEVERLY SUB-CLASS)**

204. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

205. Plaintiff brings this count on behalf of himself and members of the Song-Beverly Sub-Class.

206. Plaintiff and members of the Song-Beverly Sub-Class purchased or leased the Class Vehicles from Defendant by and through Defendants' authorized agents for retail sales, or

were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.

207.    At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of Class Vehicles. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

208.    Defendants provided Plaintiff and members of the Song-Beverly Sub-Class with one or more express warranties, which are covered under 15 U.S.C. § 2301(6). For illustrative purposes, Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first.  Under warranties provided to members of the Song-Beverly Sub-Class, Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs, at no cost to owners and lessees of the Class Vehicles.  As alleged herein, Defendants breached these warranties. On information and belief, Defendants have concealed the defect in the Defective Sunroofs by, *inter alia*, blaming the damage on rocks or other foreign matter, and refusing to provide warranty coverage.

209.    Plaintiff and members of the Song-Beverly Sub-Class experienced the defect in the Defective Sunroofs within the warranty periods but Defendants failed to inform Plaintiff and members of the Song-Beverly Sub-Class of the existence of the Defective Sunroofs and associated safety risk, and failed to provide a suitable repair or replacement of the Defective Sunroofs free of charge within a reasonable time.

210.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used, including for safe and

reliable transportation. The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and were and are not fit for the ordinary purpose of providing safe and reliable transportation. The Class Vehicles contain an inherent defect in the Defective Sunroofs (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants. Thus, Defendants breached their implied warranties of merchantability and fitness.

211.    Any attempt by Defendants to disclaim or limit their express or implied warranties is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold or leased a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods are also unconscionable and inadequate to protect Plaintiff and members of the Song-Beverly Sub-Class. Among other things, Plaintiff and members of the Song-Beverly Sub-Class did not determine these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and members of the Song-Beverly Sub-Class, and Defendants knew or should have known that the Class Vehicles were defective at the time of sale or lease and that they posed a safety risk.

212.    Defendants were provided notice of the defect in the Defective Sunroofs by numerous consumer complaints made to its authorized dealers nationwide, complaints to NHTSA, and through their own testing. Affording Defendants a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Defendants have known of and concealed the Defective Sunroofs and, on information and belief, have refused to repair or replace the Defective Sunroofs free of charge within a reasonable time.

213. Defendants breached their express and implied warranties in violation of Cal. Civ. Code § 1791 *et seq.*

214. As a direct and proximate result of Defendants' breach of their express and implied warranties, Plaintiff and members of the Song-Beverly Sub-Class have suffered actual damages in an amount to be proven at trial.

215. Plaintiff and members of the Song-Beverly Sub-Class have been excused from performance of any warranty obligations as a result of Defendants' conduct described herein.

216. Plaintiff and members of the Song-Beverly Sub-Class seek actual damages, costs, attorneys' fees, and statutory damages as a result of Defendants' willful conduct alleged herein. Plaintiff and members of the Song-Beverly Sub-Class also seek reimbursement, replacement of the Defective Sunroofs, and/or revocation of the purchase or lease of the Class Vehicles, and all other relief available under Cal. Civ. Code § 1794.

217. The applicable statute of limitations for the express and implied warranty claims have been tolled by the discovery rule and fraudulent concealment.

218. The applicable statute of limitations for implied warranty claims has also been tolled by the terms of the express warranty.

### COUNT X

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA"), N.J.S.A. § 56:8-2 *ET SEQ.* (ON BEHALF OF THE NATIONWIDE CLASS)

219. Plaintiff incorporates and realleges each preceding paragraph as though fully set forth herein.

220. Plaintiff brings this claim on behalf of himself and the members of the Nationwide Class.

221.    At all relevant times, BMW NA and MINI have maintained their principal places of business in Woodcliff Lake, New Jersey. On information and belief, at all times relevant to this action, BMW NA and MINI made decisions related to advertisement, marketing, sales, warranties, and recalls of vehicles under the BMW and MINI brand names from their Woodcliff Lake, New Jersey headquarters.

222.    The NJCFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . " N.J.S.A. § 56:8-2.

223.    Plaintiff and members of the Nationwide Class are consumers who purchased or leased Class Vehicles for personal, family, or household use.

224.    In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles, which contain the Defective Sunroofs and present an undisclosed safety risk to drivers and occupants of the Class Vehicles. Further, Defendants misrepresented the standard, quality or grade of the Class Vehicles which were sold or leased with the latent defect and failed to disclose the defect in the Defective Sunroofs and corresponding safety risk in violation of the NJCFA.

