## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVE KEARNEY, JAMES BARR, and ROBIN SCHOENE, on behalf of themselves and all others similarly situated, | Civil Action No. 2:17-cv-13544-WHW-CLW |
| Plaintiffs, | |
| v . | |
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, and BMW of NORTH AMERICA, LLC, | |
| Defendants. | |

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT BMW OF NORTH AMERICA, LLC'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT

Joseph H. Meltzer
Peter A. Muhic
Melissa L. Troutner
**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO,
P.C.**
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................1

FACTUAL BACKGROUND.................................................................2

ARGUMENT ..........................................................................................5

    I.       LEGAL STANDARD ..........................................................5

    II.     DEFENDANT'S CHOICE OF LAW ANALYSIS IS
             PREMATURE.......................................................................6

    III.    DEFENDANT'S "LUMPING" ARGUMENT IS MERITLESS .......7

    IV.    PLAINTIFFS SUFFICIENTLY PLEAD COMMON LAW
             FRAUD ................................................................................10

           A.     Plaintiffs Have Alleged Fraudulent Omission........................10

           B.     Defendant Possessed Exclusive and Superior Knowledge
                 of the Defective Sunroofs and Owed a Duty to Disclose
                 the Defective Sunroof ...........................................................14

    V.     PLAINTIFFS' STATUTORY CONSUMER FRAUD CLAIMS
             SHOULD PROCEED .........................................................16

    VI.    PLAINTIFFS PLEAD VIABLE EXPRESS WARRANTY
             CLAIMS.............................................................................19

           A.     The Defective Sunroofs Are Covered by the Warranty .........20

           B.     The Warranty Fails of Its Essential Purpose ..........................22

           C.     Comprehensiveness of the Warranty is a Basis of the
                 Bargain.................................................................................24

    VII.   PLAINTIFFS PLEAD VIABLE CLAIMS FOR BREACH OF
             THE IMPLIED WARRANTY OF MERCHANTABILITY............26

           A.     Defective Sunroofs are Safety Hazards that Render Class
                 Vehicles Unmerchantable ......................................................27

           B.     Plaintiff Schoene's Contractual Implied Warranty
                 Limited Period is Unconscionable..........................................29

C.    Lack of Privity Does Not Preclude Plaintiff Kearney's
       Implied Warranty Claims...........................................................33

VIII.  UNJUST ENRICHMENT CLAIM....................................................34

IX.   THE ECONOMIC LOSS RULE DOES NOT BAR
       PLAINTIFFS' NEGLIGENT MISREPRESENATION CLAIM......34

X.    PLAINTIFF BARR PROVIDED ADEQUATE AND TIMELY
       NOTICE UNDER THE TEXAS DPTA ..........................................37

XI.   PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT
       CLAIM MEETS PLEADING REQUIREMENTS...........................38

CONCLUSION.................................................................................................39

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Abraham v. Volkswagen Am., Inc.*,
   795 F.2d 238 (2d Cir. 1986) ............................................................................30

*Ackerman v. Coca-Cola Co.*,
   No. 09-cv-0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........................19

*Afzal v. BMW of N. Am., LLC*,
   No. 15-cv-8009, 2016 WL 6126913 (D.N.J. Oct. 17, 2016).............................38

*Alin v. Am. Honda Motor Co.*,
   No. 08-cv-4825, 2010 WL 1372308 (D.N.J. Mar. 31, 2010)......................20, 22

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009).....................................................................7

*Arista Records LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010) .............................................................................12

*Arlandson v. Hartz Mountain Corp.*,
   792 F. Supp. 2d 691 (D.N.J. 2011)...................................................................26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................5, 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................5, 6

*Bryde v. Gen. Motors, LLC*,
   No. 16-cv-02421, 2016 WL 6804584 (N.D. Cal. Nov. 17, 2016).....................33

*Carlson v. General Motors Corp.*,
   883 F.2d 287 (4th Cir. 1989) ......................................................................30, 32

*Cox v. Chrysler Grp., LLC*,
   No. 14-cv-7573, 2015 WL 5771400 (D.N.J. Sept. 30, 2015) .....................20, 22

*Craftmatic Sec. Litig. v. Kraftsow*,
   890 F.2d 628 (3d Cir. 1989) ..............................................................................9

*Deras v. Volkswagen Grp. Of Am., Inc.*,
   No. 17-cv-05452, (N.D. Cal. May 17, 2018) .....................................................28

*Dewey v. Volkswagen AG*,
   558 F. Supp. 2d 505 (D.N.J. 2008) .................................................................30

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) .................................................................29

*Duquesne Light Co. v. Westinghouse Elec. Corp.*,
   66 F.3d 604 (3d Cir. 1995) .............................................................................30

*Dzielak v. Whirlpool Corp.*,
   26 F.Supp.3d 304 (D.N.J. June 16, 2014) .......................................................38

*Ehrlich v. BMW of N. Am., LLC*,
   801 F. Supp. 2d 908 (C.D. Cal. 2010) .............................................................15

*Falk v. Gen. Motors Corp.*,
   496 F. Supp. 2d 1088 (N.D. Cal. 2007).....................................................11, 16

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   MDL No. 2744, 2017 WL 5495091 (E.D. Mich. Nov. 15, 2017).....................34

*Feldman v. Mercedes–Benz USA, LLC*,
   No. 11-cv-00984, 2012 WL 6596830 (D.N.J. Dec. 18, 2012)....................11, 15

*In re Ford Motor Co.E-350 Van Prod. Liab. Litig. (No. II)*,
   MDL No. 03-4558, 2008 WL 4126264 (D.N.J. 2008)......................................29

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
   No. 96-cv-3125, 2001 WL 1266317 (D.N.J. Sept. 30, 1997) .....................27, 29

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009) ...........................................................................5, 6

*Frederico v. Home Depot*,
   507 F.3d 188 (3d Cir. 2007) ..............................................................................11

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
   No. 11-cv-4429, 2012 WL 1574301 (D.N.J. May 3, 2012), *aff'd*,
   525 F. App'x 94 (3d Cir. 2013)...................................................................12, 17

*Gray v. BMW of N. Am., LLC*,
   22 F. Supp. 3d 373 (D.N.J. 2014)..........................................................11, 13, 30

*Green v. BMW of N. Am., Inc.*,
  No. 11-cv-04220, 2013 WL 5287314 (D.N.J. Sept. 17, 2013) ........................26

*Greene v. BMW of N. Am.*,
  No. 11-04220, 2014 WL 47940 (D.N.J. Jan. 7, 2014) .......................................12

*Henderson v. Volvo Cars of N. Am., LLC*,
  No. 09-cv-4146, 2010 WL 2925913 (D.N.J. July 21, 2010)........................30, 31

*Johnson v. Nissan North America, Inc.*,
  272 F. Supp. 3d 1168 (N.D. Cal. 2017)......................................................17, 22

*In re K-Dur Antitrust Litig.*,
  338 F. Supp. 2d 517 (D.N.J. 2004)....................................................................7

*Katz v. Household Int'l, Inc.*,
  91 F.3d 1036 (7th Cir. 1996) .......................................................................9, 11

*Keegan v. Am. Honda Motor Co.*,
  838 F. Supp. 2d 929 (C.D. Cal. 2012)................................................................28

*Kondash v. Kia Motors Am., Inc.*,
  No. 15-cv-00506 (S.D. Ohio June 24, 2016)......................................................28

*Koulajian v. Trek Bicycle Corp.*,
  No. 90-cv-3156, 1992 WL 28884 (S.D.N.Y. Feb. 11, 1992)........................20, 21

*Majdipour v. Jaguar Land Rover N. Am., LLC*,
  No. 12-cv-07849, 2013 WL 5574626 (D.N.J. Oct. 9, 2013)..............................15

*Malleus v. George*,
  641 F.3d 560 (3d Cir. 2011) ..............................................................................5

*Maniscalco v. Brother Int'l (USA) Corp.*,
  709 F.3d 202 (3d Cir. 2013) ...............................................................................7

*McDermott v. Clondalkin Grp., Inc.*,
  No. 15-2782, 2016 WL 2893844 (3d Cir. May 18, 2016) .................................12

*In re Mercedes-Benz Tele Aid Contract Litig.*,
  257 F.R.D. 46 (D.N.J. 2009) ...............................................................................7

*Miller v. Chrysler Grp. LLC*,
  No. 12-cv-00760, 2014 WL 12617598 (D.N.J. June 30, 2014)...................28, 38

*Montich v. Miele USA, Inc.*,
   849 F. Supp. 2d 439 (D.N.J. 2012) ................................................................ 11

*In re MyFord Touch Consumer Litig.*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) ............................................. 14, 15, 16, 33

*Oppenheimer v. Prudential Sec. Inc.*,
   94 F.3d 189 (5th Cir. 1996) ......................................................................... 37

