## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVE KEARNEY, JAMES BARR, and ROBIN SCHOENE,<br><br>       Plaintiffs,<br><br>v.<br><br>BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, and BMW of NORTH AMERICA, LLC,<br><br>       Defendants. | **OPINION**<br>Civ. No. 17-13544 (WHW-CLW) |

**Walls, Senior District Judge**

In this putative class action involving allegedly defective sunroofs, Defendant BMW of North America ("BMW NA") moves to dismiss the Amended Complaint under Federal Rules of Civil Procedure 8, 9, and 12(b)(6). ECF No. 12. Plaintiffs Dave Kearney, James Barr, and Robin Schoene (collectively, "Plaintiffs") oppose. ECF No. 15. Decided without oral argument under Federal Rule of Civil Procedure 78, the motion is granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

1. **Overview**

Plaintiffs initiated this action with a December 22, 2017 class-action complaint. ECF No. 1. An Amended Class Action Complaint (the "Amended Complaint") followed on March 13, 2008. ECF No. 7. The Amended Complaint alleges that BMW NA and Bayerische Motoren Werke Aktiengesellschaft ("BMW AG") (together, "Defendants") violated common and statutory law by selling and leasing vehicles equipped with defective sunroofs and moonroofs (the "Defective Sunroofs") that are prone to sudden, unexpected explosion or shattering. Am.

---

[1] Unless stated otherwise, all facts are drawn from the Amended Complaint, ECF No. 7.

Compl. ¶¶ 1–3, ECF No. 7. Specifically, it alleges that Defendants "wrongfully and intentionally concealed" problems with the Defective Sunroofs, exposing Plaintiffs and class members to "a shower of glass . . . and forcing them to incur out of pocket costs to repair or replace the Defective Sunroofs" and other vehicle parts. *Id.*

The Amended Complaint is based in part on an October 2017 *Consumer Reports* investigation detailing "complaints of exploding sunroofs across numerous brands, including BMW." *Id.* ¶ 4. Many of those complaints relate to panoramic sunroofs, which have grown in popularity over the past decade; Defendants began installing them in 2004. *Id.* ¶¶ 5–6. One month after the *Consumer Reports* investigation, two United States Senators requested information from BMW and others regarding sunroof safety. *Id.* ¶ 7.

Affected vehicles include the following model years when equipped with a sunroof or moonroof:

- model year ("MY") 2005–2018 BMW 3 series;
- MY 2005–2018 BMW 5 series;
- MY 2004–2018 BMW X5s;
- MY 2005–2018 X3s;
- MY 2009–2018 BMW X1s;
- MY 2008–2018 MINI Clubmans;
- MY 2006–2018 MINI Coopers;
- MY 2011–2018 MINI Countrymans;
- MY 2009–2018 MINI Hardtops; and
- MY 2013–2018 MINI Pacemans.

(collectively, the "Class Vehicles"). *Id.* ¶ 10. Panoramic sunroofs and moonroofs are not standard features in Defendants' base models; they are featured as part of an upgrade. *Id.* ¶ 16. Defendants have neither warned Class Vehicle owners about the defect, nor agreed to cover replacement of the Defective Sunroofs under the Class Vehicles' applicable warranties. *Id.* ¶¶ 11–12, 15.

### 2. The Parties and Proposed Classes

Plaintiff Dave Kearney is a California resident and owner of a panoramic sunroof-equipped 2012 BMW X5, which he purchased on July 21, 2015. *Id.* ¶ 24. Plaintiff James Barr is a Texas resident and owner of a panoramic sunroof-equipped 2017 Mini Cooper Hardtop. *Id.* ¶ 26. Plaintiff Robin Schoene is a Maryland resident, former owner of a panoramic sunroof-equipped BMW X3, and current owner of a panoramic sunroof-equipped 2013 BMW 328i. *Id.* ¶¶ 28–31. BMW AG is a German company with its principal place of business in Munich. *Id.* ¶ 36. BMW NA is a Delaware corporation with its corporate headquarters in New Jersey. *Id.* ¶ 37. MINI USA is an unincorporated division of BMW NA that markets and sells vehicles under the MINI brand name. *Id.*

Plaintiffs bring this action on behalf of themselves and members of the following proposed class and sub-classes:

- **Nationwide Class:** All persons or entities in the United States that purchased, leased, own, or owned a Class Vehicle (the "Nationwide Class" or "Class");

- **California Sub-Class:** All persons or entities that purchased or leased a Class Vehicle in the State of California and all persons or entities in the State of California that purchased, leased, own, or owned a Class Vehicle;

- **Song-Beverly Sub-Class:** All persons or entities that purchased or leased a Class Vehicle in the State of California;

- **Texas Sub-Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Texas and all persons or entities in the State of Texas that purchased, leased, own, or owned a Class Vehicle; and

- **Maryland Sub-Class:** All persons or entities that purchased or leased a Class Vehicle in the State of Maryland and all persons or entities in the State of Maryland that purchased, leased, own, or owned a Class Vehicle. *Id.* ¶ 85.

3. **Factual Allegations**

While driving his vehicle on January 26, 2017, Plaintiff Barr heard a loud sound and "noticed a hole in his sunroof," which he replaced for approximately $1,274. *Id.* ¶ 27. The sunroof in Schoene's X3 shattered on some unspecified date, causing glass to fall "on top of her and throughout her vehicle." *Id.* ¶ 28. In January 2018, the sunroof of her 2013 BMW 328i "exploded." *Id.* ¶¶ 30–31. For now, it appears that Kearney's sunroof remains intact. *Id.* ¶¶ 24–25. Defendants never warned any of the Plaintiffs of the Defective Sunroofs and the corresponding safety hazards associated with their Class Vehicles. *Id.* ¶¶ 25, 27, 31. Plaintiffs paid higher purchase prices for their Class Vehicles than they would have for a vehicle not equipped with a Defective Sunroof, and Bar and Schoene incurred damages related to repair costs, lost time, lost use of their Class Vehicles, and expenses associated with obtaining alternative transportation. *Id.* ¶¶ 25, 27–28, 31. Defendants have "refused to repair or replace the Defective Sunroofs free of charge" for Class Members and have "not recalled the Class Vehicles to replace the Defective Sunroofs." *Id.* ¶ 49. Had there been adequate disclosure,

Plaintiffs and Class Members would not have purchased their vehicles, would have paid less for them, or would not have purchased an upgrade that included a Defective Sunroof. *Id.* ¶ 32.

Plaintiffs claim that the Class Vehicles are equipped with Defective Sunroofs, exposing Class Members to the risk of sudden explosion or shattering. *Id.* ¶ 41. "Incidents involving exploding sunroofs"—including those installed in BMW NA's vehicles—"have occurred in every month of the year in every part of the country." *Id.* ¶ 42. American consumers have filed over 850 related complaints with the federal government, although it is unclear what portion of these relate to the Class Vehicles. *Id.* ¶ 46. Part of the problem appears to stem from the "panoramic" nature of the Defective Sunroofs; "'the bigger the expanse of glass, the harder to ensure it won't shatter.'" *Id.* ¶ 45 (quoting Jeff Plungis and Thomas Germain, *Exploding Sunroofs: Danger Overhead*, Consumer Reports at 2 (Oct. 12, 2017)).

The shattering and/or exploding sunroofs have attracted federal-government attention. In April 2016, the National Highway Traffic Safety Administration ("NHTSA") commenced an investigation of BMW and other auto manufacturers regarding sunroof issues, requiring the manufacturers to provide the NHTSA with various categories of related information. *Id.* ¶ 51. Senators Blumenthal and Markey made similar requests for information in November 2017. *Id.* ¶ 52. Consumers who purchased Class Vehicles have filed a number of complaints with the NHTSA. *Id.* ¶¶ 62, 65.

