<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DAVE KEARNEY, et al.,**  *Plaintiffs,*  v.  **BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, et al.,**  *Defendants.* | **Civil Action No. 17-13544**  **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Defendant Bayerische Motoren Werke Aktiengesellschaf's ("BMW AG") Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2), ECF No. 124. Plaintiffs Dave Kearney ("Kearney"), James Barr, Tony Trosclair, Ronald Rothrock, Courtney Loughery, and Kara Finch (collectively "Plaintiffs") oppose the Motion. ECF No. 125. For the reasons explained below, the Motion is **GRANTED**.

**I.    FACTUAL BACKGROUND**[1]

This putative class action arises out of Plaintiffs' purchase of BMW vehicles with defective sunroofs (the "Vehicles"). <u>See generally</u> CCAC. Plaintiffs are consumers who each reside outside

---

[1] The Court discussed the background of this action at length in a prior opinion by Senior United States District Judge William H. Walls ("Judge Walls"). See <u>Kearney v. Bayerische Motoren Werke Aktiengesellschaft</u>, No. 17-13544, 2018 WL 4144683 (D.N.J. Aug. 29, 2018) ("<u>Kearney I</u>"). Only those facts necessary to resolve the instant Motion are recited herein.

These facts are drawn from Plaintiffs' Consolidated Class Action Complaint ("CCAC"), ECF No. 22, and the declarations submitted alongside the parties' briefing on the Motion, <u>see</u> Declaration of Ronny Löwa ("Löwa Decl."), ECF No. 124.1; Declaration of Lindsey H. Taylor ("Taylor Decl."), ECF No. 126; Supplemental Declaration of Ronny Löwa ("Suppl. Löwa Decl."), ECF No. 130.1; Declaration of Eric Y. Kizirian ("Kizirian Decl."), ECF No. 130.2. Factual disputes are noted.

```
```
of New Jersey and purchased their respective Vehicle outside of New Jersey but within the United States. Id. ¶¶ 24, 26, 32, 34, 36, 38. BMW AG is a publicly traded German stock company with its principal place of business in Munich, Germany. Löwa Decl. ¶ 6. Defendant BMW of North America, LLC ("BMW NA" and together with BMW AG, "Defendants") is a Delaware limited liability company with its principal place of business in New Jersey and is a wholly owned indirect subsidiary of BMW AG, separated by five levels of intermediate entities. Id. ¶¶ 22-24; see also Taylor Decl., Ex. B at 192.

Plaintiffs generally allege that the Vehicles contain defective sunroofs that "suddenly and unexpectedly explode," resulting in "shattered glass . . . shower[ing] over the driver and passengers." CCAC ¶ 3. Despite having knowledge of this defect, Defendants allegedly concealed its existence in at least three general instances. First, Defendants omitted references to the defect in advertisements, owner's manuals, and warranty pamphlets. Id. ¶¶ 40, 82-83. Second, Defendants "upsold" Plaintiffs by encouraging them to purchase luxury packages that include a sunroof, without disclosing the defect. Id. ¶¶ 16, 52. Third, Defendants have disingenuously stated that "exploding sunroofs are caused by a rock or some other foreign object," rather than an inherent defect, and have denied warranty coverage on that basis. Id. ¶¶ 13, 55. Plaintiffs, however, do not allege that they personally were denied warranty coverage. See id. ¶ 81 (alleging that Plaintiffs "had no knowledge of the defect . . . during the applicable express warranty periods").

BMW AG designs and manufactures BMW vehicles in Germany for worldwide distribution. Löwa Decl. ¶¶ 12-13. It is not qualified to do business in the United States, id. ¶ 7, has no agent for service of process in the United States, id. ¶ 8, pays no taxes in the United States, id. ¶ 9, does not own or use any real property within the United States, id. ¶¶ 10-11, and maintains

2

...
...

no employees within the United States, id. ¶ 19.  BMW AG also does not sell, advertise, market, distribute, or warrant vehicles to dealers or consumers within the United States.  Id. ¶¶ 12, 14-17.  Rather, BMW AG sells its vehicles to BMW NA, which takes possession of the automobiles in Germany and serves as the exclusive distributor of BMW vehicles within the United States.  Id. ¶¶ 27, 29.  BMW NA then markets, advertises, warrants, and sells BMW automobiles to United States consumers.  Id. ¶ 27.