225.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiff and members of the Nationwide Class. When Plaintiff and members of the Nationwide Class purchased or leased their Class Vehicles, they reasonably relied on the reasonable

59

expectation that the Class Vehicles' Defective Sunroofs would not explode or shatter unexpectedly, would not require repair or replacement, and/or would not pose an unavoidable safety risk. Had Defendants disclosed that the Defective Sunroofs were prone to exploding or shattering and/or an unavoidable safety risk, Plaintiff and members of the Nationwide Class would not have purchased or leased the Class Vehicles, or would have paid less for their vehicles. Further, had Defendants disclosed that the Defective Sunroofs in the Class Vehicles would not last beyond the warranty periods without need for repair or replacement, Plaintiff and members of the Nationwide Class would have demanded repair or replacement during the warranty periods at no cost to Plaintiff and members of the Nationwide Class—as provided for in Defendants' warranties.

226. Defendants knowingly concealed, suppressed and/or omitted the existence of the defect in the Defective Sunroofs and safety risk in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.

227. Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

228. Defendants owed a duty to disclose the defect in the Defective Sunroofs and its corresponding safety risk to Plaintiff and members of the Nationwide Class because Defendants possessed superior and exclusive knowledge regarding the defect and the risks associated with the Defective Sunroofs' exploding or shattering. Rather than disclose the defect, Defendants intentionally concealed the defect with the intent to mislead Plaintiff and members of the Nationwide Class in order to sell additional Class Vehicles and wrongfully transfer the cost of

repair or replacement of the Defective Sunroofs to Plaintiff and members of the Nationwide Class.

229.    Defendants knew, or should have known, that the defect in the Defective Sunroofs in the Class Vehicles could explode or shatter showering glass on the driver and occupants. Further, Defendants knew, or should have known, that such explosion could distract the driver and cause the Class Vehicles to become involved in accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

230.    Had Plaintiff and members of the Nationwide Class known about the defect in the Defective Sunroofs at the time of purchase or lease, including the safety risk posed by the defect and the monetary cost of repair, they would not have bought the Class Vehicles or would have paid much less for them.

231.    As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiff and members of the Nationwide Class have suffered and continue to suffer harm by the threat of sudden and unexpected exploding or shattering of the Defective Sunroofs and/or actual damages in the amount of the cost to replace the Defective Sunroofs and other vehicle parts damaged by the explosion, and damages to be determined at trial. Plaintiff and members of the Nationwide Class have also suffered the ascertainable loss of the diminished value of their vehicles.

232.    As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiff and members of the Nationwide Class are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial. *See* N.J.S.A. § 56:8-19.  Plaintiff and members of the Nationwide Class also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any

other just and proper declaratory or equitable relief available under the NJCFA.  *See* N.J.S.A. §
56:8-19.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated,
respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiff
and the Class and Sub-Classes, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal
Rules of Civil Procedure, declaring Plaintiff as the representative of the Class and
Sub-Classes, and Plaintiff's counsel as counsel for the Class and Sub-Classes;

B.    An order awarding declaratory relief and enjoining Defendants from continuing
the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and
practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair
or replace the Defective Sunroofs in all Class Vehicles, and/or buyback all Class
Vehicles, and to fully reimburse and make whole all members of the Classes for
all costs and economic losses;

D.    A declaration that Defendants are financially responsible for all Class notice and
the administration of Class relief;

E.    An order awarding costs, restitution, disgorgement, punitive damages, treble
damages and exemplary damages under applicable law, and compensatory
damages for economic loss and out-of-pocket costs in an amount to be determined
at trial;

F.    An order awarding any applicable statutory and civil penalties;

G.    A declaration that Defendants are required to engage in corrective advertising;

H.      An order requiring Defendants to pay both pre- and post-judgment interest on any

amounts awarded;

I.      An award of costs, expenses and attorneys' fees as permitted by law; and

J.      Such other or further relief as the Court may deem appropriate, just, and

equitable.

## X.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any

and all issues in this action so triable of right.


DATED: December 22, 2017                     Respectfully submitted,

       /s/ James E. Cecchi
James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO, P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
Telephone: (973) 994-1700

Joseph H. Meltzer
Peter A. Muhic
Melissa L. Troutner (*Pro Hac Vice to be filed*)
**KESSLER TOPAZ**
**MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiff and the proposed Classes*