*Payne v. Fujifilm U.S.A., Inc.*,
   No. 07-cv-385, 2007 WL 4591281 (D.N.J. Dec. 28, 2007) ...................... 23, 31

*Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization
Transactions, Inc.*,
   730 F.3d 263 (3d Cir. 2013) .......................................................................... 5

*Philippine Nat'l Oil Co. v. Garrett Corp.*,
   724 F.2d 803 (9th Cir. 1984) ...................................................................... 23

*Phillips v. County of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ......................................................................... 5

*In re Porsche Cars N. Am., Inc.*,
   880 F. Supp. 2d 801 (S.D. Ohio 2012) .................................................. 18, 32

*Precht v. Kia Motors Am., Inc.*,
   No. 14-cv-1148, 2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) ................... 33

*Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*,
   No. 12-cv-6590, 2013 WL 1431680 (D.N.J. Apr. 9, 2013) ............................ 7

*Robinson v. Kia Motors Am., Inc.*,
   No. 13-cv-006, 2015 WL 5334739 (D.N.J. Sept. 11, 2015) ......................... 38

*Rolo v. City Investing Co. Liquidating Tr.*,
   155 F.3d 644 (3d Cir. 1998) ......................................................................... 9

*Rossi v. Proctor and Gamble Co.*,
   No. 11-cv-7238, 2012 WL 12914668 (D.N.J. July 10, 2012) ....................... 38

*In re Samsung DLP Television Class Action Litig.*,
   No. 07-cv-2141, 2009 WL 3584352 (D.N.J. Oct. 27, 2009) ............ 7, 23, 30, 31

*In re Saturn L-Series Timing Chain Prods. Liab. Litig.*,
   MDL No. 1920, 2008 WL 4866604 (D. Neb. Nov. 7, 2008) ......................... 21

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974), *overruled on other grounds*, *Davis v.
    Scherer*, 468 U.S. 183 (1984) ...............................................................6

*Skeen v. BMW of N. Am., LLC*,
    No. 13-cv-1531, 2014 WL 283628 (D.N.J. Jan. 24, 2014) ...................13, 30, 31

*Smith v. Vanguard Dealer Srvcs., LLC*,
    No. 09-cv-0031, 2009 WL 2152096 (D.N.J. July 14, 2009)............................38

*Snyder v. Farnam Cos.*,
    792 F. Supp. 2d 712 (D.N.J. 2011).......................................................7

*Stockinger v. Toyota Motor Sales USA, Inc.*,
    No. 17-cv-00035 (C.D. Cal. July 7, 2017) ..........................................13

*Sturmlauf v. Starbucks Corp.*,
    192 F. Supp. 3d 1025 (N.D. Cal. 2016)..............................................35

*In Re: Takata Airbag Prods. Liab. Litig.*,
    193 F. Supp. 3d 1324 (S.D. Fla. 2016).................................................29

*Toyota Unintended Acceleration I*,
    754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010).....................................22

*Tzung v. State Farm Fire & Cas. Co.*,
    873 F.2d 1338 (9th Cir. 1989) ...........................................................21

*Viking Yacht Co., Inc. v. Composite One, LLC*,
    385 F. App'x 195 (3d Cir. 2010) ........................................................23

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
    No. 16-cv-2765, 2017 WL 1902160 (D.N.J. May 8, 2017) ......................*passim*

*Weske v. Samsung Elecs., Am., Inc.*,
    934 F. Supp. 2d 698 (D.N.J. 2013)......................................................8

*Wiatt v. Winston & Strawn LLP*,
    838 F. Supp. 2d 296 (D.N.J. 2012)....................................................10

*Wood v. State of New Jersey*,
    No. 13-cv-2453, 2016 WL 4544337 (D.N.J. Aug. 31, 2016)...........................12

*Yumul v. Smart Balance, Inc.*,
    733 F. Supp. 2d 1117 (C.D. Cal. 2010)...............................................19

## State Cases

*Am. Suzuki Motor Corp. v. Sup. Ct.*,
  37 Cal. App. 4th 1291 (1995) ............................................................29

*Brand v. Hyundai Motor Am.*,
  226 Cal. App. 4th 1538 (2014) .........................................................27

*Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*,
  445 S.W.3d 716 (Tex. 2014) ............................................................36

*Coastal Grp., Inc. v. Dryvit Sys., Inc.*,
  643 A.2d 649 (N.J. Super. Ct. App. Div. 1994) .................................34

*Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner
  Contracting Co.*,
  517 A.2d 336 (Md. Ct. App. 1986) ...................................................35

*Gennari v. Weichert Co. Realtors*,
  691 A.2d 350 (N.J. 1997) .................................................................10

*Hines v. Hash*,
  843 S.W.2d 464 (Tx. 1992) ..............................................................37

*Islip v. Mercedes-Benz USA, LLC*,
  155 Cal. App. 4th 19 (Cal. App. 2nd Dist. 2007)..............................27

*J'aire v. Gregory*,
  24 Cal.3d 799 (Cal. 1979) ................................................................35

*Lloyd v. Gen. Motors Corp.*,
  916 A.2d 257 (Md. 2007) ............................................................18, 27

*Mercedes-Benz of N. Am., Inc. v. Garten*,
  618 A.2d 233 (Md. Ct. Spec. App. 1993)..........................................26

*Mocek v. Alfa Leisure, Inc.*,
  114 Cal. App. 4th 402 (Cal. App. 4th Dist. 2003).............................26

*Morris v. Osmose*,
  667 A.2d 624 (Md. 1995) ..................................................................35

*U.S. Gypsum Co. v. Mayor and City Council of Baltimore*,
  647 A.2d 405 (Md. 1994) ..................................................................35

**Federal Statutes**

15 U.S.C. § 2310 ....................................................................................38

49 U.S.C. § 30118 ..................................................................................36

**State Statutes**

Md. Code Ann., Com. Law § 13-301(9) ................................................17

N.J. Stat. Ann § 12A:1-103 ..................................................................34

N.J. Stat. Ann § 12A:2-302(2) ..............................................................30

N.J. Stat. Ann § 12A:2-317 ..................................................................30

Tex. Bus. & Com. Code Ann. § 17.46(b)(24) .......................................17

**Rules**

Fed. R. Civ. P. 8(a) .................................................................................2

Fed. R. Civ. P. 9(b) ..........................................................................*passim*

## PRELIMINARY STATEMENT

An automobile should safely and reliably transport passengers without the risk that the sunroof[1] may shatter, showering glass over the driver and passengers. Despite having knowledge of numerous consumer complaints of shattering sunroofs and long-standing knowledge that the sunroofs installed in Class Vehicles can explode or shatter unexpectedly, Defendant BMW of North America, LLC ("BMW NA" or "Defendant") refuses to warn customers of this defect or provide an adequate remedy.[2]

In its motion to dismiss Plaintiffs' Amended Class Action Complaint ("Complaint"),[3] BMW NA does not challenge the basic premise that a reasonable consumer does not expect to purchase or lease a vehicle with a sunroof that will shatter spontaneously.   Rather, BMW NA attempts to deflect by improperly challenging the factual allegations in the Complaint.   BMW NA's attempt to discredit the alleged defect directly contradicts the allegations in the Complaint,

---

[1] As used herein, "sunroof" will also include "moonroof."

[2] As defined in the First Amended Complaint, ECF No. 7, "Class Vehicles" include: MY 2005-2018 BMW 3 series; MY 2005-2018 BMW 5 series; MY 2004-2018 BMW X5s; MY 2005-2018 X3s; MY 2009-2018 BMW X1s; MY 2008-2018 MINI Clubman, MY 2006-2018 MINI Cooper, MY 2011-2018 MINI Countryman, MY 2009-2018 MINI Hardtop and MY 2013-2018 MINI Paceman.  Complaint ¶ 10.

[3] Unless otherwise noted, all capitalized terms have the meanings attributed to them in the Complaint.  In addition to BMW NA, the Complaint also names BMW AG as a defendant.  Collectively, BMW NA and BMW AG are referred to as "Defendants."

1

which must be taken as true on a motion to dismiss.  Plaintiffs allege in no uncertain terms that there is a defect in the sunroofs of the Class Vehicles (the "Defective Sunroofs"), which can explode or shatter, exposing Plaintiffs and Class members to a shower of glass.

BMW NA futilely challenges the legal sufficiency of Plaintiffs' claims. Despite an extensive (and premature) choice of law analysis, BMW NA makes minimal arguments concerning state specific claims, instead relying on general arguments – which have been squarely rejected by numerous courts – as to the adequacy of pleadings.

Plaintiffs have pleaded sufficient facts to state claims against BMW NA, whether examined under FED. R. CIV. P. 8(a) or the heightened pleading standard of FED. R. CIV. P. 9(b).  Accordingly, this Court should deny BMW NA's motion.