Defendants provided warranty coverage for the Class Vehicles, including under a New Vehicle Limited Warranty ("NVLW"), which covers "defects in materials or workmanship to the first retail purchaser and each subsequent purchaser for 4 years or 50,000 miles, whichever occurs first." *Id.* ¶ 13. The NVLW promised to repair or replace covered defective parts at no

cost. *Id.* "These warranties were provided in Class Vehicle window labels, owner's manuals and brochures, and advertised on Defendants' websites." *Id.* ¶ 14.

Plaintiffs claim that Defendants failed to warn consumers of the risks associated with the Defective Sunroofs, and that Defendants concealed the Class Vehicles' defect even though they knew or should have known about it as early as 2002. *Id.* ¶¶ 57, 69. That knowledge came from pre-production testing and analysis, "early consumer complaints," "aggregate warranty data compiled from" and "repair order and parts data received from" dealers, consumer complaints to NHTSA, and "testing performed in response to consumer complaints." *Id.* ¶ 58. Defendants became aware of the defect "shortly after production of the Class Vehicles commenced . . . through sources not available to Plaintiffs and members of the classes." *Id.* ¶ 60.

Despite knowing the risks associated with the Defective Sunroofs, Defendants "failed to inform Class Vehicle owners and lessees prior to purchase or lease . . . or during the express warranty period that the Defective Sunroofs were defective and may explode or shatter," and that they had been inadequately tested. *Id.* ¶¶ 67–68. "None of the advertisements reviewed or representations received by Plaintiffs and members of the Classes contained any disclosure relating to the Defective Sunroofs and associated safety risk." *Id.* ¶ 32. Further, Defendants are "not acknowledging or resolving the issue," and continue to include the Defective Sunroofs as a "premium feature in the Class Vehicles." *Id.* ¶¶ 43, 61. Because Defendants "profit significantly from upselling these" Defective Sunroofs as part of their upgraded or luxury packages, they are "incentivized to sell vehicles containing the Defective Sunroofs." *Id.* ¶ 44. BMW and other carmakers "have tried to explain away and conceal the defect, by informing consumers that the exploding sunroofs are caused by a rock or some other foreign object," but this explanation has been met with skepticism by at least one mechanical engineer who assessed the claim. *Id.* ¶ 47.

Plaintiffs assert claims for:

(i)     fraud (Count 1);

(ii)    negligent misrepresentation (Count 2);

(iii)   breach of express warranty (Count 3);

(iv)    breach of implied warranty (Count 4);

(v)     violation of the Magnuson-Moss Warranty Act ("MMWA") (Count 5);

(vi)    unjust enrichment (Count 6);

(vii)   violation of California's Consumers Legal Remedies Act ("CLRA") (Count 7);

(viii)  violation of California's Unfair Competition Law ("UCL") (Count 8);

(ix)    violation of California's Song-Beverly Consumer Warranty Act (Count 9);

(x)     violation of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA")
        (Count 10);

(xi)    violation of Maryland's Consumer Protection Act ("MCPA") (Count 11); and

(xii)   violation of New Jersey's Consumer Fraud Act ("NJCFA") (Count 12).

## STANDARD OF REVIEW

Rule 12(b)(6) allows for dismissal where the non-moving party fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked

assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to

relief." *Id.* at 679.

In assessing a plaintiff's claims, a district court may consider the allegations of the

complaint, as well as documents attached to or specifically referenced in the complaint. *See*

*Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A.

Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357 at 299 (3d

ed. 2014). "A 'document integral to or explicitly relied on in the complaint' may be considered

'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed.*

*Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory*

*Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

## DISCUSSION

### 1. Choice of Law

BMW NA first argues that Plaintiffs cannot pursue a nationwide class under New Jersey

law because they are not New Jersey residents, did not purchase or drive their cars here, and did

not sustain any injury here. ECF No. 12-1 at 5–7. According to BMW NA, this affects

Plaintiffs' NJCFA claim as well as their claims for fraud, negligent misrepresentation, breach of

express warranty, breach of implied warranty, and unjust enrichment claims on behalf of the

Nationwide Class, because those claims do not invoke the laws of any particular state and must

be construed as claims under New Jersey law. *Id.* at 5. Thus, under a choice-of-law analysis,

Plaintiffs' fraud, negligent misrepresentation, and consumer-protection claims can be brought

only under the laws of their home states. *Id.* at 7. Plaintiffs respond that a choice-of-law

analysis is premature at this stage, particularly because "discovery is needed to further develop facts relevant to the analysis." ECF No. 15 at 6–7.

A choice-of-law analysis is not necessarily premature. This Court has engaged in choice-of-law analyses at the motion-to-dismiss stage in similar cases. *See, e.g.*, *Skeen v. BMW of N. Am.*, Civ. No. 13-1531, 2014 WL 283628, at *4 (D.N.J. Jan. 24, 2014); *Majdipour v. Jaguar Land Rover N. Am., LLC*, Civ. No. 12-7849, 2013 WL 5574626, at *6 (D.N.J. Oct. 9, 2013). While courts in this district have, in certain circumstances, found choice-of-law analyses premature at the motion-to-dismiss stage, they have done so where either (i) the defendant failed to explain why there was a conflict between the laws of different relevant jurisdictions, or (ii) key facts relevant to a choice-of-law analysis were not available. *See, e.g.*, *In re Volkswagen Timing Chain Prod. Liab. Litig.*, Civ. No. 16-2765, 2017 WL 1902160, at *10 (D.N.J. May 8, 2017) (refusing to conduct choice-of-law analysis where "Defendant has failed to explain how Plaintiffs' common law claims conflict among their home states"); *Prudential Ins. Co. of Am. v. Goldman, Sachs & Co.*, Civ. No. 12-6590, 2013 WL 1431680, at *5 (D.N.J. April 9, 2013) (noting that the court "will benefit from acquiring further details regarding" the location of certain actions and discussions relevant to plaintiffs' claims). Here, by contrast, BMW NA devotes much of its briefing to choice-of-law analyses, including the issue of whether New Jersey laws conflict with those of Plaintiffs' home states, and Plaintiffs fail to identify any additional facts this Court needs to conduct its own analysis. The Court concludes that a choice-of-law analysis is appropriate now.

When sitting in diversity, a district court applies the choice-of-law rules of its forum state—here, New Jersey—to determine which law controls. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941); *Maniscalco v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 206

(3d Cir. 2013). "New Jersey has adopted the 'most significant relationship' test set forth in the Restatement (Second) of Conflict of Laws. This is a two-part test." *Maniscalco*, 709 F.3d at 206 (citing *P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 142–43 (2008)). "[T]he first step is to determine whether an actual conflict exists. That is done by examining the substance of the potentially applicable laws to determine whether 'there is a distinction' between them." *Camp Jaycee*, 197 N.J. at 143 (quoting *Lebegern v. Forman*, 471 F.3d 424, 430 (3d Cir. 2006) (further citation omitted)). "If there is not an actual conflict, the inquiry is over and, because New Jersey would apply its own law in such a case, a federal court sitting in diversity must do the same." *Lebegern*, 471 F.3d at 428. "If, however, an actual conflict is found to exist, the inquiry proceeds to the second step." *Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 254 (3d Cir. 2010).

"Under the second part of the inquiry, the court must determine which jurisdiction has the 'most significant relationship' to the claim." *Maniscalco*, 709 F.3d at 207 (quoting *Camp Jaycee*, 197 N.J. at 144). To make that determination, courts look to the Second Restatement, which "provides specific guidance for resolving particular types of cases." *Camp Jaycee*, 197 N.J. at 140; *see also Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 446 (D.N.J. 2012) (court "must weigh the factors set forth in the Restatement section that corresponds to Plaintiff's cause of action"). "The Second Restatement assessment takes place on an issue-by-issue basis. It is qualitative, not quantitative." *Camp Jaycee*, 197 N.J. at 143 (citations omitted). "[I]n balancing the relevant elements of the most significant relationship test," courts should "apply the law of the state that has the strongest connection to the case." *Id.* at 155.

Plaintiffs do not specify in the Amended Complaint what particular law applies to Counts 1–4, while BMW NA claims that the Court should apply the laws of Plaintiffs' home states.