Beyond their manufacturer-distributor relationship, BMW AG and BMW NA interact in several other ways.  Employees from BMW NA regularly communicate with employees in parallel departments at BMW AG and collaborate on issues such as regulation, product analysis, and warranty coverage.[2]  Similarly, the two entities share information related to technical service issues through a computerized system that collects data from all markets worldwide.  See Yeldham Dep. Tr. 141:5-22.  BMW AG also evidently has some influence on personnel decisions impacting BMW NA.[3]

The two entities have collaborated on issues related to shattering sunroofs as well.  For example, BMW AG employees solicited and received field reports, photographs, vehicle parts, and other information related to the sunroofs from employees of BMW NA.  See Yeldham Dep. Tr. 88:11-89:10; Taylor Decl. Ex. N.  On at least one occasion, in response to a BMW NA

---

[2] Several representatives of BMW NA testified to this effect, including product engineer Chabhinath Ramkissoon ("Ramkissoon"), Meredith Schank ("Schank") of the warranty department, and Mark Yeldham ("Yeldham") in product analysis.  See Ramkissoon Dep. Tr. 55:18-56:1, Taylor Decl. Ex. J; Schank Dep. Tr. 48:11-52:18, Taylor Decl. Ex. K; Yeldham Dep. Tr. 23:15-24:20, Taylor Decl. Ex. C.

[3] For example, a March 13, 2019 article from WardsAuto reported that management in Munich created "bonus and performance scorecards" for employees in New Jersey.  See Taylor Decl. Ex. D.  Some employees from BMW AG also travelled to New Jersey for two- or three-year rotations to gain experience, during which time they became BMW NA employees, were paid by BMW NA, and retained the option to either return to Germany and BMW AG or to remain employed by BMW NA in the United States.  Yeldham Dep. Tr. 27:5-30:3, 34:16-19; Suppl. Löwa Decl. ¶ 10.  Plaintiff also contends that the Chief Executive Officer of BMW NA is an employee of BMW AG, though Defendant disputes this fact.  Compare Taylor Decl. Ex. F (website printout identifying current CEO of BMW NA, Bernhard Kuhnt, as "Head of Region (Americas) at [BMW AG]"), with Suppl. Löwa Decl. ¶¶ 7-8 (averring that the CEO of BMW NA is employed and paid solely by BMW NA and serves no concurrent role with BMW AG).

employee's email inquiry, a BMW AG employee advised on issues related to warranty coverage for shattered sunroofs, stating that claims should be denied when "caused by stone impact" or where the glass was "pre-damaged." Taylor Decl. Ex. N. The BMW NA employee testified that other colleagues at BMW NA asked similar questions about warranty coverage. Ramkissoon Dep Tr. 161:25-162:12.[4] Finally, BMW NA represented BMW AG's interests in investigations by United States regulatory bodies related to shattering sunroofs.[5]

## II.  PROCEDURAL HISTORY

Kearney initiated this action on December 22, 2017. ECF No. 1. On March 13, 2018, Kearney filed an Amended Complaint adding two additional plaintiffs and asserting twelve claims against Defendants. See Am. Compl., ECF No. 7. On August 29, 2018, Judge Walls dismissed Plaintiffs' claims for breach of express warranty and unjust enrichment, along with two statutory consumer protection claims. See Kearney I, 2018 WL 4144683. After this case was consolidated with an action alleging substantially similar violations related to defective sunroofs in BMW vehicles, see ECF No. 21, Plaintiffs filed the CCAC on October 23, 2018.

The twenty-three count CCAC alleges claims for common law fraud, negligent misrepresentation, breach of implied warranty, and consumer protection violations. CCAC ¶¶ 106-499.[6] Plaintiffs seek to represent a nationwide class of consumers who purchased the

---

[4] Ultimately, the decision on whether repairs are covered by warranty is made "exclusively by BMW NA and/or the local dealerships at which customers present their vehicle for repair." Suppl. Löwa Decl. ¶ 16.