## FACTUAL BACKGROUND

The Defective Sunroofs are prone to explode or shatter unexpectedly, exposing Plaintiffs and passengers to a shower of glass while driving, leaving them vulnerable to injuries and at risk for accidents as result of driver distraction.  *See* Complaint ¶¶ 2-3.  The explosions are startling and are often compared to the sound of a gunshot.  *Id*.

Defendants have long known about the Defective Sunroofs.  Pre-production testing, pre-production design failure mode analysis, production design failure mode

analysis, aggregate warranty data, repair order and parts data, consumer complaints and testing have all given Defendants warning of the problem. *Id*. at ¶¶ 17, 58. Multiple consumer complaints about the Defective Sunroofs also have been lodged with the National Highway Traffic Safety Administration ("NHTSA"), starting in 2002 and continuing to the present. *Id*. at ¶ 65.

Despite the continued complaints and requests for repairs, Defendant still refuses to notify consumers of the Defective Sunroofs or to accept responsibility for repairs under warranty. Instead, Defendant feigns ignorance of the defect, disclaims responsibility, continues to deny such a defect exists and allows Class members to unknowingly purchase and operate vehicles which at any moment may shower occupants with glass shards upon their heads, faces and necks. *Id*. at ¶¶ 2, 3, 20, 34, 35, 204.

In addition to the potential for severe injury from the glass or the resulting distraction to the driver, the Defective Sunroofs create substantial expenses for Plaintiffs and the Class, including the costs of necessary repairs and replacements, as well as damages incurred for time lost associated with the repair of the vehicles, the lost use of the vehicle during the repair, and the expense of obtaining alternative transportation. *Id*. at ¶¶ 21, 27, 31, 55. Rather than repair or replace the defective sunroof with non-defective parts, as Defendant was required to do under warranty, *see id*. at ¶¶ 13, 14, Defendant has wrongfully and intentionally transferred the cost

to Plaintiffs and Class members by ignoring, denying and/or concealing the nature and existence of the defect, claiming instead that road debris is causing the sunroof glass to break, even when such explanation is counter to the facts.  *See, e.g.*, *id.* at ¶ 65.  Moreover, when repairs are done, Defendant is replacing the Defective Sunroofs in Class Vehicles with identical Defective Sunroofs[4].  Defendant's false statements and/or omissions concerning the presence of the defect in the Defective Sunroofs are intended to hide the defect in order to sell more Class Vehicles to unsuspecting consumers. *Id.* at ¶¶ 18, 61.

As a result of the above, all three Plaintiffs purchased or leased Class Vehicles that are unreasonably dangerous, are worth considerably less than represented, and carry an increased cost of vehicle ownership and an increased risk of injury that was not disclosed or reasonably anticipated at the time of purchase or lease.  Two of the named Plaintiffs' have already experienced a shattering incident.   None of the Plaintiffs would have purchased their vehicles, or would have paid as much for their vehicles, had they known that the Defective Sunroofs would expose them to significant safety risks and undue expenses.  *See, e.g.*, *id.* ¶¶ 21, 24-35, 56, 71, 77.

---

[4] As alleged in the Complaint, upon information and belief, because replacement sunroofs have the same design, engineering, material or workmanship, they contain the same defect and likewise are susceptible to spontaneous shattering.  Complaint, ¶¶ 27, 31, 71

Plaintiff Kearney originally filed suit on December 22, 2017. *See* ECF No. 1. An amended complaint was filed on March 13, 2018, adding Plaintiffs James Barr and Robin Schoene. *See* ECF No. 7. On April 10, 2018, defendant BMW NA filed the Motion to Dismiss ("Mot."). *See* ECF No. 12.

## ARGUMENT

## I.   LEGAL STANDARD

In deciding a motion to dismiss, the court must assume that all of the factual allegations set forth in the complaint are true, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), and it must draw all reasonable inferences from the pleaded factual allegations in favor of the non-moving party. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

A court needs to conduct a three-pronged analysis when deciding a motion to dismiss. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept all of the plaintiff's well-pleaded factual allegations as true and must interpret the complaint in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). In addition to considering the well-pleaded allegations in the complaint, the court may rely upon exhibits attached to the complaint, documents integral to or relied upon in the pleadings, and matters of public record. *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization*

*Transactions, Inc.*, 730 F.3d 263, 271 (3d Cir. 2013). Only legal conclusions or unsupported conclusory factual allegations (of the kind that merely state "the-defendant-unlawfully-harmed-me") need not be accepted as true. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining whether a claim for relief is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility "is not akin to a 'probability requirement,' . . . it [merely] asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678. The court should not consider whether it believes the plaintiff ultimately will prevail, but only whether the plaintiff is entitled to offer evidence to support the claims in the complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Davis v. Scherer*, 468 U.S. 183 (1984).

## II.    DEFENDANT'S CHOICE OF LAW ANALYSIS IS PREMATURE

Defendant does not cite any authority for the proposition that a choice of law analysis at this early stage is warranted. To be sure, choice of law analyses routinely are found to be premature at the motion to dismiss phase in class cases, particularly where discovery is needed to further develop facts relevant to the analysis. *See*, *e.g.*, *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-cv-2765, 2017 WL

1902160, at *10 (D.N.J. May 8, 2017) (declining to engage in a choice of law analysis at the motion to dismiss stage); *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, No. 12-cv-6590, 2013 WL 1431680, at *5 (D.N.J. Apr. 9, 2013) (choice of law analysis at motion to dismiss premature); *In re Samsung DLP Television Class Action Litig.*, No. 07-cv-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009) (same); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 55 (D.N.J. 2009) (same).[5]  In fact, the case relied upon by BMW NA in articulating the "most significant relationship" came to the same conclusion and deferred a choice of law analysis until some later point after discovery.  *See Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 720 (D.N.J. 2011); Mot. at 8.   Thus, Defendant's argument that the laws of each Plaintiff's home state should govern is premature.[6]

## III.   DEFENDANT'S "LUMPING" ARGUMENT IS MERITLESS

Defendant argues that Plaintiffs' complaint "requires" dismissal under Rules 8 and 9(b) because Plaintiffs' use of the collective term "Defendants" fails to put

---

[5] *See also*, *e.g.*, *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206-07 (3d Cir. 2013) (deferring choice of law analysis until the summary judgment stage); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 295 (D.N.J. 2009) (the "most significant relationship" test requires a Complaint-sensitive analysis that cannot be undertaken on the record consisting solely of a complaint and motion to dismiss); *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004) (choice of law analysis on motion to dismiss premature).

[6] Because a choice of law analysis is premature at this stage, Plaintiffs' New Jersey Consumer Fraud Act claim should proceed.  Defendant makes no other arguments challenging the sufficiency of the NJCFA claim.

Defendant on notice of its wrongdoing.  Mot. at 17. To the contrary, the Complaint carefully distinguishes between the Defendants, leaving no confusion as to their respective roles and functions.  As set forth in the Complaint, Defendant BMW NA is headquartered in the United States, where it engages in the advertising, marketing and sale of BMW automobiles nationwide.  Complaint ¶ 37.  BMW AG is the parent company of BMW NA, and is headquartered in Germany, where it designs, develops and manufactures BMW automobiles.  *Id.* at ¶ 36.  Importantly, the Complaint notes, "at all relevant times, BMW NA and MINI acted as authorized agents, representatives, servants, employees and/or alter egos of BMW AG while performing activities including but not advertising, distributing warranties, warranty repairs, dissemination of technical information and monitoring the performance of BMW and MINI vehicles in the United States."  *Id*. at ¶ 38.  Thus, Defendant is wrong in asserting that Plaintiff's Complaint fails to differentiate between Defendants.

Further, to the extent Plaintiffs assert common allegations as to BMW AG and BMW NA, this is because these entities are joined through the same corporate structure and act as agents and/or alter egos of each other.  *Id.*  Courts recognize that allegations of corporate fraud, such as those at issue here, "require[ ] . . . a relaxed pleading standard when 'specific information . . . is exclusively within [a defendant's] knowledge or control.'" *Weske v. Samsung Elecs., Am., Inc.*, 934 F.

Supp. 2d 698, 708 (D.N.J. 2013) (citing *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989)).  Matters such as "which" of the related Defendants knew about the defect, and "when" a Defendant acquired such knowledge, "may be alleged generally," even under Rule 9(b)'s heightened pleading standards. *See* FED. R. CIV. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

To avoid rewarding successfully concealed fraudulent activity, this principle is especially applicable where, as here, information is under the exclusive control of a defendant.  *Katz v. Household Int'l, Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996) ("Rule 9(b) does not require plaintiffs to plead facts to which they lack access prior to discovery."); *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 658 (3d Cir. 1998) ("Courts should ... apply the rule with some flexibility and should not require plaintiffs to plead issues that may have been concealed by the defendants.").  *See also In re Volkswagen Timing Chain*, 2017 WL 1902160, at *9-10 (upholding claims of fraud on motion to dismiss, where the corporate information of defendant was within the control of defendants).  Defendant makes no showing that Plaintiffs' allegations leave it unable to defend itself against the alleged misconduct or unable to prepare an adequate answer to the allegations.