Given that a federal court sitting in diversity will apply the law of its forum state, *see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985), the states with potentially applicable laws for Counts 1–4 include New Jersey, California, Maryland, and Texas. *See Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 659 (3d Cir. 1998) (citation omitted) ("Until the putative class is certified, the action is one between the [named plaintiffs] and the defendants. Accordingly, the First Amended Complaint must be evaluated as to these particular plaintiffs."). The Court must determine whether the laws of California, Maryland, and Texas conflict with those of New Jersey regarding Counts 1–4 and, if so, which states have "the strongest connection to the case." *Camp Jaycee*, 197 N.J. at 155.

    a.  <u>Common-law fraud (Count 1)</u>

BMW NA contends that New Jersey law conflicts with that of California, Texas, and Maryland regarding Plaintiffs' common-law fraud claims. A common-law fraud claim under New Jersey law has five elements. Those are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).

The first step in the choice-of-law inquiry is to determine whether the "substance of the potentially applicable laws" conflict. *Camp Jaycee*, 197 N.J. at 143. Under California law, "[t]he elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004). "To prevail on a cause of action for common law

11

fraud under Texas law, a plaintiff must prove that the defendant (1) made a misstatement or omission (2) of material fact (3) with the intent to defraud (4) on which the plaintiff relied, and (5) which proximately caused the plaintiff injury." *In re Enron Corp. Secs. Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 759, 770 (S.D. Tex. 2007). And "[i]n order to state a claim for common law fraud in Maryland, a plaintiff must allege (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Legore v. OneWest Bank, FSB*, 898 F. Supp. 2d 912, 919 (D. Md. 2012).

While a common-law fraud action under New Jersey law requires "reasonable reliance" by the plaintiff, *see Stockroom*, 941 F. Supp. 2d at 546, under Texas law "a plaintiff's reliance on the defendant's fraudulent conduct must be justifiable as well as actual." *Haralson v. E.F. Hutton Group, Inc.*, 919 F.2d 1014, 1025 (5th Cir. 1990) (overruled on other grounds). In cases alleging fraudulent concealment—i.e., nondisclosure in the face of a duty to disclose—Maryland requires "justifiable reliance" as well. *See Blondell v. Littlepage*, 413 Md. 96, 119 (2010). As does California. *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Assn.*, 55 Cal. 4th 1169, 1183 (2013) ("showing of justifiable reliance" required for "all forms of fraud").

That difference in the "reliance" element is material, as "'[j]ustifiable reliance' represents a lesser burden on fraud plaintiffs that what 'reasonable reliance' might imply." *Beijing Metals & Minerals Imp./Exp. Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1186 (5th Cir. 1993) (citation omitted); *see also Voilas v. GMC*, 170 F.3d 367, 377 (3d Cir. 1999) (noting that "justifiable

reliance generally connotes a subjective standard, while 'reasonable reliance' usually suggests an objective standard and, possibly, some measure of a duty to investigate on the part of the claimant") (citing *Field v. Mans*, 516 U.S. 59, 70–75 (1995)); Restatement (Second) of Torts § 545A (1977). Regarding Count 1, there is an actual conflict between New Jersey law and the laws of California, Texas, and Maryland.

Turning to the second step of the analysis, the Court must look to the applicable section of the Second Restatement to determine which state has the "most significant relationship" to this case with respect to the consumer fraud allegations. *Maniscalco*, 709 F.3d at 207; *Camp Jaycee*, 197 N.J. at 140. "Where a fraud or misrepresentation claim has been alleged, the court looks to the factors found in § 148 of the Restatement (Second) of Conflict of Laws." *Maniscalco*, 709 F.3d at 207. Subsection (2) applies because "[P]laintiff[s'] action[s] in reliance took place in whole or in part in a state other than that where the false representations" are alleged to have been made. Restatement (Second) of Conflict of Laws § 148(2) (1971); *see Maniscalco*, 709 F.3d at 207–08. Under this subsection, the Court considers the following factors:

(1) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(2) the place where the plaintiff received the representations,

(3) the place where the defendant made the representations,

(4) the domicile, residence, nationality, place of incorporation and place of business of the parties,

(5) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and

(6) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

Restatement (Second) of Conflict of Laws § 148(2). "The relative importance of each of the factors in a given case 'should be determined in light of the choice-of-law principles stated in § 6 [of the Restatement].'" *Maniscalco*, 709 F.3d at 207 (quoting Restatement (Second) of Conflict of Laws § 148 cmt. e). Those principles are "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee*, 197 N.J. at 147 (internal citation and quotation marks omitted).

Plaintiff Kearney is a California resident, and purchased his Class Vehicle in California in July 2015. Am. Compl. ¶ 24. Factors 1, 2, and 5 clearly weigh in favor of California having the "most significant relationship" to Plaintiff Kearney's fraud claim. Factor 4 is neutral and factor 6 is irrelevant. Only the third factor weighs in favor of New Jersey, assuming BMW NA can be said to have made representations from its principal place of business. Regardless, the balance of factors weighs clearly in favor of applying California law.

The Court reaches the same conclusion regarding Plaintiffs Barr and Schoene. New Jersey has virtually no connection to Barr's and Schoene's claims, while Barr and Schoene are residents of Texas and Maryland, respectively, and Schoene purchased her Class Vehicle in Maryland. Am. Compl. ¶¶ 26–29. While the Amended Complaint does not specify where Barr purchased his Class Vehicle, the Court concludes nonetheless that, between Texas and New Jersey, Texas has the "most significant relationship" to Barr's claim.

b. <u>Negligent Misrepresentation (Count 2)</u>

BMW NA next argues that New Jersey negligent-misrepresentation law is in conflict with that of California, Texas, and Maryland. To establish a claim for negligent misrepresentation, a plaintiff must show "[a]n incorrect statement, negligently made and justifiably relied on, which results in economic loss." *Konover Const. Corp. v. East Coast Const. Servs. Corp.*, 420 F. Supp. 2d 366, 370 (D.N.J. 2006) (citations omitted). BMW NA claims that while New Jersey law permits negligent-misrepresentation claims in cases involving omissions, California requires a positive assertion. ECF No. 12-1 at 9. It further argues that California, Texas, and Maryland all have shorter limitations periods applicable to negligent-misrepresentation claims. *Id.* at 10.

> i. *New Jersey and California law conflict, and California has the "most significant relationship" to Kearney's negligent-misrepresentation claim.*

The Court agrees that New Jersey and California law are in conflict. "Under California law, a negligent misrepresentation claim requires a positive assertion, not merely an omission. An implied assertion or representation is not enough." *In re Vizio, Inc., Consumer Privacy Litig.*, 238 F. Supp. 3d 1204, 1230 (C.D. Cal. 2017) (citations omitted). In contrast, New Jersey law permits negligent-misrepresentation claims that are "based on the defendant's silence or suppression of truth than on some affirmative misrepresentation," and "the required duty of disclosure may . . . arise in any situation called for by good faith and common decency." *Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 355 (3d Cir. 2004).

Having found that New Jersey and California law conflict, the Court must determine which state has the "most significant relationship" to Plaintiff Kearney's claim. As already discussed, that state is California.

> ii. *BMW NA has not shown that New Jersey law conflicts with that of Texas and Maryland.*

BMW NA's only argument regarding conflict between New Jersey law and that of Texas and Maryland is that the states apply different limitations periods—New Jersey's is six years, while Texas's is two years and Maryland's is three years. ECF No. 12-1 at 10; *see Milestone Properties, Inc. v. Federated Metals Corp.*, 867 S.W.2d 113, 119 (Tex. App. 1993); *G&M Oil Co. v. Glenfed Fin. Corp.*, 782 F. Supp. 1085, 1088 (D. Md. 1991). Maryland's limitations period runs from the date "when the claimant in fact knew or reasonably should have known of the wrong." *Booth Glass Co. v. Huntingfield Corp.*, 304 Md. 615, 619 (1985). A similar discovery rule exists in Texas and New Jersey. *See Quigley v. Bennett*, 256 S.W.3d 356, 360 (Tex. App. 2008) (stating that discovery rule can "defer accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action"); *RTC Mortg. Trust 1994N-1 v. Fidelity Nat'l Title Ins. Co.*, 58 F. Supp. 2d 503, 543 (D.N.J. 1999) (noting that "the accrual of a cause of action is delayed until the injured party discovers, or by the exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim"). Each state therefore applies an identical or near-identical discovery rule to negligent-misrepresentation claims.