[5] Specifically, BMW NA representative Derek Rinehardt ("Rinehardt") testified that BMW NA represented BMW AG and other BMW entities in connection with investigations by the National Highway Traffic Safety Administration ("NHTSA") and the United States Senate. Rinehardt Dep Tr. 44:12-47:5; 55:9-56:6, Taylor Decl. Ex. A. Rinehardt further testified that the Vice President of Engineering for BMW NA has a direct line of reporting to BMW AG's regulatory department. Id. 17:12-25.

[6] The CCAC reasserts the claims previously dismissed by Judge Walls. Plaintiffs concede that these counts are pled solely to preserve appellate rights and indicate that they will not prosecute them in light of the Court's prior ruling. CCAC § VIII n.41. The CCAC also asserts claims on behalf of former Plaintiff Robin Schoene ("Schoene"). The parties stipulated to dismissal of Schoene's claims without prejudice, which the Court so-ordered on May 13, 2019. ECF No. 40.

Vehicles, along with sub-classes of consumers who purchased the Vehicles in California, Texas, Maryland, Illinois, Louisiana, Pennsylvania, and South Carolina. Id. ¶ 93. Plaintiffs effected foreign service upon BMW AG on November 7, 2019. See ECF No. 67. BMW AG now moves to dismiss the CCAC for lack of personal jurisdiction. ECF No. 124.

### III. LEGAL STANDARD

To survive a Rule 12(b)(2) motion to dismiss, Plaintiffs bear the burden of proving that personal jurisdiction is proper. IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254, 257 (3d Cir. 1998). "[I]n determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff." MaxLite, Inc. v. ATG Elecs., Inc., 193 F. Supp. 3d 371, 382 (D.N.J. 2016). Once a motion is made, and "plaintiff's allegations are challenged by affidavits or other evidence, 'plaintiff must respond with actual proofs, not mere allegations.'" UniMaven, Inc. v. Texas TR, LLC, No. 17-12008, 2018 WL 2244695, at *2 (D.N.J. Apr. 25, 2018) (quoting Patterson v. FBI, 893 F.2d 595, 604 (3d Cir. 1990)).

### IV. ANALYSIS

Plaintiffs maintain that the Court may exercise jurisdiction over BMW AG because (1) the contacts of BMW NA can be imputed to its parent company under an alter ego or agency theory,[7] or (2) this Court has specific personal jurisdiction over BMW AG because this action arises out of BMW AG's direct interactions with its subsidiary in New Jersey. The Court addresses each contention in turn and ultimately concludes that Plaintiffs have failed to present a persuasive basis for jurisdiction.

---

[7] The parties do not dispute this Court's jurisdiction over BMW NA.

A.     Alter Ego / Agency Theory

Plaintiffs first contend that the contacts of New Jersey-based BMW NA should be imputed to BMW AG because BMW NA acts as BMW AG's agent or alter ego. The Court disagrees.

A plaintiff generally must demonstrate independent personal jurisdiction over each defendant. Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty., 137 S. Ct. 1773, 1783 (2017). However, the activities of a subsidiary may be imputed to its parent company where the "subsidiary is merely the agent of a parent corporation, or if the parent corporation otherwise 'controls' the subsidiary." Shuker v. Smith & Nephew, PLC, 885 F.3d 760, 781 (3d Cir. 2018) (citations omitted). To assess whether a subsidiary's contacts should be imputed, the Court considers factors including:

> (1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and a subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies.

Transp. Ins. Co. v. Am. Harvest Baking Co., Inc., No. 15-663, 2015 WL 9049273, at *4 (D.N.J. Dec. 16, 2015) (citing Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, 513 (D.N.J. 2008)).

Despite the common ownership between BMW NA and BMW AG, the Court concludes that the remaining factors weigh against imputation. BMW NA and BMW AG perform separate core functions: BMW AG manufacturers vehicles while BMW NA markets, sells, and distributes vehicles throughout the United States. Löwa Decl. ¶¶ 12-13, 27, 29. BMW AG does not dictate the day-to-day operations of BMW NA's marketing and distribution activities. Id. ¶ 25; Suppl. Löwa Decl. ¶ 13. BMW NA is thus, at most, "the corporate equivalent of an independent contractor, rather than a servant." Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 610 (D.N.J. 2004) (holding that subsidiary-distributor was not agent of parent-manufacturer where parent

6

"required [subsidiary] to perform within certain parameters, [but] did not control the day-to-day time, manner, and method of executing the work").[8] There is also no evidence that BMW NA is financially dependent on BMW AG or that corporate formalities are disregarded. BMW AG's representative avers that "BMW AG does not handle the financial affairs of BMW NA" or "maintain BMW NA's corporate books, records, or bank accounts." Löwa Decl. ¶ 28.