## IV.   PLAINTIFFS SUFFICIENTLY PLEAD COMMON LAW FRAUD

To establish fraud, a plaintiff must allege:  "(1) a material misrepresentation [or omission] of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 315-16 (D.N.J. 2012) (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)) (alteration in original).[7]  As shown below, Plaintiffs satisfy all of the required pleading elements.

### A.     Plaintiffs Have Alleged Fraudulent Omission

Plaintiffs sufficiently allege fraud based on fraudulent omission.  Plaintiffs allege that Defendant omitted and/or concealed the existence of the Defective Sunroof to increase profits by selling additional Class Vehicles.  Complaint ¶¶ 16, 18, 20, 44, 75.  Specifically, Plaintiffs allege that since at least 2002, Defendant possessed exclusive and superior knowledge of the Defective Sunroofs and attendant safety hazard.  *Id*. at ¶¶ 17, 57-60, 62, 69.  Despite this knowledge, Defendant intentionally withheld this information and failed to disclose the defect to Plaintiffs and other consumers prior to their purchase or lease of the Class Vehicles.  *Id*. at ¶¶ 57, 58, 61.

---

[7] Defendant strongly asserts that Plaintiffs' claims are governed by their states of residence, yet fails to assert any state-specific defenses to Plaintiffs' fraud claims.

Plaintiffs' allegations are sufficiently particularized and satisfy the pleading standards of both Rules 8 and 9(b).[8]  The "heightened standard [under Rule 9(b)] is somewhat relaxed in a case based on a fraudulent omission," as compared to a claim based on an affirmative misrepresentation.  *Montich v. Miele USA, Inc*., 849 F. Supp. 2d 439, 451 (D.N.J. 2012).  *See also Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 385 (D.N.J. 2014) ("[I]n cases where the fraud alleged is the fraudulent omission of information within the exclusive control of the Defendant, the standard is relaxed."); *Falk v. Gen. Motors Corp*., 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007) ("a fraud by omission claim can succeed without the same level of specificity required by a normal fraud claim").

Without question, "plaintiffs pleading a fraud by omission claim are not required to plead fraud as precisely as they would for a false representation claim." *Feldman v. Mercedes–Benz USA, LLC*, No. 11-cv-00984, 2012 WL 6596830, at *10 (D.N.J. Dec. 18, 2012) (citation omitted).  To avoid rewarding successful fraudulent concealment, this principle is especially applicable where, as shown here, information is under the exclusive control of the defendant.  *See Katz v. Household Int'l, Inc*., 91 F.3d 1036, 1040 (7th Cir. 1996) ("Rule 9(b) does not require plaintiffs

---

[8] Rule 9(b) requires plaintiffs to "inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citation omitted).  However, intent and other conditions of mind of a person may be alleged generally.  FED. R. CIV. P. 9(b).

to plead facts to which they lack access prior to discovery.").[9]  Significantly, none of the cases relied upon by Defendant to argue Plaintiffs' allegations lack specificity involve allegations of fraudulent omission.  *See* Mot. at 16-18.

Here, Plaintiffs specifically allege that despite long having knowledge of the defect involving the sunroofs (*see infra*, IV.B), as evidenced by multiple sources, Defendant withheld such information from Plaintiffs.  *See*, *e.g.*, Complaint at ¶¶ 57-58.  Contrary to Defendant's assertion, Plaintiffs allege that they received and relied upon Defendant's representations, and in turn purchased vehicles worth less than they paid and also incurred (or are likely to incur) substantial repair costs.  *See, e.g.*, Complaint ¶¶ 32, 33, 82, 109, 117.  This explanation of Defendant's alleged fraud and the nature of the Defective Sunroofs clearly meets Rule 9(b)'s requirements.  *Gotthelf v. Toyota Motor Sales, U.S.A., Inc*., No. 11-cv-4429, 2012 WL 1574301, at *15-18 (D.N.J. May 3, 2012), aff'd, 525 F. App'x 94 (3d Cir. 2013) (noting that the

---

[9] Allegations based upon information and belief also are appropriate where, as here, much of the information underlying the claims is in the exclusive possession of the Defendants.  *See Greene v. BMW of N. Am*., No. 11-04220, 2014 WL 47940, at *3 (D.N.J. Jan. 7, 2014) (holding that "information and belief" allegations satisfy the plausibility pleading requirement "'where the complaints are peculiarly within the possession and control of the defendant'") (quoting *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)); *Wood v. State of New Jersey*, No. 13-cv-2453, 2016 WL 4544337, at *5 (D.N.J. Aug. 31, 2016) (noting that "the Third Circuit has also recognized that pleading Complaints upon information and belief is permitted where the factual information at issue is within the Defendants' exclusive possession and control.") (citing *McDermott v. Clondalkin Grp., Inc*., No. 15-2782, 2016 WL 2893844, at *4 (3d Cir. May 18, 2016)).

purpose of the heightened Rule 9(b) pleading standards is to ensure plaintiffs sufficiently plead circumstances surrounding an alleged fraud to place defendants on notice of the "precise misconduct with which [it is] charged.") (internal citations omitted).

Several courts have found that consumers sufficiently alleged fraudulent omissions by automotive manufacturers under consumer fraud statutes, where the manufacturer knowingly concealed defects.  For example, in *Skeen v. BMW of N. Am., LLC*, No. 13-cv-1531, 2014 WL 283628, at *10 (D.N.J. Jan. 24, 2014) (J. Walls), this Court examined fraudulent omissions and found that the plaintiffs had sufficiently pled fraudulent omissions when the manufacturer's warranty "did not include a conspicuous statement about" the defect at issue (internal citations omitted).   Several other courts have upheld fraudulent omission claims where automotive manufacturers fail to disclose known defects to purchasers. *See, e.g., In re Volkswagen Timing Chain*, 2017 WL 1902160, at *18 (sustaining common law fraud claims based on fraudulent omission where defendant allegedly concealed timing chain defect); *Stockinger v. Toyota Motor Sales USA, Inc*., No. 17-cv-00035 (C.D. Cal. July 7, 2017), ECF No. 50 at 35 (holding plaintiffs sufficiently alleged a fraud claim where plaintiffs alleged a defective HVAC system emitted noxious odors into the passenger compartment); *Gray*, 22 F. Supp. 3d at 386 (upholding fraud by omission claims where plaintiffs alleged that defendant "knowingly concealed

the defect from purchasing customers in order to place the burden of replacing the convertible tops onto consumers."); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014) (upholding fraud by omission claims).

**B.     Defendant Possessed Exclusive and Superior Knowledge of the Defective Sunroofs and Owed a Duty to Disclose the Defective Sunroof**

Defendant had a duty to disclose the defect in the sunroofs because it had exclusive and superior knowledge of the defect and concealed the defect and attendant safety risks. Specifically, Plaintiffs allege that Defendant had exclusive or superior knowledge of the Defective Sunroof based on Defendant's:

> pre-production testing, preproduction design or failure mode analysis, production design or failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and NHTSA, and testing performed in response to consumer complaints

Complaint at ¶ 58.  *See also id.*, at ¶¶ 11, 17, 51, 57-61, 63-65, 69, 72 (detailing, *inter alia*, a NHTSA investigation and inquiry of Defendants regarding the Defective Sunroofs, NHTSA complaints, aggregate warranty data from dealers, repair order and parts received data from dealers, etc.).   These allegations are sufficient to establish that Defendant possessed superior and exclusive knowledge of the defect,

14

such that it had a duty to disclose it to Plaintiffs.[10]   Indeed, courts unquestionably find a duty to disclose based on these types of allegations.  *See Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-cv-07849, 2013 WL 5574626, at *17 (D.N.J. Oct. 9, 2013) (finding duty to disclose where manufacturer had exclusive knowledge of defect through "pre-release testing data, early consumer complaints . . . testing conducted in response to those complaints, high failure rates and replacement parts sales data contained in [Land Rover's] warranty databases, as well as high reimbursement claims paid to Land Rover dealers"); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 960 (manufacturer had exclusive knowledge of a defect based on defendant's release of Technical Service Bulletins and noting that "Plaintiffs would not have had full awareness of the TSBs because the full content of the TSBs was not publicly available on the NHTSA website."); *Feldman*, 2012 WL 6596830, at *11 (finding duty to disclose where manufacturer had exclusive knowledge "through 'pre-release testing data, early consumer complaints about the [] Defect ... testing conducted in response to those complaints, warranty and post-warranty claims, replacement part sales data, aggregate data from Mercedes dealers, and from other internal sources'"); *Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 918 (C.D. Cal. 2010) (plaintiffs sufficiently alleged automobile manufacturer

---

[10] To the extent there is a question as to the breadth of Defendant's knowledge, this is an issue that should be addressed in discovery since the allegations in the Complaint must be taken as true on a motion to dismiss.

had exclusive knowledge through "pre-release testing data, early consumer complaints to BMW and dealers, testing done in response to complaints, replacement part sales data, aggregate data from BMW dealers, and other internal sources").