While there is a facial conflict between the applicable statutes of limitations in New Jersey, Maryland, and Texas, that does not automatically trigger step two of the choice-of-law analysis; it is settled that "where the application of either state's law would yield the same result, no conflict exists to be resolved." *High v. Balun*, 943 F.2d 323, 325 (3d Cir. 1991); *see also McCarrell v. Hoffman-La Roche, Inc.*, 227 N.J. 569, 585 (2017) ("When application of the forum state's or another state's statute of limitations results in the same outcome, no conflict exists, and the law of the forum state governs.").

Plaintiffs filed the initial complaint in this action on December 22, 2017 and have specifically pled tolling of applicable statutes of limitations based on, among other things, the discovery rule. Am. Compl. ¶¶ 78–84. Plaintiff Barr's sunroof shattered in January 2017 and, although the Amended Complaint does not specify the date of purchase, it cannot have been long before January 2017 because his Class Vehicle was a 2017 model year. *Id.* at 27. The Amended Complaint claims that Plaintiff Schoene has owned at least two BMWs with sunroof problems; an X3 that she purchased in 2003, and a 328i that she purchased in June 2017. *Id.* ¶¶ 28–31. But only the second vehicle is a Class Vehicle that is the subject of this lawsuit. *Id.* ¶ 10. That vehicle's sunroof "exploded" in January 2018. *Id.* ¶ 31.

Based on the facts alleged in the Amended Complaint, there is no statute-of-limitations conflict because Plaintiffs Barr and Schoene purchased their Class Vehicles less than two years before filing this action, and thus complied with even the shortest of the potentially applicable limitations periods. Even if BMW NA made some earlier misrepresentations, based on the facts alleged the discovery rule would bring Plaintiffs Barr and Schoene within any applicable statute of limitations. Because there is no statute-of-limitations conflict, the Court will apply New Jersey law to Plaintiffs' negligent-misrepresentation claim.

c. NJCFA (Count 12)

Plaintiffs assert a violation of the NJCFA in Count 12 on behalf of the Nationwide Class. Am. Compl. ¶¶ 279–294. BMW NA argues that Plaintiffs cannot pursue an NJCFA claim on behalf of the Nationwide Class because none of the named Plaintiffs have any connection to New Jersey. ECF No. 12-1 at 5–7. It further argues that the NJCFA conflicts with the consumer-fraud statutes of California, Texas, and Maryland, and that the Court should apply the laws of Plaintiffs' home states instead. *Id.* at 11.

Defendant is correct that the NJCFA conflicts with the consumer-fraud statutes of Plaintiffs' home states. *See Majdipour*, 2013 WL 5574626, at *7 (concluding NJCFA conflicts with California's Unfair Competition Law and Consumer Legal Remedies Act because the California statutes both require a showing of reliance); *Durso v. Samsung Elecs. Am., Inc.*, Civ. No. 12-5352, 2013 WL 5947005, at *7 (D.N.J. Nov. 6, 2013) (concluding NJCFA conflicts with DTPA for the same reason); *Avram v. Samsung Elecs. Am., Inc.*, Civ. No. 11-6973, 2013 WL 3654090, at *19 (D.N.J. July 11, 2013) (concluding NJCFA conflicts with Maryland's Consumer Protection Act because the latter requires scienter). As already discussed, Plaintiffs' home states bear the "most significant relationship" with each Plaintiff's claim. Because the consumer-fraud statutes of Plaintiffs' home states will apply to the allegations in Count 12, and because Counts 7, 8, 10, and 11 allege violations of those statutes, Count 12 is dismissed.

> d. Plaintiffs' New Jersey Warranty Claims (Counts 3–4)

BMW NA argues that the laws of Plaintiffs' home states should apply to Plaintiffs' breach-of-warranty claims. Instead of offering a state-by-state analysis, BMW NA simply cites a few cases noting that state warranty laws often vary. ECF No. 12-1 at 13–14; *see Payne v. FujiFilm USA, Inc.*, Civ. No. 07-385, 2010 WL 2342388, at *9 (D.N.J. 2010). None of these cases compare New Jersey law to that of California, Texas, or Maryland. Mere reference to inapplicable cases is insufficient to establish that a conflict of law exists. *See Dal Ponte v. Am. Mortg. Exp. Corp.*, Civ. No. 04-2152, 2006 WL 2403982, at *5 (D.N.J. Aug. 17, 2006) (stating that "[w]here the parties fail to point out or establish any difference in the laws of the various jurisdictions involved in a particular case, it is proper for the court to apply the law of the forum"). The Court will apply New Jersey law to Plaintiffs' warranty claims.

2. **Lumping**

BMW NA argues that the Amended Complaint should be dismissed because it improperly "lumps" the two Defendants together in violation of Federal Rules of Civil Procedure 8 and 9(b). ECF No. 12-1 at 19–21. Specifically, BMW NA accuses Plaintiffs of failing to differentiate among the two Defendants when laying out their allegations. The Court is not persuaded. While Plaintiffs do use the terms "Defendants" and "BMW" throughout the Amended Complaint to refer to BMW NA and BMW AG collectively, they make sufficiently particularized allegations against each entity.

The Amended Complaint clearly sets out the corporate structures of and relationships between Defendants BMW NA and BMW AG. Specifically, regarding BMW NA, Plaintiffs allege that it has its headquarters in Woodcliff Lake, New Jersey, from which it "advertises, markets and sells automobiles under the BMW brand name throughout the United States," and that "MINI USA is an unincorporated division of BMW NA" that "advertises, markets and sells" MINI-brand vehicles throughout the United States. Am. Compl. ¶ 37. BMW NA's parent company, Defendant BMW AG, is headquartered in Munich, Germany, and "designs, develops, manufactures, [and] sells luxury automobiles under the BMW and MINI brand names." *Id.* ¶ 36. In addition, "BMW NA and MINI acted as authorized agents, representatives, servants, employees and/or alter egos of BMW AG." *Id.* ¶ 38. Plaintiffs also make specific allegations regarding BMW NA. As example, "BMW NA and MINI made decisions related to advertisement, marketing, sales, warranties, and recalls of vehicles under the BMW and MINI brand names . . . ." *Id.* ¶ 40.

From Plaintiffs' pleading, it is understood that BMW AG is BMW NA's corporate parent; that the former is located in Munich; that the latter is located in New Jersey; that the

former is generally responsible for the design and manufacture of the Class Vehicles; and that the latter advertises and distributes those Class Vehicles in the United States. Plaintiffs have therefore achieved some level of differentiation among Defendants by specifying their corporate relationship, location, and respective responsibilities.

By identifying the Defendants' respective roles in designing, producing, marketing, and selling the Class Vehicles, Plaintiffs have avoided the pleading deficiency at issue in *Certain Underwriters at Lloyd's, London v. U-Line Corp.*, Civ. No. 13-3203, 2013 WL 5503672, at *6 (D.N.J. Oct. 1, 2013), on which BMW NA primarily relies. In that product-liability case, the plaintiff failed to identify the respective roles of the two defendants in producing the refrigerator/freezer at issue; as the court put it, plaintiffs "must at least plead, in some minimal capacity, how [the two defendants] are involved with this particular product." *Id.* Plaintiffs have done so here. This ruling accords with the Third Circuit's recognition that further pre-discovery differentiation among related defendants is difficult when, as here, "factual information is peculiarly within the defendant's knowledge or control," and that courts have accordingly "relaxed" their applications of Rule 9(b) in these circumstances. *Craftmatic Secs. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989).