As evidence of BMW AG's alleged control over its subsidiary, Plaintiff points to (1) BMW AG's influence over personnel decisions at BMW NA; (2) the regular collaboration and information sharing between employees of each entity on "issues related to product investigations, warranty coverage, replacement parts, and regulation;" (3) solicitations from BMW AG for data concerning shattered sunroofs; and (4) intercompany communications related to warranty coverage for shattered sunroofs. See Pl. Opp. at 4-7. But while these facts may show that BMW AG itself has contacts with New Jersey,[9] they do not suggest that BMW AG's activities "deviate from the normal amount of control a parent has over its subsidiary" or "reach the point of dominance." Seltzer, 339 F. Supp. 2d at 611.[10] Notably, nothing in the record indicates that BMW

---

[8] The evidence suggests that BMW NA may act as BMW AG's agent for one discrete purpose—appearances before United States regulators. Rinehardt Dep Tr. 44:12-47:5; 55:9-56:6. Even assuming BMW NA acts as BMW AG's agent for this limited purpose, that cannot provide a basis to impute all of BMW NA's jurisdictional contacts to BMW AG. Critically, Plaintiffs' claims do not arise out of BMW NA's interactions with the NHTSA or the U.S. Senate. For instance, Plaintiffs do not allege that BMW NA made any actionable representations or omissions in connection with investigations related to shattering sunroofs. See CCAC ¶¶ 59, 61 (describing NHTSA and Senate investigations).

[9] As discussed below, jurisdiction is nonetheless improper because Plaintiffs' claims do not arise out of or relate to BMW AG's alleged contacts with New Jersey.

[10] For example, Plaintiffs' contested claim that some employees serve concurrent roles with both entities is insufficient because even a "significant degree of overlap" in personnel does not establish an alter ego relationship where, as here, there is no evidence that any "dual office hold[er]" working for the subsidiary has acted against the subsidiary's interest, but in favor of the parent. Seltzer, 339 F. Supp. 3d at 610-11; see also United States v. Bestfoods, 524 U.S. 51, 69 (1998) (noting presumption that "directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary"). Further, the use of shared data systems and other means to collect data from subsidiaries is an "ubiquitous practice in the modern business landscape" and the "[u]tilization of such systems does not establish alter ego jurisdiction." In re Chocolate Confectionary Antitrust Litig., 641 F. Supp. 2d 367, 394-95 (M.D. Pa. 2009). Finally, Plaintiffs' evidence of business interactions between parent and subsidiary fail to show the day-to-day control or "dominance" needed to establish an alter ego relationship. The fact that BMW NA sometimes solicits and receives input from BMW AG related to warranties is not inconsistent with BMW NA's role as the sole warrantor of BMW

7

AG exercised influence over BMW NA's marketing, sale, or distribution activities, creating a clear line of demarcation between parent-manufacturer and subsidiary-distributor. See Löwa Decl. ¶ 27. Consequently, the Court declines to impute BMW NA's jurisdictional contacts to BMW AG.[11]

### B. BMW AG's Contacts with New Jersey

Plaintiffs next argue that the Court may assert personal jurisdiction based on BMW AG's direct contacts with New Jersey. Again, the Court disagrees.

A plaintiff seeking to invoke jurisdiction must demonstrate that the defendant has constitutionally sufficient contacts with New Jersey,[12] either generally or specifically with regards to this action. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). Plaintiffs do not contend the Court has general jurisdiction over BMW AG, see Pl. Opp. at 9 n.5, and so the Court addresses only specific jurisdiction.