In addition, Defendant was under a duty to disclose because the Defective Sunroofs pose a safety hazard. *See, e.g.*, *In re MyFord Touch*, 46 F. Supp. 3d at 960 (finding allegedly defective vehicle media system posed safety issue giving rise to duty to disclose); *Falk*, 496 F. Supp. 2d at 1096 (holding that defendants were obliged to disclose the defect in their vehicles because "plaintiffs successfully allege that the potential for failed speedometers constitutes a safety hazard"); *In re Volkswagen Timing Chain*, 2017 WL 1902160 at *20 (recognizing a duty to disclose defects that raise safety concerns). As alleged, the Defective Sunroofs create a significant safety hazard, because the Defective Sunroofs can suddenly explode, shattering glass over the driver and passengers of the Class Vehicles and causing a dangerous distraction for the driver. Complaint at ¶ 3. These allegations, which must be taken as true at this stage, plainly state that the Defective Sunroofs have created unsafe conditions in Class Vehicles.

## V. PLAINTIFFS' STATUTORY CONSUMER FRAUD CLAIMS SHOULD PROCEED

Defendant's arguments for dismissal of Plaintiffs' state consumer fraud claims also fail. Despite a lengthy choice of law argument, Defendant fails to raise

any state-specific defenses to plaintiffs' state statutory claims.  Indeed, many of the arguments are redundant of the arguments challenging Plaintiffs' common law claims.  In any event, Defendant's arguments do not stand against the consumer fraud claims.

First, as discussed above, Plaintiffs' allegations are sufficiently particularized to satisfy Rule 9(b).  The Complaint includes detailed allegations concerning Defendant's knowledge and concealment of the existence of the Defective Sunroof and the safety hazard it poses.  *See supra*. IV.B.  This comprehensive explanation of Defendant's behavior and the nature of the Defective Sunroofs clearly meets Rule 9(b)'s requirements.  *Gotthelf*, 2012 WL 1574301, at *15-18.  Further, the California, Maryland, and Texas statutes all consider omissions and the failure to disclose safety defects as deceptive acts.  *See Johnson v. Nissan North America, Inc.*, 272 F. Supp. 3d 1168, 1184 (N.D. Cal. 2017) (upholding claims under the CLRA and UCL based on allegations of fraudulent omission of exploding sunroofs); MD. CODE ANN., COM. LAW § 13-301(9) (defining unfair and deceptive trade practices to include "omission of any material fact"); TEX. BUS. & COM. CODE ANN. § 17.46(b)(24) (including in the definition of "false, misleading, or deceptive acts or practices" failure to disclose).[11]

---

[11] Because Plaintiffs' claims are predicated on Defendant's fraudulent omissions, there is no basis for Defendant's argument that generic statements and puffery

Further, Plaintiffs allege in no uncertain terms that they relied upon Defendant's omissions, and as a result, reasonably expected that their sunroofs would not shatter.  Complaint at ¶¶ 33, 109.  Plaintiffs make clear that had they been made aware of the Defective Sunroofs, they would not have purchased their vehicles or would have paid less for their vehicles.  *Id.* at ¶¶ 24-33, 104.  These allegations plainly state that Plaintiffs' relied upon Defendant's omission.  *See In re Volkswagen Timing Chain*, 2017 WL 1902160, at *24 (sustaining statutory consumer fraud claims under California, Maryland and Texas law, and holding that allegations that misrepresentations and omissions misled purchasers regarding the value and quality of the class vehicles sufficient to establish reasonable reliance); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 878 (S.D. Ohio 2012) (finding reliance under the Texas TDTPA where defendant failed to disclose a safety risk before a sale); *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 281 (Md. 2007) (sustaining MCPA claim where the consumer suffered an identifiable loss as a result of reliance on sellers' representation).

The California consumer statutes do not contain a formal element of reliance.  To state valid claims under these statutes, Plaintiffs need not allege that individual consumers actually relied upon Defendant's misleading representations or omissions

---

cannot form the basis of a misrepresentation claim.  As discussed above, Plaintiffs' sufficiently allege fraud by an actionable omission.

in entering into their purchase. Rather, it is sufficient to allege that an act or practice possessed the objective capacity to mislead or was likely to deceive the reasonable consumer. *See, e.g.*, *Yumul v. Smart Balance, Inc*., 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010). Whether a deceptive act has the capacity to mislead is a question of fact which should not be determined on a motion to dismiss. *Ackerman v. Coca-Cola Co*., No. 09-cv-0395, 2010 WL 2925955 at *17 (E.D.N.Y. July 21, 2010).

Here, Plaintiffs have clearly alleged actions by Defendant with the objective capacity to mislead or deceive. Defendant's representations and omissions were likely to, and did in fact, mislead purchasers about the quality and value of the Class Vehicles. Consumers have a right to know before purchasing a vehicle that the vehicle has a substantial flaw, such as a Defective Sunroof, which is a safety hazard and poses a significant risk of physical harm and economic injury. Consequently, this Court should uphold Plaintiffs' consumer fraud claims.

## VI.    PLAINTIFFS PLEAD VIABLE EXPRESS WARRANTY CLAIMS

Plaintiffs plead sufficient facts to establish that Defendant's warranty covers the Defective Sunroofs, that any exclusion of the Defective Sunroofs would defeat the purpose of the warranty, and that the advertised comprehensiveness of the New Vehicle Limited Warranty was a basis of the bargain for Plaintiffs.

## A.     The Defective Sunroofs Are Covered by the Warranty

Contrary to the cases relied upon by BMW NA, the better-reasoned decisions by multiple courts provide that there is no distinction between a design defect and a defect in workmanship at the pleading stage.  *See In re Volkswagen Timing Chain*, 2017 WL 1902160 at *12 (refusing to distinguish between a design defect and a defect in materials or workmanship at motion to dismiss); *Cox v. Chrysler Grp., LLC*, No. 14-cv-7573, 2015 WL 5771400, at *6 (D.N.J. Sept. 30, 2015) (same). "[W]here the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives." *Alin v. Am. Honda Motor Co.*, No. 08-cv-4825 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010).

Some courts have gone further, even post the motion to dismiss stage, finding no distinction between design defect and a defect in workmanship at all.  For example, in *Koulajian v. Trek Bicycle Corp.*, No. 90-cv-3156, 1992 WL 28884 at *2 (S.D.N.Y. Feb. 11, 1992), the defendant moved for summary judgment on the warranty claim, arguing that the express warranty applies only to manufacturing defects, not design defects.  The court rejected the argument, reasoning that "the warranty's reference to 'workmanship' could refer to [] design as well as implementation of those designs in the manufacturing process." *Id.*  Thus, the court

20

held that "[a]bsent binding authority limiting an express 'workmanship' warranty to manufacturing defects alone, we do not find as a matter of law that such warranty language cannot apply to design defects." *Id.*

Similarly, in *In re Saturn L-Series Timing Chain Prods. Liab. Litig.*, MDL No. 1920, 2008 WL 4866604, at *14 (D. Neb. Nov. 7, 2008), the court found that "a defect related to materials and workmanship" and a "design defect" involving the timing chain system are substantially the same. The court reasoned that a "design is integrated into each step of the manufacturing process and affects both materials and workmanship," such that distinguishing a design defect from a defect in materials or workmanship "would defy logic." *Id.* at *15. The court concluded: "[I]t would be absurd to interpret a car company's written warranty as *not* covering any defect in 'materials and workmanship' if the defect could simultaneously be attributable to a design implemented by the company in the manufacturing of the car." *Id.* (emphasis in original). *See also Tzung v. State Farm Fire & Cas. Co.*, 873 F.2d 1338, 1341 (9th Cir. 1989) ("[w]e believe [] that an unstrained interpretation of the exclusion for 'faulty workmanship' includes loses caused by defects in the design and construction of a building."). Likewise, allowing BMW NA to evade responsibility for the Defective Sunroofs simply by attributing the defect to a flawed design (which affects *all* of the Class Vehicles) would be illogical and would permit Defendant, and every other product manufacturer/supplier, to link any defect to the "design" of

the product, thereby rendering unenforceable any express warranty that covers defects in material and workmanship.