### 3. Unjust Enrichment (Count 6)

BMW NA argues next that Count 6, alleging unjust enrichment, must be dismissed because Plaintiffs did not purchase their Class Vehicles directly from BMW NA, and thus did not confer any pecuniary benefit on it. ECF No. 12-1 at 15–16. In response, Plaintiffs stipulate to the voluntary dismissal of this claim. ECF No. 15 at 34. Count 6 is dismissed.

4. **Statutory Consumer-Protection Claims (Counts 7, 8, 10, 11)**

BMW NA argues that Plaintiffs' remaining statutory consumer-protection claims fail because (i) they make insufficient allegations regarding BMW NA's knowledge of the defect at issue; (ii) generic statements and "puffery" cannot support these claims; (iii) Plaintiffs have pled neither reliance nor a misrepresentation or omission; and (iv) Plaintiffs have not alleged facts demonstrating "active concealment." ECF No. 12-1 at 21–28.

Federal Rule of Civil Procedure 9(b) governs Plaintiffs' fraud-based claims. It provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The purpose of Rule 9(b) is to place defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against specious charges. *Seville Industrial Machinery Corp. v. Southmost Co.*, 742 F.2d 786, 791 (3d Cir. 1984). "To satisfy this heightened standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "Further, the plaintiff must allege who made the purported misrepresentations and what specific misrepresentations were made." *Id.* In other words, to satisfy Rule 9(b), a plaintiff must "plead the who, what, when, where and how: the first paragraph of any newspaper story." *Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 253 (3d Cir. 2009) (internal quotation marks omitted).

Plaintiffs plead a fraud-by-omission case, and "in cases where the fraud alleged is the fraudulent omission of information within the exclusive control of the Defendant, the [Rule 9(b)] standard is relaxed." *Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 385 (D.N.J. 2014). That

is because "a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Falk v. Gen. Motors Corp.*, 496 F.Supp.2d 1088, 1098–99 (N.D. Cal. 2007).

    a. <u>BMW NA's Knowledge</u>

Under both the CLRA and UCL, "a manufacturer is not liable for a fraudulent omission concerning a latent defect . . . unless the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Wilson v. Hewlett–Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (quoting *Daugherty v. Am. Honda Motor Co., Inc.*, 51 Cal. Rptr. 3d 118, 126 (Cal. Ct. App. 2006)). A duty to disclose can arise in four ways: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Cal. Ct. App. 1997). The latter three possibilities are at issue here, as Plaintiffs have not alleged any fiduciary relationship. All three scenarios presuppose that BMW NA had knowledge of the defect.[2]

BMW NA argues that the Amended Complaint fails to adequately allege that it knew of the purported defect in the Defective Sunroofs, because Plaintiffs only cite to twelve anonymous consumer complaints lodged with NHTSA; unspecified blogs and websites on which consumers discussed their experiences with Defective Sunroofs; and assertions that "[b]ased on pre-

---

[2]    Texas and Maryland law also contain a knowledge requirement in omission cases. *See Resnick v. Hyundai Motor Am., Inc.*, Civ. No. 16-593, 2017 WL 1531192, at *20 (C.D. Cal. April 13, 2017) ("Under the Texas DTPA, there is no duty to disclose if the defendant did not know the material information at the time of the transaction.") (citation omitted); *Amata v. Toyota Motor Sales, U.S.A., Inc.*, Civ. No. 12-168, 2013 WL 12248140, at *6 (C.D. Cal. April 29, 2013) (dismissing MCPA claim where plaintiffs failed to allege defendant was aware of defect at time of sale).

production testing, pre-production design or failure mode analysis, . . . early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, consumer complaints to dealers and NHTSA, and testing performed in response to consumer complaints," BMW NA knew or should have known of the problems posed by their Defective Sunroofs. Plaintiffs respond that they "specifically allege that despite long having knowledge of the defect involving the sunroofs, as evidenced by multiple sources, [BMW NA] withheld such information from Plaintiffs." ECF No. 15 at 12.

Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Although Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the events which they claim give rise to an inference of knowledge." *Devaney v. Chester*, 813 F.2d 566, 568 (2d Cir. 1987).

Here, Plaintiffs allege that "[b]ased on pre-production testing, pre-production design or failure mode analysis, . . . early consumer complaints made to Defendants' network of exclusive dealers, aggregate warranty data compiled from those dealers, consumer complaints to dealers and NHTSA, and testing performed in response to consumer complaints," BMW NA knew or should have known of the problems posed by their Defective Sunroofs. Am. Compl. ¶ 58. They list twelve specific consumer complaints filed with NHTSA between 2002 and 2017, all but one of which involved a Class Vehicle, *id.* ¶ 65, and assert that BMW NA "regularly monitor[s] the NHTSA website and complaints filed therein," *id.* ¶ 63. By the time Plaintiff Kearney purchased his Class Vehicle, eight of the twelve NHTSA complaints listed in the Amended Complaint had been made. Am. Compl. ¶ 65. Plaintiffs Barr and Schoene purchased their vehicles later. According to the Amended Complaint, "there are multiple blogs and websites where consumers

have complained about" Defective Sunroofs in the Class Vehicles. *Id.* ¶ 66. Plaintiffs do not specify the names of those blogs or websites or provide dates of consumers' posts. *Id.*

Plaintiffs' knowledge-related allegations are sufficient to withstand BMW NA's motion. Plaintiffs plead that BMW NA monitored the NHTSA complaint log and became aware of numerous sunroof-related complaints being made well before Plaintiffs purchased their vehicles; that both pre-sale and post-complaint testing revealed the problem; and that BMW NA's dealer network supplied additional information about the Defective Sunroofs. Courts have found similar knowledge-related allegations sufficient. *Compare Cirulli v. Hyundai Motor Co.*, Civ. No. 08-0854, 2009 WL 5788762, at *4 (C.D. Cal. June 12, 2009) (finding knowledge adequately pled based on allegation that defendant tracked NHTSA complaint database and therefore became aware of problem with its vehicles); *with Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, Civ. No. 11-4429, 2012 WL 1574301, at *18 (D.N.J. May 3, 2012) (finding insufficient allegations of knowledge where NHTSA complaints filed after plaintiff purchased vehicle at issue); *and David v. Volkswagen Group of Am., Inc.*, Civ. No. 17-11301, 2018 WL 1960447, at *7 (D.N.J. April 26, 2018) ("Plaintiff's allegations that Defendant was on notice of defects because of consumer complaints, a letter to the [NHTSA], and a recall of the Volkswagen Beetle . . . fail to support his claim because these events do not involve the 2014 Touareg and/or occurred after Plaintiff made his purchase.").

b. Generic Statements and Puffery

BMW NA next argues that "generic statements and 'puffery' cannot form the basis of a misrepresentation claim." ECF No. 12-1 at 24–25. True enough. But Plaintiffs have pled a fraud-by-omission case, not a fraud-by-affirmative-misrepresentation case. *See* Am. Compl. ¶¶ 32–33. The relevant question is whether BMW NA had a duty to disclose the information

Plaintiffs claim they omitted, not whether its statements qualify as "generic" or "puffery." *See*

*Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1183–84 (N.D. Cal. 2017) (declining to

dismiss action under CLRA and CLA despite lack of "any specific affirmative misrepresentation

or misleading advertisement" where plaintiff alleged that defendant concealed information it had

a duty to disclose); Md. Code. Ann. Com. Law § 13-301(9) (MCPA claim includes "omission of

any material fact"); Tex. Bus. & Com. Code Ann. § 17.46(b)(24) (Texas DPTA covers

"omission of any material fact"). BMW NA's citations to cases involving affirmative-

misrepresentation claims are inapposite.

     c.  <u>Reliance</u>

     Plaintiffs allege that they relied on the expectation that "the Class Vehicles would be

equipped with a sunroof/moonroof that was free from defects and safe to operate" and that they

and the Class Members would have (i) declined to purchase the Class Vehicles; (ii) paid less for

them; or (iii) had the Defective Sunroofs replaced during their applicable warranty periods had

they known about the defect. Am. Compl. ¶¶ 33, 74, 104. BMW NA contends that these

allegations are insufficient to state consumer fraud claims because Plaintiffs "do not allege

exposure to specific representations regarding their vehicles' sunroofs," and therefore "cannot

plausibly claim they would have even been aware of the allegedly omitted information . . . ."