A prima facie case of specific jurisdiction is established when a non-resident defendant has "purposefully directed" its activities at the forum and the plaintiff's injury "arise[s] out of or relate[s] to at least one of those activities." O'Connor, 496 F.3d at 317 (citations and quotations omitted). If Plaintiffs present a prima facie case of personal jurisdiction, then BMW AG must "present a compelling case that the presence of some other considerations would render

---

vehicles and decisionmaker with regards to warranty coverage. See Löwa Decl. ¶¶ 16, 27; Suppl. Löwa Decl. ¶ 16; see also Schank Dep Tr. 72:6-73:3 (testifying that BMW AG does not pay for warranty claims and cannot access the BMW NA's payment platform for warranty claims).

[11] Plaintiffs' reliance on Dewey v. Volkswagen AG, 558 F. Supp. 2d 505, is misplaced. There, the court found that a United States subsidiary-distributor of a German car manufacturer acted as the parent's agent—for the purpose of service of process—because the plaintiff presented evidence showing that the parent directed "every phase of [the subsidiary's] operation, including [its] marketing, distribution[,] sales[, and] . . . warranties" and "determine[ed] on a day-to-day basis exactly how [the subsidiary was] to operate." Id. at 514. No similar evidence of day-to-day control is present here.

[12] "A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law," which "provides for jurisdiction coextensive with the due process requirements of the United States Constitution." Miller Yacht Sales, Inc. v. Smith, 384 F.3d 93, 96 (3d Cir. 2004) (citations omitted). "Thus, parties who have constitutionally sufficient 'minimum contacts' with New Jersey are subject to suit there." Id.

jurisdiction unreasonable." Id. at 324 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)).

Plaintiffs contend that BMW AG purposefully directed contacts with New Jersey through its regular interactions with BMW NA and that Plaintiffs' claims arise out of those interactions. The Court need not determine whether BMW AG's relations with its subsidiary were purposefully directed at New Jersey because Plaintiffs' claims do not "arise out of or relate to" any of the contacts alleged by Plaintiffs.

To demonstrate that their claims arise out of BMW AG's contacts, Plaintiffs must first establish "the existence of some minimal link between contacts and claims" by showing that the contacts are a "but-for" cause of the underlying claim. Id. at 322. They must then show that the exercise of jurisdiction is proportional to the "benefits and protection" defendant received from the forum by initiating the contacts. Id. at 322-23 ("The causal connection can be somewhat looser than the tort concept of proximate causation, but it must nonetheless be intimate enough to keep the quid pro quo proportional and personal jurisdiction reasonably foreseeable.") (citation omitted).[13]

---

[13] The Supreme Court recently held in Ford Motor Co. v. Montana Eighth Judicial District Court, that a strict causal nexus between contacts and claim is not necessary to support personal jurisdiction where a plaintiff's claims share a sufficiently strong affiliation with—and thus "relate to"—a defendant's systematic contacts with the forum state. No. 19-368, 2021 WL 1132515, at *5 (U.S. Mar. 25, 2021). Applying this test, the Court determined that Minnesota and Montana courts could exercise jurisdiction over Ford for claims alleging an "in-state injury" caused by "defective products that Ford extensively promoted, sold, and serviced in Montana and Minnesota," even though the particular cars at issue were sold by Ford outside of the forum states, before being resold by consumers to the in-state plaintiffs. Id. at *9. The Supreme Court further observed that the argument for jurisdiction would be weaker in the state of first sale, as a suit brought there would involve "all out-of-state parties, an out-of-state accident, and out-of-state injuries." Id. at *8.

BMW AG conducts no marketing or sales activities in New Jersey or anywhere in the United States, Löwa Decl. ¶¶ 16, 27, and as in the hypothetical posed by the Supreme Court, no Plaintiff resides, purchased a vehicle, or suffered injury in New Jersey, CCAC ¶¶ 24, 26, 32, 34, 36, 38. The strong affiliation between contacts and claim present in Ford Motor is therefore wholly lacking here.