However, even if design defects and material and/or workmanship defects are considered distinct, Plaintiffs have adequately alleged that the Defective Sunroofs suffer from a defect in material and/or workmanship and therefore are covered under applicable warranties. *See, e.g.*, Complaint ¶¶ 11, 13, 15, 54, 57, 60, 83, 132, 133, 168, 201, 203, 237. Plaintiffs have described the defect with as much particularity as can be done without benefit of discovery, particularly since Defendants are in unique control of information pertaining to testing, design, and manufacture of the Class Vehicles. As many courts have found, the nature of a product defect is a question of fact not suitable for adjudication prior to discovery. *See, e.g.*, *Alin*, 2010 WL 1372308, at *6; *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *12; *Cox,* 2015 WL 5771400, at *6; *Toyota Unintended Acceleration I*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010); *Johnson*, 272 F. Supp. 3d at 1178 (permitting express warranty claim based on exploding sunroofs to proceed through discovery).

## B.     The Warranty Fails of Its Essential Purpose

Furthermore, if the Defective Sunroofs fail due to a design defect and design defects are excluded by the warranty, then Defendant's limitation of its warranty to cover only defects of material or workmanship would cause the warranty to fail of

its essential purpose.[12]  A limited contractual remedy fails of its essential purpose if it fails to give the aggrieved party the benefit of their bargain.  *Viking Yacht Co., Inc. v. Composite One, LLC*, 385 F. App'x 195, 208 (3d Cir. 2010); *Philippine Nat'l Oil Co. v. Garrett Corp.*, 724 F.2d 803, 808 (9th Cir. 1984).  If a limited remedy fails of its essential purpose, then the aggrieved party may have any appropriate remedies available under the U.C.C.  *See* U.C.C. § 2-719(2).

Plaintiffs and the Class, when purchasing vehicles from Defendant, reasonably expect that the vehicles will be free of significant defects—whether of materials, workmanship or design.  The purpose of Defendant's warranty is to give consumers what they paid for; if an integral part of the vehicle catastrophically fails, Defendant will repair it under warranty.  However, if Defendant's warranty was read to exclude design defects and the Defective Sunroofs were viewed as defective in design only, then the warranty would fail of its essential purpose because consumers would not get what they paid for, *i.e.* automobiles reasonably free of significant

---

[12] Similarly, any attempt by Defendant to disclaim express warranty coverage due to a time limit (*e.g.*, 4 years from sale) would be unconscionable due to the nature of the defect in this case and Defendant's knowledge.  *See In re Samsung DLP Television Class Action Litig.,* No. 07-cv-214, 2009 WL 3584352, at *5 (D.N.J. Oct. 27, 2009) (finding unconscionability of express warranty durational limit adequately pled where defendant knew of defect at time of sale, consumers had no meaningful choice in time limitations of warranty, and there was a significant disparity in bargaining power); *Payne v. Fujifilm U.S.A., Inc.,* No. 07-cv-385, 2007 WL 4591281, at *5 (D.N.J. Dec. 28, 2007) (finding plaintiff alleged sufficient facts to allege unconscionability of express warranty durational limit were defendant knew or should have known of the alleged defect).

safety defects. In that scenario, Defendant's limited warranty would fail to give consumers the benefit of their bargain. This is the exact situation that U.C.C. § 2-719(2) was intended to address: "where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedies of this Article." U.C.C. § 2-719 Official Comment 1. Thus, if Defendant's written warranty was construed to exclude design defects, as BMW NA proposes, then it fails of its essential purpose, and Plaintiffs and other Class members are entitled to their remedies under U.C.C. §§ 2-714 and 2-715.

### C. Comprehensiveness of the Warranty is a Basis of the Bargain

The comprehensiveness of a warranty from BMW NA is a selling point for its vehicles, and is one which Defendant features prominently in its advertising. *See* Complaint ¶ 14 (the express warranty terms were displayed on "Class Vehicle window labels, [in] owner's manuals and brochures, and advertised on Defendants' websites.") As pled in the Complaint, Defendant clearly makes the total protection of the vehicles a part of the bargain:

- "*Our warranty covers everything*, bumper to bumper and everything in between, except the tires." *See* Complaint ¶ 14. (emphasis added).

- The New Vehicle Warranty provides "[p]rotection for the first four years or 50,000 miles. Clearly, we stand behind our engineering.[13]" *Id.*

---

[13] The plain meaning of the word "engineering" includes "the design and manufacture of complex products." *See* MERRIAM-WEBSTER,

Yet, Defendant wrongfully describes Plaintiffs' express warranty claim as being based on claims of product superiority. To the contrary, Plaintiffs' claims are based on the explicit language of the express warranty, whose comprehensiveness is a part of the basis of the bargain. *See, e.g.*, Complaint ¶ 13 ("Defendants currently provide a New Vehicle Limited Warranty which includes coverage for defects in materials or workmanship to the first purchaser and each subsequent purchaser for 4 years or 50,000 miles.")

Indeed, Plaintiffs bought their vehicles in part due to the promises by Defendant that it would "stand behind" its products and provided a warranty that "covers everything." Instead, as alleged by Plaintiffs, Defendant refuses to repair or replace the Defective Sunroofs under its warranty, claiming instead that that the sunroofs are shattering due to something such as road debris, despite such an occurrence being physically impossible. *See, e.g.*, Complaint ¶¶ 13, 15, 47, 125. As such, Plaintiffs have adequately pled a breach of warranty by representation.

Lastly, Defendant briefly asserts that Plaintiffs have failed to present their vehicles for repairs, as required under their warranties. This is wrong. As pled in the Complaint, Plaintiffs Barr and Schoene were driving their cars when their sunroofs exploded. Both presented their vehicles for repair, incurring expenses as a

---

https://www.merriamwebster.com/dictionary/engineering (last visited May 17, 2018).

result (which will be further detailed during discovery, and which, in Plaintiff Barr's case, included nearly $1,300 for the replacement sunroof).  Complaint ¶¶ 27, 31. Plaintiff Kearney's Defective Sunroof has not yet exploded so he has not yet had an occasion to present his vehicle to Defendant for repair of the Defective Sunroof under the warranty.

## VII. PLAINTIFFS PLEAD VIABLE CLAIMS FOR BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

The implied warranty of merchantability arises by operation of law and provides that "the product at issue must have been defective or not fit for the ordinary purpose for which it was intended."  *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011); *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (Cal. App. 4th Dist. 2003) ("a breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use.")  In the case of automobiles, the ordinary purpose of driving implies that the vehicles should be safe to operate and free of substantial defects.  *See Green v. BMW of N. Am., Inc.*, No. 11-cv-04220, 2013 WL 5287314, at *2 (D.N.J. Sept. 17, 2013) ("In the context of a car, this warranty is satisfied when the vehicle provides safe and reliable transportation.") (internal citations omitted); *Mercedes-Benz of N. Am., Inc. v. Garten*, 618 A.2d 233, 240 (Md. Ct. Spec. App. 1993) (to be merchantable, a car must provide reasonably safe transportation).

### A.    Defective Sunroofs are Safety Hazards that Render Class Vehicles Unmerchantable

The implied warranty of merchantability requires more than simply providing a vehicle that allows for transportation. *Islip v. Mercedes-Benz USA, LLC*, 155 Cal. App. 4th 19, 27 (Cal. App. 2nd Dist. 2007) ("We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessary does not violate the implied warranty of merchantability."). Defects that create a safety hazard will breach the implied warranty of merchantability. *Brand v. Hyundai Motor Am.*, 226 Cal. App. 4th 1538 (Cal. App. 4th Dist. 2014) (sunroofs that opened on their own breached warranty of merchantability because they created a safety hazard); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, No. 96-cv-3125, 2001 WL 1266317, at *11 (D.N.J. Sept. 30, 1997); *Lloyd*, 916 A.2d at 270 ("A plaintiff need only plead that the automobiles were sold with a defect and that the defect rendered the goods unfit for ordinary and safe use.").