ECF No. 12-1 at 27.

     BMW NA primarily relies on (i) 9th Circuit cases stating that Plaintiffs must show both

that, had the omitted information been disclosed, they would have been aware of it and behaved

differently; and (ii) a District of New Jersey case dismissing a plaintiff's California consumer-

protection claims for failure to plead reliance. ECF No. 12-1 at 27; ECF No. 16 at 4–5; *Daniel v.*

*Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015); *Montich v. Miele USA, Inc.*, 849 F. Supp.

2d 439, 452–53 (D.N.J. 2012). BMW NA does not address Texas or Maryland law.

Regarding Plaintiffs' California-law claims, reliance may be shown by alleging "that, had

the omitted information been disclosed, one would have been aware of it and behaved

differently." *Daniel*, 806 F.3d at 1225 (citation omitted). Regarding the second prong, "[t]hat

one would have behaved differently can be presumed, or at least inferred, when the omission is

material," and "[a]lleged defects that create unreasonable safety risks are considered material."

*Id.* BMW NA does not dispute that a reasonable consumer would find exploding sunroofs to

"create unreasonable safety risks" and be considered material. It does dispute that Plaintiffs have

pled that they would have been aware of the information BMW NA allegedly withheld.

Plaintiffs allege that they received BMW NA's misrepresentations "prior to and at the

point of their Class Vehicle purchase or lease, including [via] advertising, the owner's manual

and the New Vehicle Limited Warranty pamphlet." Am. Compl. ¶ 74. This allegation is

sufficient to plead the first reliance prong in *Daniel*. *See In re Toyota Motor Corp.*, 790 F. Supp.

2d 1152, 1169 (declining dismissal of UCL claim on reliance grounds where plaintiffs alleged

that they viewed advertisements in multiple formats). In the cases cited by BMW NA, by

contrast, it appears that the plaintiffs failed to allege this exposure. *See Montich*, 849 F. Supp. 2d

at 452–53 (dismissing for failure to plead reliance where plaintiff neither alleged that she saw

any pre-purchase advertisements or representations or that she would have behaved differently if

she had been aware of the defect); *Resnick*, 2016 WL 9455016 at *10 (dismissing where

"Plaintiffs fail[ed] to plead sufficient facts indicating that they were aware of these online

representations or advertisements"); *see also Ehrlich*, 801 F. Supp. 2d at 920 (dismissing for

failure to plead reliance where the complaint was "devoid of allegations that Plaintiff would have plausibly been aware" of the defect before purchase).

      d.  <u>Fraudulent Concealment</u>

Next, BMW NA argues that "Plaintiffs' summary claims of fraudulent concealment are easily dispensed" because "they do not allege facts showing anything other than non-disclosure." ECF No. 12-1 at 27. BMW NA again addresses only California law. It refers to *Gray v. Toyota Motor Sales, U.S.A.* for the proposition that "[a] claim of fraudulent concealment requires an affirmative act seeking to suppress information in the public domain or obscure consumers' ability to discover it." Civ. No. 08-1690, 2012 WL 313703, at *3 (C.D. Cal. Jan. 23, 2012). In so arguing, BMW NA misapprehends the *Gray* court's analysis.

As discussed, under California law "a failure to disclose can constitute actionable fraud in four circumstances: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Id.* In other words, in those four circumstances a party has a duty to disclose. *Id.* Defendants' quote from *Gray* refers only to the fourth circumstance. *Id.* at *10 ("At best, these allegations suggest only that when customers expressed dissatisfaction with their mileage, Toyota's customer service representatives suggested ways in which it could be improved. Plaintiffs do not allege that Toyota sought to suppress information in the public domain or obscure consumers' ability to gauge their own mileage."). Plaintiffs here primarily allege that the second circumstance is at issue, and BMW NA's quotation from *Gray* is irrelevant. *See, e.g.*, Am. Compl. ¶ 57 ("Knowledge and information regarding the defect in the Defective Sunroofs were in the

exclusive and superior possession of Defendants and their dealers."). Because Plaintiffs allege

nondisclosure *and* BMW NA's exclusive possession of information regarding the defect, their

Amended Complaint satisfies at least the second duty-to-disclose circumstance described in

*Gray*.

BMW NA's motion to dismiss Counts 7, 8, 10, and 11 is denied.

### 5. **Common-Law Fraud (Count 1)**

Regarding Count 1, BMW NA again contends that Plaintiffs fail to satisfy Rule 9(b)'s

"heightened pleading standards." ECF No. 12-1 at 16–20. BMW NA claims that the Amended

Complaint "merely recites conclusions and parrots statutory language," "fails to allege basic

details as to Plaintiffs' vehicle purchases," and makes "conclusory allegations on information

and belief"; BMW NA does not, however, tie any of these claimed deficiencies to any particular

element of Plaintiffs' fraud claims. *Id.* Plaintiffs respond that their pleading satisfies Rule 9(b),

particularly in light of the fact that its requirements are relaxed in cases alleging fraudulent

omissions. ECF No. 15 at 10–16. The Court has already detailed the elements of California's,

Texas's, and Maryland's applicable common-law fraud actions.

To begin with, BMW NA's contention that Plaintiffs' conclusory state-of-mind

allegations are insufficient ignores that, under Rule 9(b), "[m]alice, intent, knowledge, and other

conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). It is true that

"[a]lthough Rule 9(b) permits knowledge to be averred generally, plaintiffs must still plead the

events which they claim give rise to an inference of knowledge." *Devaney*, 813 F.2d at 568. But

as already discussed, Plaintiffs do so here—they allege that BMW NA knew of the problems

posed by their Defective Sunroofs long before Plaintiffs purchased their vehicles and chose to

conceal those problems from Plaintiffs.

BMW NA points out that Plaintiff Schoene does not state the model year for her BMW X3, whether the BMW X3 was new or used at the time of purchase, where she purchased the BMW X3, or the date when her sunroof allegedly shattered," and that Plaintiff "Barr does not state whether he purchased a new or used vehicle or when and where he purchased his vehicle." ECF No. 12-1 at 17. The Court agrees that, absent a clarifying amendment, Plaintiff Schoene's BMW X3 cannot be a Class Vehicle because she purchased it in 2003, and it is only BMW X3s that are model year 2005 or later that are part of Plaintiffs' Class Vehicles definition. Am. Compl. ¶ 28. But Plaintiff Schoene's 2013 BMW 328i is indisputably a Class Vehicle, and so her claim survives. *Id.* ¶ 29. Regarding Plaintiff Barr's fraud claim, the Court is not convinced that he must plead the precise date and location of his Class Vehicle purchase in order to state a fraud claim under Rule 9(b), as those facts would do little to illuminate for BMW NA the misconduct with which it is charged.

Finally, pleading upon information and belief is undoubtedly permissible. *McDermott v. Clondalkin Group, Inc.*, 649 Fed. Appx. 263, 267–68 (3d Cir. 2016). And where the plaintiff "does not rely on boilerplate and conclusory allegations and he accompanies his legal theory with allegations that make his theoretically viable claim plausible," those allegations can survive a Rule 12(b)(6) motion to dismiss. *See id.* at 268 (reversing dismissal where plaintiff's allegations "do not paraphrase in one way or another the pertinent . . . elements of the claims" but instead "explain *how* [defendant] allegedly breached the contract") (emphasis in original). That is the case here, and BMW NA fails to identify any elements of Plaintiffs' fraud claims that are unmet as a result of this claimed pleading deficiency.

BMW NA's motion to dismiss Count 1 is denied.