9

While the precise elements of Plaintiffs' claims differ, they each arise out of the same core allegations. Defendants concealed the existence of defective sunroofs by (a) omitting references to the defect in advertisements, owner's manuals, and warranty pamphlets, CCAC ¶¶ 40, 82-83, (b) encouraging Plaintiffs to purchase luxury packages that include a sunroof, without disclosing the defect, id. ¶¶ 16, 52, and (c) denying warranty coverage on the basis that "exploding sunroofs are caused by a rock or some other foreign object," rather than a defect, id. ¶¶ 13, 55. Plaintiffs each purchased a Vehicle in reliance on Defendants' omission. Id. ¶ 41. Plaintiffs then suffered injuries stemming from shattering glass, temporary loss of the Vehicles' use, and/or possession of a defective Vehicle. Id. ¶¶ 24-27, 32-39.[14]

Plaintiffs proffer evidence of two set of contacts arguably relevant to Defendants' alleged joint efforts to conceal the defect, but neither provides the relationship demanded by O'Connor. First, Plaintiffs point to evidence that BMW AG solicited and received information from BMW NA employees in connection with an investigation into defective sunroofs. See Yeldham Dep. Tr. 88:11-89:10; Taylor Decl. Ex. N. But Defendants' internal efforts to investigate sunroofs do not show BMW AG's involvement in consumer-facing statements concerning the Vehicles. BMW AG states that BMW NA is exclusively responsible for the marketing and sale of BMW vehicles in the United States and serves as the exclusive warrantor of BMW vehicles in the United States, and Plaintiffs fail to provide evidence to the contrary. See Löwa Decl. ¶¶ 16, 27; Suppl. Löwa Decl. ¶¶ 15-16.

---

[14] Specific personal jurisdiction must typically be assessed on a claim-by-claim basis. See Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). However, a claim-specific analysis is unnecessary for "factually overlapping claims." O'Connor, 496 F.3d at 317 n.3. Here, the claims asserted by the CCAC overlap partially, but not entirely. For instance, Plaintiffs need not prove reliance on an omission to prevail on their implied warranty claims. See Kearney I, 2018 WL 4144683, at *15 ("[T]he implied warranty that comes with the purchase of a car is simply a guarantee that [it] will operate in a safe condition and substantially free of defects and, therefore, where a car can provide safe, reliable transportation, it is generally considered merchantable.") (citation and quotations omitted). As Plaintiffs have failed to demonstrate a sufficient connection to any aspect of this litigation, the Court nonetheless declines to undertake a claim-by claim analysis.

Second, Plaintiffs point out that BMW AG responded to inquiries by BMW NA concerning the scope of warranty coverage for shattered sunroofs, including a statement that warranty claims seeking sunroof repairs should be denied when damage was "caused by stone impact" or where the glass was "pre-damaged" at some point before it ultimately shattered. Taylor Decl. Ex. N; see also Ramkissoon Dep Tr. 161:25-162:12. Fatally, however, Plaintiffs fail to allege that they personally sought warranty coverage for broken sunroofs. See CCAC ¶ 81; Kearney I, 2018 WL 4144683, at *15 (dismissing breach of express warranty claim because Plaintiffs did not allege that they presented their Vehicles for repair). Plaintiffs therefore could not have relied on any omissions or representations related to a denial of warranty coverage, and any related contacts by BMW AG consequently lack the requisite nexus with Plaintiffs' claims.[15]

Plaintiffs next argue that jurisdiction is proper because every vehicle manufactured by BMW AG and sold in the United States passes through New Jersey, via BMW NA. BMW AG does not import vehicles into New Jersey, but instead sells its vehicles to BMW NA in Germany. Löwa Decl. ¶ 29. Despite this lack of direct contact, Plaintiffs contend that BMW AG targeted New Jersey because it "knew . . . every BMW vehicle sold in the U.S. . . . would be sold through New Jersey" and "established BMW NA as its subsidiary in New Jersey so that BMW AG could sell vehicles in the U.S." Pl. Opp. at 10. In essence, Plaintiffs articulate a "stream of commerce" theory of jurisdiction that has been rejected by the Third Circuit. See Shuker, 885 F.3d at 780 (citing Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 108-13 (1987) (plurality opinion)).[16]

---

[15] Even if BMW AG's statements to BMW NA in the warranty context influenced BMW NA's consumer-facing activities nationwide, any causal "link between contacts and claims" is too tenuous to render jurisdiction in New Jersey reasonably foreseeable. See O'Connor, 496 F.3d at 322-23.