The Defective Sunroofs present a significant safety risk to Plaintiffs, and the passengers of their vehicles. When the Defective Sunroofs shatter, they make a sudden and loud noise, startling the driver and increasing the risk of accident, while sending shards of glass raining down on the interior of the vehicle, potentially cutting the driver and passengers. Complaint ¶ 3. This is a clear safety hazard.[14]

---

[14] Defendant suggests that Plaintiff Barr's vehicle was not unmerchantable because glass did not explode and rain throughout the cabin, but instead, as Plaintiff was

27

Further, courts routinely uphold claims for the implied warranty of merchantability for vehicles that still could be driven but had defective parts—including other cases involving defective sunroofs. *See Deras v. Volkswagen Grp. Of Am., Inc.*, No. 17-cv-05452, slip op., Dkt. No. 47, at 4-5 (N.D. Cal. May 17, 2018) (allowing breach of implied warranty claims to continue for shattering sunroofs); *Kondash v. Kia Motors Am., Inc.*, No. 15-cv-00506, ECF No. 49 at 37-39 (S.D. Ohio June 24, 2016) (upholding implied warranty claims for exploding sunroofs); *Miller v. Chrysler Grp. LLC*, No. 12-cv-00760, 2014 WL 12617598, at *5 (D.N.J. June 30, 2014) (upholding implied warranty claims for leaking sunroofs); *Keegan v. Am. Honda Motor Co.,* 838 F. Supp. 2d 929, 948 (C.D. Cal. 2012) (upholding implied warranty claim for a rear suspension defect which caused excessive wear on the tires).

The actual injury for a breach of the implied warranty of merchantability is that a vehicle is not fit for its ordinary purpose; an immediate physical manifestation of the defect is not required, and thus, the fact that the defect may not manifest for several years and that Plaintiffs were able to use their vehicles during that time does not ipso facto mean that the Class Vehicles were merchantable. *See In re Volkswagen Timing Chain*, 2017 WL 1902160, at *15 (upholding breach of implied

---

driving he heard a loud pop and realized his sunroof suddenly had a large hole. *See* Complaint ¶ 27. Certainly, BMW NA cannot seriously contest that such incidents present a safety hazard and should not occur in vehicles.

warranty of merchantability where plaintiffs alleged timing chain defect was manifesting several years and 60,000 or more miles after purchase); *In Re: Takata Airbag Prods. Liab. Litig.*, 193 F.Supp.3d 1324, 1335 (S.D. Fla. 2016) (rejecting lack of manifestation defense where plaintiffs' airbags had not exploded and allegations showed they had no way to know if the defect would interfere with the proper functioning of their vehicle or cause serious physical injury); *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011) (finding plaintiffs adequately stated claim that vehicles were unmerchantable where torque converter and transmission failed after 98,000 miles).[15]

### B.   Plaintiff Schoene's Contractual Implied Warranty Limited Period is Unconscionable

Contrary to Defendants' argument, Plaintiff Schoene is not barred from asserting a claim for breach of implied warranty simply because her sunroof did not explode until more than four years after her car was placed into service.  Implied

---

[15] BMW NA relies upon *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995).  Similarly, the defendant in *In re Ford Motor Co.E-350 Van Prod. Liab. Litig. (No. II)*, MDL No. 03-4558, 2008 WL 4126264 (D.N.J. 2008) relied upon *Am. Suzuki* as well.  However, as noted by the court in *In re Ford*, the plaintiffs in *Am. Suzuki* conceded that their vehicles were fit for their ordinary purpose.  *See* 2008 WL 4126264, at *14.  In contrast, Plaintiffs here expressly claim that their vehicles are not fit for their ordinary purpose because the sunroofs can rupture at any moment without notice.

warranties run alongside express warranties,[16] and thus, as with express warranty periods, courts in this district consistently uphold warranty claims where enforcing a durational limit would be unconscionable.[17]  *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-cv-4146, 2010 WL 2925913, at *7 (D.N.J. July 21, 2010) (citing *In re Samsung DLP*, 2009 WL 3584352, at *4-5).

Similar to Plaintiff Schoene's circumstances, in *Henderson*, the plaintiffs alleged that defective transmissions in certain Volvo vehicles did not become apparent until shortly after Volvo's 4 year/50,000-mile express warranty period had elapsed.  *Henderson*, 2010 WL 2925913, at *2-3.  Although the court recognized the general rule that limited warranties do not cover repairs made after the warranty period,[18] the court upheld the plaintiffs' breach of warranty claims where the plaintiff's allegations of defendant's knowledge about the defect were buttressed by

---

[16] Implied warranties of merchantability are limited to the same term as the express warranty. N.J. STAT. ANN § 12A:2-317.

[17] The question of whether a contractual provision is unconscionable is a matter of law, but if a court thinks a contractual clause may be unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect."  *See Skeen*, 2014 WL 283628, at * 12 (quoting N.J. STAT. ANN § 12A:2-302(2)); *Carlson v. General Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989) ("[U]nconscionability claims should but rarely be determined on the bare-bones pleadings—that is, with no opportunity for the parties to present evidence of the circumstances surrounding the original consummation of their contractual relationship.").

[18] Citing *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604 (3d Cir. 1995); *Abraham v. Volkswagen Am., Inc.*, 795 F.2d 238 (2d Cir. 1986); *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 519 (D.N.J. 2008).

allegations that plaintiffs have "no meaningful choice" in a warranty negotiation characterized by a "a gross disparity in bargaining power." *Id.*, at *9 n.6.  *See also Skeen*, 2014 WL 283628, at *14 (adopting the reasoning on *Henderson* because "[i]t is not conclusory to state that a consumer purchasing a car has less bargaining power than the manufacturer and that he had no meaningful choice in setting the terms of the warranty"); *In re Samsung DLP*, 2009 WL 3584352, at *4-6 (finding durational limit of warranty unconscionable where defendant knew of defect at time of sale, consumers had no meaningful choice in time limitations of warranty, and there was a significant disparity in bargaining power ); *Payne v. Fujifilm U.S.A., Inc.*, No. 07-cv-385, 2007 WL 4591281, at *3-4 (D.N.J. Dec. 28, 2007) (finding plaintiff alleged sufficient facts to show unconscionability of warranty durational limit where defendant knew or should have known of the alleged defects).

Tellingly, Defendant wholly ignores the decisions in *Henderson, Skeen*, *In re Samsung DLP*, and *Payne*.  Yet the circumstances here, namely that Plaintiff Schoene was unaware of the Defective Sunroof until after the expiration of her warranty period, and Defendant knew of the defect but withheld this information, are strikingly similar.  Plaintiff Schoene had no ability to detect the defect that caused her sunroof to explode, nor did Defendant warn her that the sunroof could shatter explosively due to the presence of the defect.  Rather, Defendant held this information in its exclusive possession, leading to a large disparity in their relative

31

bargaining power. *See, e.g.*, Complaint ¶¶ 11, 17, 20, 28-32, 57-61, 63-65, 69, 72, 135.

To the extent case law in Maryland is specifically considered, Maryland similarly recognizes that the durational limit of a warranty may be unconscionable where there is unequal bargaining power and the manufacturer knew of the defect. *See Carlson*, 883 F.2d at 296 ("When a manufacturer is aware that its product is inherently defective, but the buyer has no notice of or ability to detect the problem there is perforce a substantial disparity in the parties' relative bargaining power.") (quotation omitted); *accord In re Porsche Cars N. Am., Inc.*, 880 F. Supp.2d at 822 (applying Texas law and finding implied warranty was breached where manufacturer is aware of the defect and buyer had no notice of or ability to correct the problem, the defect is likely to "substantially limit the product's intended use.").

To be sure, Plaintiffs here allege that they had no meaningful choice in the warranty negotiation and that there existed a gross disparity in bargaining power, asserting:

- Defendants were well aware of the existence of the Defective Sunroofs—both prior to putting the vehicles on the market and shortly thereafter—but failed to disclose it. *See, e.g.*, Complaint ¶¶ 2, 5, 11, 17, 43, 58, 72.

- The defect manifests during and after the warranty period—and well before the end of the Class Vehicles' useful lives. *See, e.g.*, Complaint ¶¶ 26-31, 42, 62-66.

32

- Defendants possessed superior knowledge of the defect.  *See, e.g.*, Complaint ¶¶ 11, 17, 57-61, 63-65, 69, 72.

- Plaintiffs and Class member had no meaningful choice in determining the time and mileage limitations in the warranties.  *See, e.g.*, Complaint ¶¶ 135.

- The warranties were drafted by Defendants without input from Plaintiffs, the terms unreasonably favored Defendants, a gross disparity in bargaining power existed, and Defendants knew that the Class Vehicles were defective at the time of sale. *See, e.g.*, Complaint ¶¶ 135, 152, 166, 219.

Accordingly, Plaintiffs have alleged unconscionability and all warranty claims should survive.

### C.   Lack of Privity Does Not Preclude Plaintiff Kearney's Implied Warranty Claims

BMW NA contends that the claims of Plaintiff Kearney should be dismissed because California requires vertical privity to assert claims for breach of implied warranty.   However, California recognizes a third-party beneficiary exception because the consumer (specifically including the purchaser of a vehicle) is the ultimate user of the product.  *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 983-85;  *Bryde v. Gen. Motors, LLC*, No. 16-cv-02421, 2016 WL 6804584, at *15-16 (N.D. Cal. Nov. 17, 2016).  *See also Precht v. Kia Motors Am., Inc.*, No. 14-cv-1148, 2014 WL 10988343, at *10 (C.D. Cal. Dec. 29, 2014) ("Thus, vertical contractual privity is not needed to assert a claim for breach of implied warranty when plaintiff is a third party beneficiary of a contract between other parties which

does create an implied warranty.")  Moreover, the Song-Beverly Act does not require privity.  *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, MDL No. 2744, 2017 WL 5495091, at \*30 (E.D. Mich. Nov. 15, 2017) (applying California law). Plaintiff Kearney's claims should not be dismissed for lack of privity.