6. **Negligent Misrepresentation (Count 2)**

BMW NA contends that the economic-loss rule, which precludes recovery in tort of pecuniary losses, bars Plaintiffs' negligent-misrepresentation claims. ECF No. 12-1 at 28–30. Plaintiffs respond that their claims fall into recognized exceptions to the economic-loss rule. ECF No. 15 at 34–7. As discussed, California law will apply to Plaintiff Kearney's negligent-misrepresentation claim, and New Jersey law will apply to Plaintiffs Barr's and Schoene's claims. Plaintiffs do not claim any injuries other than those to their Class Vehicles.

Under California law, the economic-loss rule applies to negligent-misrepresentation claims. *Shahinian v. Kimberly-Clark Corp.*, Civ. No. 14-8390, 2015 WL 4264638, at *8–9 (C.D. Cal. July 10, 2015). "Generally, under the 'economic loss' rule, a plaintiff who suffers only pecuniary injury as a result of the conduct of another cannot recover those losses in tort. Instead, the claimant is limited to recovery under the law of contract." *Apollo Grp., Inc. v. Avnet, Inc.*, 58 F.3d 477, 479 (9th Cir. 1995). One exception to the economic-loss rule applies in products-liability cases, where "the rule may be overcome by allegations of personal injury or damages to other property besides the defective product." *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F. Supp. 2d 1163, 1181 (C.D. Cal. 2009) (citations omitted).

Plaintiffs claim that a third exception exists "where the threat of physical harm to the plaintiff is sufficiently grave." ECF No. 15 at 35 (citing *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1035–36 (N.D. Cal. 2016)). That assertion is based on a California Supreme Court case called *Robinson Helicopter Co., Inc. v. Dana Corp.*, in which that court held that a helicopter parts supplier who knowingly provided false certifications to a helicopter manufacturer certifying that its parts complied with strict specifications could be sued under a fraud theory notwithstanding the economic-loss rule. 34 Cal. 4th 979 (2004). But the *Robinson*

*Helicopter* court noted that its holding was "narrow in scope and limited to a defendant's affirmative misrepresentations on which a plaintiff relies *and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss.*" *Id.* at 993 (emphasis added). That is not the case here, and the economic-loss rule will bar Plaintiff Kearney's negligent-misrepresentation claim.

New Jersey also recognizes that "[g]enerally speaking, tort principles are better suited to resolve claims for personal injuries or damages to other property," and that "[c]ontract principles more readily respond to claims for economic loss caused by damage to the product itself." *Alloway v. Gen. Marine Indus., L.P.*, 149 N.J. 620, 627 (1997). Accordingly, "a tort cause of action for economic loss duplicating the one provided by the U.C.C. is superfluous and counterproductive." *Id.* at 641. Plaintiffs assert that, in New Jersey, the economic-loss rule does not bar tort actions under theories of fraud or negligent misrepresentation. They are correct. *See Coastal Group v. Dryvit Sys.*, 274 N.J. Super. 171, 177 (App. Div. 1994) (noting that the economic loss doctrine "only precludes claims brought under tort principles which are inconsistent with the remedies authorized under the UCC" and that "the UCC expressly preserves a buyer's right to maintain an action for fraud and misrepresentation"). Plaintiffs Barr's and Schoene's negligent-misrepresentation claims under New Jersey law survive.

### 7. **Express Warranty Claim (Count 3)**

BMW NA contends that Plaintiffs' express-warranty claims fail because (i) the NVLW does not cover design defects; (ii) Plaintiffs did not present their vehicles for repair; and (iii) Plaintiffs have not pled that BMW NA created or breached a warranty by representation. ECF No. 12-1 at 30–34. As discussed, the Court will apply New Jersey law to the express-warranty claims at this stage. Under New Jersey law, "to state a claim for breach of express

warranty, Plaintiffs must properly allege: (1) that Defendant made an affirmation, promise or

description about the product; (2) that this affirmation, promise or description became part of the

basis of the bargain for the product; and (3) that the product ultimately did not conform to the

affirmation, promise or description." *Francis E. Parker Memorial Home, Inc. v. Georgia–Pacific*

*LLC*, 945 F. Supp. 2d 543, 568 (D.N.J. 2013).

According to BMW NA, the NVLW covers only "defects in materials or workmanship,"

and not design defects, whereas the language of the Amended Complaint routinely refers to

design defects and is only "sprinkle[d] . . . with conclusory 'materials and workmanship'

verbiage." *Id.* at 31; *see* Am. Compl. ¶ 13. Plaintiffs correctly note in response that courts in

this District routinely refuse to distinguish between design defects and defects in materials or

workmanship at the pleading stage, particularly where, as here, the plaintiff asserts both and

alleges facts supporting both explanations. *E.g.*, *In re Volkswagen Timing Chain Prod. Liab.*

*Litig.*, 2017 WL 1902160, at *12; *Alin v. Am. Honda Motor Co.*, Civ. No. 16-2765, 2010 WL

1372308, at *6 (D.N.J. Mar. 31, 2010) ("At the pleading stage, where the distinction between

defect in design and defect in materials or workmanship is a matter of semantics, and sufficient

facts are alleged to assert both, the defendant's characterization of the nature of the claim

prediscovery should not control whether the complaint survives."); *Cox v. Chrysler Grp., LLC*,

Civ. No. 14-7573, 2015 WL 5771400, at *6 (D.N.J. Sept. 30, 2015).

Next, BMW NA claims that it cannot have breached the NVLW if it upheld its

obligations thereunder, and that Plaintiffs must have presented their vehicles to BMW NA in

order for it to have failed to honor the NVLW. ECF No. 12-1 at 32–33. Plaintiffs respond by

pointing to language in the Amended Complaint asserting that Plaintiffs Barr and Schoene

incurred repair and/or replacement costs after their sunroofs shattered; they also note that

Plaintiff Kearney's sunroof has not yet shattered. ECF No. 15 at 25–26. Plaintiffs do not dispute that the warranty at issue is one of repair. *See* Am. Compl. ¶ 13 ("Defendants promised to repair or replace covered defective parts arising out of defects in materials and/or workmanship, including the Defective Sunroofs . . . ."). But none of Plaintiffs' allegations claim that they presented their vehicles to *BMW NA* for repair. BMW NA cannot have breached the NVLW if it never had the opportunity to comply with it. *See Herbstman v. Eastman Kodak Co.*, 68 N.J. 1, 12 (1975) ("We do not agree . . . that Kodak's express 'warranty' was that the camera would be free of mechanical defects. Rather, the language used contemplated that such defects might occur and, if so, Kodak would repair them."). Similarly, Plaintiff Kearney's express-warranty claim must be dismissed because he does not claim to have experienced any sunroof-related issues with his Class Vehicle. BMW NA's motion to dismiss Count 3 is granted.

8. **Implied Warranty Claim (Count 4)**

Regarding Plaintiffs' implied-warranty claims, BMW NA contends that (i) Plaintiff Barr's vehicle remains merchantable; (ii) Plaintiff Schoene's claim is time-barred; and (iii) Plaintiff Kearney's claim must fail because he is not in privity with BMW NA and his vehicle has never malfunctioned. ECF No. 12-1 at 34–36. In New Jersey, the implied warranty that comes with the purchase of a car "is simply a guarantee that [it] will operate in a safe condition and substantially free of defects and, therefore, where a car can provide safe, reliable transportation, it is generally considered merchantable." *Henderson v. Volvo Cars of N. Am., LLC*, Civ. No. 09-4146, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010).

*Plaintiff Barr.* BMW NA makes much of Plaintiff Barr's allegation that he "heard a large pop and noticed a hole in his sunroof," Am. Compl. ¶ 27, and the difference in nature between an "exploding" or "shattering" sunroof and one which has a hole in it. The Court declines to attach

the same significance to this semantic distinction, as a sudden "loud pop" and "hole in [a] sunroof" undoubtedly affects whether a vehicle is safe for ordinary use, which is a key determinant of merchantability. *Green v. BMW of N. Am.*, Civ. No. 11-4220, 2013 WL 5287314, at *2 (D.N.J. Sept. 17, 2013). BMW NA's argument that Barr's vehicle continues to "fulfill[] the ordinary purpose of a car" and thus remains merchantable simply because Barr continues to own the vehicle is similarly unavailing. ECF No. 12-1 at 35–36. That Barr continues to own his Class Vehicle does not necessarily mean that it is fit for ordinary use.