[16] "The stream-of-commerce theory contends, essentially, that specific personal jurisdiction exists over a non-resident defendant when that defendant has injected its goods into the forum state indirectly via the so-called stream of

11

The "foreseeability" that a product placed in the stream of commerce will arrive in the forum state is an insufficient basis for jurisdiction absent some other "act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (citation omitted). Jurisdiction also cannot be established through a foreign manufacture's decision to contract with an in-state distributor, Bristol-Myers Squibb, 137 S. Ct. at 1783, or a manufacturer's intention to "targe[t] the national market," Oticon, Inc. v. Sebotek Hearing Sys., LLC, 865 F. Supp. 2d 501, 513 (D.N.J. 2011) (citing J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873 (2011)), which is all Plaintiffs allege. Plaintiffs therefore may not rely on BMW NA's distribution of vehicles from New Jersey to establish jurisdiction over BMW AG.[17]

Finally, Plaintiffs cannot rely on the location of Plaintiffs' respective injuries, which Plaintiffs do not allege occurred in New Jersey. See CCAC ¶¶ 24-27, 32-39; see IMO Indus., 155 F.3d at 265-66 (permitting jurisdiction over an intentional tort claim where "[t]he plaintiff felt the brunt of the harm in the forum" and "[t]he defendant expressly aimed his tortious conduct at the forum").

Plaintiffs have thus failed to establish a prima facie case of personal jurisdiction over BMW AG. The Court need not assess whether "some other considerations would render jurisdiction unreasonable." O'Connor, 496 F.3d at 324.

---

commerce, rendering it foreseeable that one of the defendant's goods could cause injury in the forum state." Shuker, 885 F.3d at 780 (citation omitted).

[17] Moreover, "the connection between [a foreign manufacturer's] allegedly manufacturing [a product] for distribution to its New Jersey subsidiary and the injury sustained by [out-of state residents using the product] across the Country is not 'intimate enough to keep the quid pro quo proportional.'" Oliver v. Funai Corp., Inc., No. 14-4532, 2015 WL 9304541, at *10 (D.N.J. Dec. 21, 2015) (quoting O'Connor, 496 F.3d at 321).

12

### C. Jurisdictional Discovery

Plaintiffs alternatively request leave to conduct limited discovery of BMW AG to uncover additional facts to support personal jurisdiction. The Court concludes that jurisdictional discovery is inappropriate at this stage in the litigation.

To obtain jurisdictional discovery, Plaintiffs must "present[] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 157 (3d Cir. 2010) (quoting Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 455 (3d Cir. 2003)). The CCAC falls short of this threshold. Indeed, the only allegations connecting BMW AG to New Jersey are general assertions that "Defendants" collectively "conduct a substantial amount of business in this District," "have marketed, advertised, sold, and/or leased the . . . Vehicles within this District," and "made decisions related to advertisement, marketing, sales, warranties, and recalls of vehicles" from BMW NA's headquarters in New Jersey. CCAC ¶ 23. These contentions fail to particularly plead the possible existence of jurisdictional contacts between BMW AG and New Jersey, as Due Process demands an independent showing of jurisdiction over each defendant. Bristol-Myers Squibb Co., 137 S. Ct. 1773 at 1783.[18]

Moreover, Plaintiffs have had the benefit of discovery from BMW NA for over two years and have supported their claim of jurisdiction with deposition testimony, emails, and other evidence discussing the relationship between BMW NA and its parent. The Court is unpersuaded that further discovery from BMW AG would serve a valuable purpose. See, e.g., Visual Sec. Concepts, Inc. v. KTV, Inc., 102 F. Supp. 2d 601, 609 n.12 (E.D. Pa. 2000) (denying jurisdictional

---

[18] The conclusory allegation that BMW NA and its MINI division "acted as authorized agents, representatives, servants, employees and/or alter egos of BMW AG," CCAC ¶ 46, is also insufficient.

discovery where "case ha[d] been pending for many months, and the plaintiff ha[d] engaged in substantial discovery directed at least in part towards establishing personal jurisdiction."); Rose v. Cont'l Aktiengesellschaft (AG), No. 99-3794, 2001 WL 236738, at *4 (E.D. Pa. Mar. 2, 2001) (same).

**V.      CONCLUSION**

For the reasons stated above, BMW AG's Motion to Dismiss, ECF No. 124, is **GRANTED**.  Plaintiffs' Consolidated Class Action Complaint is **DISMISSED** as to BMW AG for lack of personal jurisdiction.  An appropriate order follows.

Date: March 31, 2021 /s/ *Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**