## VIII.  UNJUST ENRICHMENT CLAIM

Plaintiffs stipulate to the voluntary dismissal of the unjust enrichment claim (Count VI).

## IX.  THE ECONOMIC LOSS RULE DOES NOT BAR PLAINTIFFS' NEGLIGENT MISREPRESENATION CLAIM

Whether analyzed under New Jersey law or the laws of the individual plaintiffs' states, the economic loss doctrine does not bar Plaintiffs' claims of negligent misrepresentation.

New Jersey exempts fraud and misrepresentations from the rule barring recovery for economic loss damages.  In *Coastal Grp., Inc. v. Dryvit Sys., Inc.*, 643 A.2d 649 (N.J. Super. Ct. App. Div. 1994), the New Jersey Superior Court held that the U.C.C. preserves a buyer's right to maintain an action for fraud and misrepresentation, citing N.J. STAT. ANN § 12A:1-103.  As the court stated, "an action based on fact showing fraudulent conduct or material misrepresentation may be redressed by an action [in tort]."  *Id*. (quotation omitted).  Here, Plaintiffs have alleged that Defendant's omissions constitute material misrepresentations, *see, e.g.*,

Complaint ¶¶ 20, 30, 55, 76, thus allowing the negligent misrepresentation claim to stand.

California also recognizes several exceptions to the economic loss doctrine. Particularly relevant, where the threat of physical harm to the plaintiff is sufficiently grave, the economic loss doctrine will not apply. *See Sturmlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1036 (N.D. Cal. 2016) (suggesting that a threat of physical harm as a result of defendant's action could give rise to an exception). *See also J'aire v. Gregory*, 24 Cal.3d 799 (Cal. 1979) (laying out a number of factors to be weighed independently, including foreseeability of harm to the plaintiff and the policy of preventing future harm).

Similarly, Maryland recognizes an exception to the economic loss doctrine where the "defect creates a substantial and unreasonable risk of death or personal injury." *See U.S. Gypsum Co. v. Mayor and City Council of Baltimore*, 647 A.2d 405, 410 (Md. 1994). *See also Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336, 345 (Md. 1986) (where product defect present a substantial, clear and unreasonable risk of death or personal injury, the economic loss doctrine will not apply). Courts must weigh: 1) the nature of the damage threatened; and 2) the probability of damage occurring. If, when viewed together, they exist a "clear, serious, and unreasonable risk of death or personal injury," the doctrine will not apply. *See Morris v. Osmose*, 667 A.2d 624, 631-32

(Md. 1995).   Here, Plaintiffs have alleged that the spontaneous shattering of the glass from the Defective Sunroofs showers the occupants with glass shards and significantly distracts the driver.  *See, e.g.*, Complaint ¶¶ 3, 27, 31.  The Complaint also describes the frequency of the problem, increasing the probability that serious bodily injury will occur to Plaintiffs or Class members.  *Id.* at ¶ 4.  These facts show that plaintiffs and Class members could be harmed by falling shards of glass or by a resultant accident when the driver is distracted a sunroof explosion while driving. In summary, Plaintiffs have demonstrated that there is a clear, serious and unreasonable risk of personal injury, or even death, thus providing an exemption to the economic loss doctrine.

Lastly, under Texas law, the economic loss doctrine does not bar tort claims where the defendant breaches an independent duty, apart from a contractual undertaking.  *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).  BMW NA has a statutory duty to inform owners, purchasers, and dealers that a vehicle is defective, when that defect is related to motor vehicle safety.  *See* 49 U.S.C. § 30118(c)(1) and (2).  The spontaneous shattering of glass sunroofs, which can and do occur while the vehicle is in operation, is a defect "related to motor vehicle safety."  Further, as alleged in the Complaint, Plaintiff Barr incurred damages beyond just the sunroof, as he lost time and the use of the vehicle as it underwent repairs and incurred the expense of obtaining

alternative transportation. *See* Complaint ¶ 27. As a result, even if the Court applied Texas law (which it need not do at this stage of the litigation), the economic loss doctrine does not apply to Plaintiff Barr's claims.

## X.   PLAINTIFF BARR PROVIDED ADEQUATE AND TIMELY NOTICE UNDER THE TEXAS DPTA

Plaintiff Barr properly delivered a Texas DTPA notice letter to Defendants on March 13, 2018. Defendant does not contest the sufficiency of the notice letter, but claims that it was untimely and hence, the Texas DTPA claim must fail. This argument misconstrues the statutory requirement.

The consequence for not complying with the notice requirement is not dismissal, but abatement of the action during the statutory notice period. *Hines v. Hash*, 843 S.W.2d 464, 468 (Tx. 1992). *See also Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (remanding Texas DTPA claim where district court dismissed claim for untimely notice instead of abating proceedings). This comports with the purpose of the notice requirement, "to encourage pre-suit negotiations so as to avoid the expense of litigation." *Hines*, 843 S.W.2d at 468. Here, statutory notice was delivered over 60 days ago, and because the statutory notice period has passed, Plaintiff Barr may proceed with his claim.

## XI. PLAINTIFFS' MAGNUSON-MOSS WARRANTY ACT CLAIM MEETS PLEADING REQUIREMENTS

Defendant misconstrues the applicability of the 100 named plaintiff requirement to the instant case. Although standing alone, the MMWA provides that in order for a federal court to have jurisdiction over an MMWA class action, there must be at least 100 named plaintiffs, *see* 15 U.S.C. § 2310(d)(3),[19] that is a jurisdictional requirement that is nullified when, as in this case, the federal court has jurisdiction pursuant to some other statute such as the Class Action Fairness Act ("CAFA"). *See, e.g.*, *Rossi v. Proctor and Gamble Co.*, No. 11-cv-7238, 2012 WL 12914668, at *2, 5 (D.N.J. July 10, 2012) ("the Court finds that CAFA provides an alternate basis of jurisdiction for Plaintiff's MMWA claim."). As a result, numerous cases in this District have permitted putative class actions asserting claims under the MMWA to go forward with less than 100 named plaintiffs. *See, e.g.*, *Afzal v. BMW of N. Am., LLC*, No. 15-cv-8009, 2016 WL 6126913, at *7 (D.N.J. Oct. 17, 2016) (allowing MMWA claims to continue in a putative class action with one named plaintiff); *Robinson v. Kia Motors Am., Inc.*, No. 13-cv-006, 2015 WL 5334739, at *14 (D.N.J. Sept. 11, 2015) (five named plaintiffs); *Miller*, 2014 WL 12617598, at *5-6 (eleven named plaintiffs); *Dzielak v. Whirlpool Corp.*, 26 F.Supp.3d 304, 331-

---

[19] As discussed in *Smith v. Vanguard Dealer Srvcs., LLC*, No. 09-cv-0031, 2009 WL 2152096 at *3 (D.N.J. July 14, 2009), "[t]he purpose of this **jurisdictional provision** is to avoid trivial or minor actions being brought as class actions in the federal district court." (emphasis added).

32 (D.N.J. June 16, 2014) (ten named plaintiffs).   Accordingly, the Court has jurisdiction over Plaintiffs' MMWA claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion.

DATED: May 21, 2018               Respectfully submitted,

                                  */s/ Peter A. Muhic*
                                  Joseph H. Meltzer
                                  Peter A. Muhic
                                  Melissa L. Troutner (*Pro Hac Vice* to be filed)
                                  KESSLER TOPAZ
                                    MELTZER & CHECK, LLP
                                  280 King of Prussia Road
                                  Radnor, PA 19087
                                  Telephone: (610) 667-7706

                                  James E. Cecchi
                                  Lindsey H. Taylor
                                  CARELLA, BYRNE, CECCHI,
                                  OLSTEIN, BRODY & AGNELLO, P.C.
                                  5 Becker Farm Road
                                  Roseland, New Jersey 07068
                                  Telephone: (973) 994-1700


                                  *Attorneys for Plaintiffs and the proposed Classes*

39

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of May, 2018, a true and correct copy of the foregoing document was electronically filed with the Clerk of the Court, is available for viewing and downloading from the ECF system, and will be served by operation of the Court's electronic filing system (CM/ECF) upon all counsel of record.

*/s/ Peter A. Muhic*
Peter A. Muhic