*Plaintiff Schoene.* Regarding Schoene, BMW NA argues that she did not experience any sunroof-related issues with her Class Vehicle until after the NVLW expired, and therefore cannot state an implied-warranty claim. ECF No. 12-1 at 36. Plaintiffs respond that Schoene's claims should survive because the implied-warranty limitation period is unconscionable. ECF No. 15 at 29–32; Am. Compl. ¶ 132. Relevant allegations include that BMW NA was aware that its sunroofs were defective by the time Plaintiffs purchased their vehicles and had exclusive knowledge of the defect; that there was a "gross disparity in bargaining power" between Plaintiffs and Defendants; and that the time limitations were determined by Defendants, not Plaintiffs. *Id.*

Implied warranties of merchantability are limited to the same term as any express warranty. N.J. Stat. Ann. § 12A:2-317. Where the alleged breach involves a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state a claim if he alleges that the warranty was unconscionable. *Henderson v. Volvo Cars of N. Am., LLC*, Civ. No. 09-4146, 2010 WL 2925913, at *7 (D.N.J. July 21, 2010). In New Jersey, the question whether a contractual provision is unconscionable is a matter of law for the Court. *Collins v. Uniroyal, Inc.*, 64 N.J. 260, 267 (1974). But if a court thinks a contractual clause may be

unconscionable, "the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect." N.J.S.A. 12A:2-302(2).

Unconscionability may be either "substantive" or "procedural." In New Jersey, courts will find a contract term to be substantively unconscionable if the term is "excessively disproportionate," involving an "exchange of obligations so one-sided as to shock the court's conscience." *Delta Funding Corp. v. Harris*, 189 N.J. 28, 55 (2006) (Zazzali, J., concurring in part and dissenting in part) (citing *Sitogum Holdings, Inc. v. Ropes*, 352 N.J. Super. 555, 565 (Ch. Div. 2002). They will find it procedurally unconscionable depending on various "inadequacies," including "lack of sophistication," "bargaining tactics, and the particular setting existing during the contract formation process." *Id.* In New Jersey, if the contract at issue is a contract of adhesion, the court should consider four factors: "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract." *Id.*

Courts in this District have declined to resolve similar unconscionability claims at the motion-to-dismiss stage. *See, e.g.*, *Henderson*, 2010 WL 2925913, at *9 (permitting unconscionability claim to proceed on allegations that the manufacturer knew a part would fail after warranty expiration and that plaintiffs "had no meaningful choice in determining" time limitations due to a "gross disparity in bargaining power"); *In re Ford Motor Co. E-350 Van. Prods. Liab. Litig.*, MDL No. 03-4558, 2008 WL 4126264, at *20 (D.N.J. Sept. 2, 2008); *Skeen*, 2014 WL 283628, at *14 (permitting plaintiffs' claim of unconscionability to proceed past the motion-to-dismiss stage where they "claim[ed] that Defendants knew the timing chain tensioners would fail and manipulated the warranty terms to avoid paying for it"). The Court concurs and will not dismiss Plaintiff Schoene's implied-warranty claim.

*Plaintiff Kearney.* Applying California law, BMW NA argues that Kearney's implied-warranty claim must fail because Kearney purchased a used Class Vehicle and thus is not in privity with BMW NA. Because the Court applies New Jersey law to Plaintiffs' implied-warranty claims on this motion, and because New Jersey does not require privity between a plaintiff and defendant in implied-warranty claims, this argument fails. *Spring Motors Dist., Inc. v. Ford Motor Co.*, 98 N.J. 555, 561 (1985).

Next, BMW NA insists that Kearney's implied warranty claim must be dismissed because his sunroof has not malfunctioned. Am. Compl. ¶¶ 24–25. Plaintiffs offer no authority permitting a warranty claim to proceed where the plaintiff had not yet manifested some injury; they cite only cases where latent defects manifested outside the time period of the applicable warranty, but before initiating litigation. *E.g.*, *In re Volkswagen Timing Chain*, 2017 WL 1902160, at *15. An allegation that Kearney's sunroof is likely defective is insufficient to sustain his warranty claims. *See Yost v. Gen. Motors Corp.*, 651 F. Supp. 656, 658 (D.N.J. 1986) (dismissing warranty claim where plaintiff only alleged that a "potential leak is 'likely' to cause damage and 'may' create potential safety hazards"). This rationale provides an alternative basis for dismissing Plaintiff Kearney's express warranty claim, discussed earlier. It also requires dismissal of Kearney's Song-Beverly Consumer Warranty Act claim because he offers no indication that his Class Vehicle is not "fit for the ordinary purposes for which such" vehicle is used. Cal. Civ. Code § 1791.1.

Accordingly, Count 4 is dismissed as to Plaintiff Kearney, and Count 9 is dismissed.

### 9. **MMWA Claim (Count 5)**

Count 5 of Plaintiffs' Amended Complaint pleads a violation of the MMWA. "Magnuson–Moss is a remedial statute designed to protect the purchasers of consumer goods

from deceptive warranty practices." *Robinson v. Kia Motors Am., Inc.*, Civ. No. 13-006, 2015 WL 5334739, at *14 (D.N.J. Sept. 11, 2015). BMW NA contends that Plaintiffs' MMWA claim fails because (i) their state-law warranty claims fail, and (ii) there are fewer than 100 named plaintiffs. ECF No. 12-1 at 38–39.

As Plaintiffs point out, courts routinely permit putative class actions with fewer than 100 named plaintiffs to proceed with MMWA claims where, as in this case, the court has jurisdiction under some other statute. *See, e.g.*, *Kia Motors*, 2015 WL 5334739, at *14 (allowing MMWA claims to proceed with five named plaintiffs); *see also Smith v. Vanguard Dealer Srvcs., LLC*, Civ. No. 09-031, 2009 WL 2152096, at *3 (D.N.J. July 14, 2009) (describing 100-plaintiff requirement as a "jurisdictional provision").

Here, because the Court denies BMW NA's motion to dismiss Plaintiffs Barr's and Schoene's implied-warranty claims, their MMWA claims survive as well. But because the Court grants BMW NA's motion to dismiss all of Plaintiff Kearney's warranty claims, Kearney's MMWA claim must fail as well. Count 5 is dismissed as to Plaintiff Kearney.

### 10. DTPA Claim (Count 10)

Finally, BMW NA claims that Count 10 must be dismissed because Plaintiff Barr failed to give written notice to BMW NA at least 60 days before filing suit, as required by the Texas DTPA. ECF No. 12-1 at 39. Barr sent a letter to Defendants on the same day that Plaintiffs filed the Amended Complaint. Am. Compl. ¶ 253. Plaintiffs respond that the "consequence for not complying with the notice requirement is not dismissal, but abatement of the action during the statutory notice period." ECF No. 15 at 37. Plaintiffs are correct. *See Hines v. Hash*, 843 S.W.2d 464, 468–69 (Tex. 1992) (concluding that "it is not necessary to the purpose of notice . . . to dismiss plaintiff's action if notice is not given" and "that if a plaintiff files an action for

damages under the DTPA without first giving the required notice, and a defendant timely requests an abatement, the trial court must abate the proceedings for 60 days"). BMW NA's motion to dismiss Count 10 is denied.

## CONCLUSION

BMW NA's motion to dismiss is granted as to Counts 3, 6, 9, and 12 in their entirety, and as to Counts 2, 4, and 5 regarding Plaintiff Kearney only. The remainder is denied. Plaintiffs are granted 45 days from the date of this opinion to seek leave to amend the Amended Complaint if they wish. An appropriate order follows.

DATE: 29 August 2018

William H. Walls
Senior United States District Court Judge